UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

     Plaintiff,

v.

FORD MOTOR COMPANY,
a Delaware corporation,

     Defendant.

Case No. 19-cv-10167

Honorable Gershwin A. Drain

Magistrate Elizabeth A. Stafford

---

STERLING ATTORNEYS AT LAW, P.C.
Carol A. Laughbaum (P41711)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
Elizabeth P. Hardy (P37426)
Julia Turner Baumhart (P49173)
Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
jbaumhart@khvpf.com
tdavis@khvpf.com

---

**Joint Statement of Unresolved Issues (Per Court's September 12, 2019 Order)**

## DOCUMENT REQUESTS

1.      Produce a complete copy of Plaintiff's personnel file.

**ORIGINAL ANSWER OR OBJECTION:**   See documents Bates numbered Ford/D. Johnson 1 through Ford/D. Johnson 28.


**Plaintiff's/Requesting party's argument**: Defendant's response does not indicate that the 28 pages produced is Plaintiff's complete personnel file. At counsel's October 1, 2019 meeting, Plaintiff simply asked for confirmation that this was Plaintiff's complete personnel file. Defendant refused to confirm that, and in its supplemental response (Defendant's Supplemental Response to Plaintiff's First Request for Production of Documents dated October 2, 2019) also failed to address that issue. Plaintiff is simply looking for confirmation that the 28 pps is Plaintiff's complete personnel file.


**Responding party's argument**: Plaintiff's Motion to Compel does not even specifically *mention* RFP 1, let alone argue that there is a basis to challenge the production. *See* R. 16, Pg ID 70. Defendant has produced the personnel file records, and Plaintiff has not claimed that anything is missing, or offer any basis to say that there are materials not included. Plaintiff's request for "confirmation" or "certification" of anything is not an argument raised in the motion to compel, and is

not procedurally something she may request through a request for the production of documents.

2.      Produce a copy of all documents regarding Plaintiff's performance not contained in her personnel file.

**ORIGINAL ANSWER OR OBJECTION:** Defendant objects to the request to the extent it is vague, ambiguous and premature as to documents "not contained in Plaintiff's personnel file." Subject to and without waiving the objections, Defendant is producing any arguably responsive documents it has been able to locate in response to other requests in this discovery set.

**Plaintiff's/Requesting party's argument**: At counsel's October 1, 2019 meeting, Defendant Ford took the position for the first time that Plaintiff's job performance was not relevant to this case (having never previously objected to this request on the basis of relevance).

In fact, Ford itself has put Plaintiff's job performance very much at issue in this case. In its Answer to Plaintiff's Complaint, Ford "denied as untrue" Plaintiff's allegation that she performed her job duties in a manner that was satisfactory or better. (Id. at ¶4, ECF No. 4 at Page ID 16). On October 3, 2019 Plaintiff deposed

-2-

Nicholas Rowan, the Ford production supervisor who was technically a peer of Plaintiff's but who was assigned to train her and assess her performance. This is the same individual who subjected Plaintiff to egregious sexual and racial harassment. Rowan testified that Plaintiff was slow to learn what he trained her on, and appeared to have a "retention issue" and that he gave feedback on her performance to their higher level supervisors (Mahoney, Markovich).   According to Plaintiff, Rowan refused to fully train her because he conditioned that assistance on Plaintiff's willingness to comply with his constant lewd demands that she show him her breasts and send him nude pictures, which she refused to do. (Rowan has since been terminated).

Defendant should be required to produce all documents and communications bearing on Plaintiff's job performance (good, bad or otherwise) as this information is relevant to Plaintiff's claims that she was denied training, making her job more difficult; and Defendant's claim that her job performance was not satisfactory.

**Responding party's argument**: Contrary to Plaintiff's claim, Defendant objected due to the vague nature of this request, and stands on that objection. Plaintiff, for the first time, asserted at the meet-and-confer that "performance" has the ordinary meaning of job performance (*i.e.*, how well the plaintiff was performing job duties). Plaintiff also fails to explain how her performance is relevant to the elements of her claims of harassment, which turn on proof of unwelcome sexual conduct or

communication and the employer's response to Plaintiff's complaint about the same, not Plaintiff's "performance." And even if she had, the request is still overly burdensome as the request expressly excludes official documentation from a personnel file. Instead, it seeks any and all <u>unofficial</u> reference to the performance of her duties, which would arguably require a search of the emails of every employee who interacted with Plaintiff to determine if there was ever any comment related to how she was doing at any given time, and any scrap of paper that could refer to the same. Nonetheless, in light of the recent resolution of the vagueness objection, and in an effort at compromise, Defendant will be producing any records from her supervisor, William Markovich, that are responsive to this request. *See infra*. Otherwise, this request should be rejected.


11.     Any files, documents, reports, correspondence, memos, notes, email, text messages, photos, recordings, or writings of any kind regarding or mentioning Plaintiff kept at any time by Rich Mahoney.

**ORIGINAL ANSWER OR OBJECTION:** Defendant is producing any arguably responsive documents it has been able to locate in response to other requests in this discovery set.

**Plaintiff's/Requesting party's argument**: Rich Mahoney was one of Plaintiff's supervisors and a key witness.  Defendant Ford has never raised any objections to this request and since April 2019 has been claiming it "is producing" responsive documents.   To date, Plaintiff has received no responsive documents– no emails, text messages, writings, memos, or communications of any kind regarding Plaintiff kept by Mahoney, despite the fact that Mr. Mahoney's deposition is confirmed for October 9, 2019.   Plaintiff will be prejudiced by having to proceed with this deposition without having the relevant documents she may wish to question the witness on, and may need to depose him a second time.

**Responding party's argument**: Plaintiff incorrectly states that Mahoney was a supervisor; he was a more senior process coach but did not have the power to hire, fire, demote, promote, etc. with respect to Plaintiff, as is required under the law. *See Vance v. Ball State Univ.*, 570 U.S. 421 (2013). Defendant is in the process of completing its supplemental production of responsive documents within its possession regarding Mr. Mahoney, and plans to supplement before his October 9, 2019 deposition.

12.     Any files, documents, reports, correspondence, memos, notes, email, text messages, photos, recordings, or writings of any kind regarding or mentioning Plaintiff kept at any time by Billy Markovich.

**ORIGINAL ANSWER OR OBJECTION:** Defendant is producing any arguably responsive documents it has been able to locate in response to other requests in this discovery set.

**Plaintiff's/Requesting party's argument**: Billy Markovich was one of Plaintiff's supervisors and a key witness.  Defendant Ford has never raised any objections to this request and since April 2019 has been claiming it "is producing" responsive documents.   To date, Plaintiff has received no responsive documents– no emails, text messages, writings, memos, or communications of any kind regarding Plaintiff kept by Markovich.

**Responding party's argument**: Plaintiff's motion-to-compel argument, to the extent she had a specific argument with respect to this RFP, was that no documents were produced. Insofar as the protective order has now been entered, Defendant is gathering and will produce promptly any emails or other documents in Mr. Markovich's possession that mention Plaintiff. As discussed *infra*, Mr. Markovich is currently out-of-state on temporary assignment. Defendant plans to produce the responsive materials in advance of his deposition.

13.    Any files, documents, reports, correspondence, memos, notes, email, text messages, photos, recordings, or writings of any kind regarding or mentioning Plaintiff kept at any time by Nicholas Rowan.

**ORIGINAL ANSWER OR OBJECTION:** See General Objection C, which is incorporated by reference.  Subject to and without waiving the objection, Defendant is producing any arguably responsive documents it has been able to locate in response to other requests in this discovery set.

**Plaintiff's/Requesting party's argument**: Nicholas Rowan is the Production Supervisor who Ford assigned to train Plaintiff and who subjected her to severe sexual and racial harassment. Since April 2019 Ford has been claiming it "is producing" responsive documents. To date, Plaintiff has received no responsive documents– no emails, text messages, writings, memos, or communications of any kind regarding Plaintiff kept by Rowan.

**Responding party's argument**: Mr. Rowan was terminated from Ford in December 2018. Consistent with General Objection C, Ford cannot be compelled to produce materials not within its own custody and control, and Plaintiff has not to date subpoenaed Rowan for his materials. Nor did Plaintiff's counsel elicit any testimony from Rowan at deposition to suggest there were responsive, relevant documents apart from those already produced (*i.e.*, the investigatory materials related to

-7-

Plaintiff's internal complaint), and she makes no such argument now. Nevertheless, Defendant is attempting to ascertain where there are other responsive materials within Defendant's possession and will supplement promptly if such materials are located.

14.    Any files, documents, reports, correspondence, memos, notes, email, text messages, photos, recordings, or writings of any kind regarding or mentioning Plaintiff kept at any time by Dearborn Truck Plant Management staff, including but not limited to "Debbie," "Corey," and "LaDon."

**ORIGINAL ANSWER OR OBJECTION:** Defendant objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and capable of multiple interpretations as to "kept at any time by Dearborn Truck Management staff including but not limited to 'Debbie,' 'Corey,' and 'LaDon'" and as to "regarding or mentioning Plaintiff." Plaintiff's name would appear, i.e., be "mentioned" on any number of end of shift reporting forms and similar forms she was required to complete on a daily basis, none of which could possibly have any arguable relevance to her claims in this matter and which include company confidential information. Subject to and without waiving the objections, and in response to other requests, Defendant is producing any arguably responsive documents bearing any possible

relevancy to the claims asserted by Plaintiff that it has been able to locate, which is what is required under Federal Rule of Civil Procedure 26.

**Plaintiff's/Requesting party's argument**: On October 1, 2019, Defendant repeatedly stated it was "standing on its objections" with respect to producing responsive documents for these individuals. Plaintiff agreed to exempt "shift reports" and other routine paperwork from this request, and reiterated that some or all of these individuals were involved in Plaintiff's sexual harassment complaints. Defense counsel stated this request was "improper" and that "we object to that one in full."

"LaDon" (sic) is LaDawn Clemons, as identified by Defendant in its initial disclosures filed in April 2019.  Ms. Clemons is Ford's first listed witness and Ford asserts she has "knowledge of conversations with or relating to Plaintiff." Plaintiff met with Ms. Clemons, in HR, regarding her sexual harassment claims against Mr. Rowan.

"Corey" is Corey Williams, who is or was the Assistant Plant Manager at Dearborn Truck and who upon information and belief was involved in decisions related to Plaintiff's employment. (Upon information and belief, Ms. Clemons reported to him).

"Debbie" is Debbie Manzano, who is or was the Plant Manager at Dearborn truck, and who upon information and belief was involved in decisions related to Plaintiff's employment.

The documents are highly relevant with respect to Plaintiff's sexual harassment complaints, the company's response, and the allegations in this lawsuit.

**Responding party's argument**: Ford stands on its objection. The Dearborn Truck Plant is a 2.6 million square foot facility with approximately 4,400 employees— some 200 of which are non-hourly employees, and thus arguably "management" as opposed to "union."[1] It is not clear whether Plaintiff means "management" in this sense, or in the legally-relevant sense of a "supervisor," but given that Plaintiff's supervisor William Markovich is the subject of a different, specific RFP, this request would appear to take the improper broader view. The request, on its face, would thus appear to require searching the documents of dozens if not hundreds of people.

Plaintiff now seems to suggest—for the first time in the evening of October 6, 2019, when her argument section was sent to Defendant's counsel—that she is only requesting documents from three specific individuals, who she identified by full name for the first time yesterday. (At the meet and confer, Plaintiff's counsel stated that she did *not* have the full names of any of the three.) But Plaintiff still

---

[1] *See* https://corporate.ford.com/company/plant-detail-pages/dearborn-truck-plant.html

makes no showing that this request is within the scope of discovery that this request is consistent with the requirements of Fed. R. Civ. P. 26(b)(1). While Plaintiff did interact with LaDawn Clemons with respect to her complaint about Rowan, she does not identify Ms. Clemons as her own supervisor, but only as someone who she raised concerns with. And Ms. Clemons's statements to HR that were part of the investigation have been produced. By contrast, Plaintiff does not offer *any* basis to suggest that the Plant Manager and Assistant Plant Manager of the Dearborn Truck Plant would have substantive materials related to her allegations, if anything at all.

Moreover, there is no effort to limit this request to materials relevant to the claims at issue (*i.e.*, harassment by one identified person, and Defendant's response to Plaintiff's complaint), and instead is a broad catch-all that includes all of the earlier, narrower requested arguably limited to relevant materials. On its face, this request would require the production of things like end-of-shift reporting forms and similar documents that are not relevant nor proportional to the needs of the case. Plaintiff now concedes that her request is so broad that it encompasses a significant amount of irrelevant and disproportionate discovery by "offering" to let Ford exclude shift-change reports and similar documents in the exhaustive search that Plaintiff demands. But these are merely examples of how overly broad this request is, and Plaintiff's concession would still require Ford to undertake the massive,

disproportionate search demanded. Plaintiff has failed to establish that these requests comply with the scope of discovery under Fed. R. Civ. P. 26(b)(2)(C)(iii).

15.    Any files, documents, reports, correspondence, memos, notes, email, text messages, photos, recordings, or writings of any kind regarding or mentioning Plaintiff kept at any time by Les Harris, including but not limited to photocopies made by Harris  of the images, etc. shown him by Plaintiff regarding Mr. Rowan.

**ORIGINAL ANSWER OR OBJECTION:** To the extent any such documents exist, they are being produced in response to Request No. 6.

**Plaintiff's/Requesting party's argument**: On October 2, 2019 Defendant produced some documents related to Mr. Harris (Employee Relations/Human Resources), but have produced no handwritten notes and few emails from Harris (who Plaintiff met with and spoke with repeatedly about the sexual harassment).  If no additional documents exist, Defendant should so state. If additional documents exist, Plaintiff is entitled to them (as Defendant concedes, having made no objections). The Plaintiff also testified at her 10/7/19 deposition that Mr. Harris <u>did</u> take extensive notes in his face-to-face interview of Plaintiff, and also testified that in a subsequent phone call Mr. Harris asked  her to speak slower as he was taking

notes. Plaintiff's counsel has deposed Mr. Harris in the past, and has knowledge that Harris takes extensive handwritten notes in interviewing witnesses as part of an HR investigation.  Nothing of the sort has been produced.

Mr. Harris is to be deposed on October 8, 2019 and if there are additional documents that have not been produced, Plaintiff will be prejudiced in her ability to conduct this deposition, and may need to depose him a second time.

**Responding party's argument**: Plaintiff's motion-to-compel argument, to the extent she had a specific argument with respect to this RFP, was that no documents were produced. Plaintiff's new argument is outside the scope of the motion to compel. In any event, as Plaintiff tacitly acknowledges, Defendant produced Harris's documents regarding Plaintiff. She speculates that—based on her deposition of Harris in a different case, when he was in a different role—that Harris would have "handwritten" notes.

But Plaintiff does not claim that she saw Harris take handwritten notes in *this* case; Defendant's counsel's recollection is that Plaintiff's only mention of Harris taking "notes" referred to a telephone conversation—one that was immediately followed by Harris's detailed email containing his written summary of the call, which Plaintiff replied to, agreeing it was accurate. And, of course, it is highly inappropriate and prejudicial for Plaintiff to raise new arguments about a supposedly incomplete production based on her unsubstantiated recollection of a deposition that

-13-

concluded a few hours before this joint statement was due.[2]  Plaintiff has not deposed *Harris* yet about whether he took handwritten notes, and thus has no basis to suggest that there are documents not yet produced.

16.    Phone records showing the date and times of calls made by Les Harris to Plaintiff.

**ORIGINAL ANSWER OR OBJECTION:** Defendant is in the process of searching to determine whether it has any such records.  If it locates any, Defendant will produce in a supplemental response.

**Plaintiff's/Requesting party's argument**: Defendant's supplemental response dated October 2, 2019 neither included these documents nor stated that the documents do not exist. Plaintiff needs clarification.

**Responding party's argument**: Defendant stands on its original response, as stated, it would supplement *if* it had the records, and Ford has not so supplemented. There is no basis for Plaintiff to challenge the response as provided. Plaintiff's request for

---

[2]Prior to today's deposition, Plaintiff's counsel's "evidence" of handwritten notes was based solely on her speculation based on notes Harris allegedly had in a different case. She made no mention before today's eleventh-hour, post-deposition, and unsubstantiated recollection of her own client's testimony that Plaintiff allegedly saw Harris take handwritten notes.

-14-

"clarification" is an improper after-the-fact attempt to convert an RFP into an interrogatory, but counsel will be able to confirm when deposing Harris that he does not maintain phone records of the sort requested.

17.     Copies of the paperwork Les Harris directed Plaintiff to sign regarding searching her phone and/or home.

**ORIGINAL ANSWER OR OBJECTION:** Defendant objects to the request in that it mischaracterizes the facts in evidence.  Mr. Harris did not "direct" Plaintiff to sign anything nor did her ever ask to search her home.  Subject to and without waiving the objection, Mr. Harris on one occasion provided Plaintiff with the wrong consent form to sign.  Upon being so advised, he provided her with the correct consent form, which she refused to sign.  To the extent any copies of consent forms could be found, they are being produced in response to Request No. 6.

**Plaintiff's/Requesting party's argument**: Defendant's response references two different consent forms (one to search Plaintiff's home, which it says was sent in error; and one to search Plaintiff's phone, only.) It has only produced the former, not the latter, and Plaintiff requires both, as specifically discussed at counsels' October 1, 2019 meeting.

-15-

**Responding party's argument**: As stated in the original answer, the materials would be produced in response to Request No. 6, and they have been produced. Plaintiff's argument misreads Ford's discovery response and the production. Emails have been produced showing that after Harris sent the incorrect form and Plaintiff alerted him to the error, Harris emailed Plaintiff stating "Can you just respond to this email with the following responses: I am willing to allow Ford CIRT to search my personal cellphones for the purpose of collecting text messages and pictures sent to my phone by Nicholas Rowan…," and told her that this "will allow them to begin the process." Plaintiff then provided that written authorization, again via email.

19.     Any notes, email, text messages or other writings of any kind memorializing the discussion(s) between Les Harris and Nick Rowan related to Plaintiff's allegations.

**ORIGINAL ANSWER OR OBJECTION:** Any such documents are being produced in response to Request No. 6.

**Plaintiff's/Requesting party's argument**: On October 2, 2019 Defendant produced some documents (typed up interview reports) related to the Harris/Rowan discussions but have produced no handwritten notes or anything else. If no additional

documents exist, Defendant should so state. If additional documents exist, Plaintiff is entitled to them (as Defendant concedes, having made no objections). Plaintiff's counsel has deposed Mr. Harris in the past, and has knowledge that Harris takes extensive handwritten notes in interviewing witnesses as part of his HR investigation.  Nothing of the sort has been produced.

**Responding party's argument**: As stated in the original answer, the materials would be produced in response to Request No. 6, and they have been produced. And as with Plaintiff's argument with respect to RFP 15.


27.    Any documents Defendant obtains in the course of this litigation via third party subpoenas.

**ORIGINAL ANSWER OR OBJECTION:** No subpoenas have been served by Defendant to date.


**Plaintiff's/Requesting party's argument**: Defendant has served numerous subpoenas for records on Plaintiff's former employers.   On October 1, 2019 Defendant agreed to provide to Plaintiff any documents it obtained via subpoena. Plaintiff has knowledge that Ford has not fully complied.

**Responding party's argument**: All of the subpoenaed material that Ford had in its possession when it issued its supplemental production on October 2, 2019 was produced at that time. Plaintiff does not explain the purported "knowledge" that "Ford has not fully complied." Material that Defendants have received since October 2, 2019 (*i.e.*, material that would have been received only within the last three business days), will be supplemented shortly, and subpoenaed material Ford receives after today's date will be promptly supplemented after receipt.

## INTERROGATORIES

1.     Set forth Plaintiff's earnings history and a description and annual cost of each fringe benefit.

**ORIGINAL ANSWER OR OBJECTION:** Defendant objects to the interrogatory's use of "annual cost" as vague, ambiguous and capable of multiple interpretations.  Subject to and without waiving the objection, Defendant is gathering this information and will provide it in a supplemental answer.

**Plaintiff's/Requesting party's argument**: Plaintiff's compensation package is basic discovery in any employment case, and is of heightened relevance here in that Ford has recently terminated Plaintiff's employment.  Moreover, at counsel's meet-

and-confer on October 1, 2019 Defendant again stated it would provide this information.

On Sunday, October 6, 2019 Defendant emailed Plaintiff its Supplemental Answers to Plaintiff's First Interrogatories. With respect to Interrogatory 1, Defendant refers Plaintiff to 10 pages of documents it produced on October 2, 2019. These documents indicate Plaintiff's salary, only, but nothing with respect to the annual costs of the fringe benefits she received. This information remains at issue.

**Responding party's argument**: Plaintiff's motion-to-compel argument, to the extent she had a specific argument with respect to this interrogatory, was that Defendant had not supplemented the answer. Defendant has now provided a supplemental response. Plaintiff's newfound arguments, not contained in her actual motion to compel, about the adequacy of the supplemental production were not raised in, and are not relevant to, the present motion. But contrary to Plaintiff's newly-asserted argument, the documents provided indicate her earnings, and indicate what she paid for benefits in 2018—the *only* year she worked at Ford (*e.g.*, Group Term Life Insurance, $96.73; Employer Sponsored Health Coverage, $870).

2.     Set forth Plaintiff's current employment and benefit status with Ford, with the effective date(s) of any changes.

-19-

**ORIGINAL ANSWER OR OBJECTION:** Plaintiff's current employment status is she has been on the only medical leave available to her as a short-term employee, which is unpaid. Under this status, she, like similarly situated salaried employees, is offered the opportunity to continue benefits under COBRA. To the best of Defendant's understanding, Plaintiff declined COBRA coverage for continued health benefits but currently has COBRA coverage for vision and dental. Plaintiff's leave was effective November 26, 2018 and is presently set to expire on April 15, 2019.

**Plaintiff's/Requesting party's argument**: Defendant Ford has not raised any objection to Interrogatory No. 2 and on October 1, 2019 specifically agreed to supplement its answer [Ford terminated Plaintiff since its initial answer.]

On Sunday, October 6, 2019 Defendant emailed Plaintiff its Supplemental Answers to Plaintiff's First Interrogatories.

With respect to Interrogatory 2, Defendant has still not provided the date that it terminated Plaintiff's benefits. This information remains at issue.

**Responding party's argument**: Plaintiff's motion-to-compel argument, to the extent she had a specific argument with respect to this interrogatory, was that Defendant had not supplemented the answer. Defendant has now provided a supplemental response: "Plaintiff's leave ended on April 15, 2019, and Plaintiff did

-20-

not provide updated medical justification for further leave thereafter, and did not return to work, thus quitting her employment. See also materials provided in supplemental response to Interrogatory No. 1 and materials provided in supplemental response to RFP 10."

Plaintiff's argument that this is insufficient because it does not "identify the date" that benefits were terminated was not raised in the motion to compel, and thus that argument is not at issue in this motion. Moreover, to the extent that the Court would allow new arguments without adequate notice, the original response made clear what benefits Plaintiff became eligible for once she took her leave, a date identified in the document production.

3.      Set forth the name and job title of each person who made,  participated in, or approved any decisions with respect to Plaintiff's employment  status or benefits status, November  2018 to present, including but not limited to the decision maker(s) with respect to terminating  Plaintiff's health insurance effective January 1, 2019.

**ORIGINAL ANSWER OR OBJECTION:** Plaintiff made the decision to open a medical leave.  Plaintiff also made the decision to end her health insurance coverage by declining continued coverage under COBRA.

**Plaintiff's/Requesting party's argument**: Defendant Ford has not raised any objection to Interrogatory No. 3. The identity of the Ford decision-makers with respect to Plaintiff's benefits and employment status, including the termination decision, is of obvious relevance.  To date, Defendant has not provided the names of Ford personnel who made, participated in or approved the decisions to cut off Plaintiff's benefits and terminate her employment.   This information remains at issue.

**Responding party's argument**: Plaintiff's motion-to-compel argument, to the extent she had a specific argument with respect to this interrogatory, was that Defendant had not supplemented the answer. Defendant has now provided a supplemental response: "Plaintiff made the decision to not provide medical justification for continued leave after the expiration of her approved leave, and Plaintiff made the decision not to return to work thereafter, thus quitting her employment." The interrogatory has been answered.

To the extent that Plaintiff continues to contest it, it is because Plaintiff does not like the answer: there was no discretionary decision by Ford to "terminate" Plaintiff. As stated in the interrogatory answer and as reflected in document production, Plaintiff was told that she had to provide documentation to extend her unpaid medical leave, or else she would be considered to have quit. Ford did not

receive such medical documentation, and thus Plaintiff made the decision to end her employment by not returning to work within the requisite time period after her medical leave expired.

### Depositions

**Plaintiff's argument**: One of the depositions at issue still has not been scheduled. Defendant Ford has not provided a deposition date for Ford Supervisor Billy Markovich, a key witness, who Plaintiff noticed for deposition twice.

Most recently, on August 28, 2019, Plaintiff noticed Mr. Markovich's deposition for October 9, 2019.

On September 4, 2019, Defendant indicated it was checking on Markovich's availability.

On September 12, 2019, Plaintiff filed her motion to compel.

On September 13, 2019, Defendant advised it was still checking on Markovich's availability.

On September 30, 2019, Defendant advised that Markovich was out of state on assignment and unavailable for deposition on October 9, 2019.

On October 1, 2019, at the parties' meet-and-confer, Plaintiff proposed nine (9) dates in October when she could conduct the Markovich deposition. Plaintiff also indicated that if for some reason Mr. Markovich could not appear in person for his deposition, she would consider a phone deposition. [Defendant refused to divulge

the location of Mr. Markovich's "out of state" assignment, further complicating this issue.]

Ford's counsel advised on October 1, 2019 that it would provide a firm date for the Markovich deposition prior to the due date for this Statement of Unresolved Issues (10/07/19). To date, Ford has failed to do so.

Plaintiff believes this deposition should take approximately three (3) hours and, given the history, requests an order requiring Markovich's appearance at Plaintiff's office in the near future.

Additionally, Plaintiff may need to depose other Ford employees whose importance becomes evident through depositions and paper discovery.

**Defendant's argument**:  As of the time of the motion to compel, the Plaintiff had noticed four persons (Rowan, Harris, Maloney, and Markovich) for deposition. The schedule was worked out, with one exception:

- Rowan's deposition took place on October 3, 2019.

- Harris's deposition is scheduled and confirmed for October 8, 2019.

- Mahoney's deposition is scheduled and confirmed for October 9, 2019.

The remaining unscheduled deposition is for William Markovich.

Plaintiff's counsel unilaterally noticed Mr. Markovich's deposition for October 9, 2019 without the professional courtesy of asking whether he was available at that time. (The same is true for all of the other depositions Plaintiff's counsel noticed,

-24-

but Defendant was able to accommodate those.) Defendant's counsel has ascertained that that Mr. Markovich is in the state of Illinois on a confidential, but temporary, assignment. At the meet-and-confer, Plaintiff's counsel agreed to reschedule the date without the need for Defendant to file a protective order to move the date. Defendant's counsel did *not* state that Defendant would be able to have a new date picked out in the few business days between the Wednesday, October 2 meet-and-confer session and the Monday, October 7 joint statement due-date; for the reasons stated, Mr. Markovich is not readily accessible and Defendant's counsel has not been able to ascertain which dates he could be available. The parties had also agreed at the meet-and-confer session to stipulate to a telephone deposition under Rule 30(b)(4), if necessary.

Plaintiff's heavy-handed demand for Markovich to return to Michigan for a brief 3-hour deposition—particularly when there is plenty of time in the discovery schedule left, and given that Defendant was able to accommodate all of the rest of Plaintiff's unilaterally-noticed deposition dates—should be rejected. The Court should order a telephone deposition consistent with the parties' earlier agreement, at a date to be provided as soon as Defendant is able to identify Markovich's availability.

Jointly submitted by:

STERLING ATTORNEYS
AT LAW, P.C.

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.


By: s/Carol A. Laugbaum (by implied permission)[3]

By: s/ *Thomas J. Davis*

    Carol A. Laughbaum (P41711)
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com

Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
Attorneys for Defendants
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

Dated: October 7, 2019

---

[3]At 8:09 pm the day this statement was due, Plaintiff's counsel emailed with "changes I would like you to make prior to submitting to the court." Defendant's counsel made those edits, along with some edits to Defendant's section of the brief in light of Plaintiff's changes, and sent it back to Plaintiff's counsel at 8:41 (and a slightly revised version at 8:52), stating that due to the late hour, the revised version would be submitted if Defendant's counsel did not hear otherwise by 9:15 pm. Plaintiff's counsel did not respond again by 9:15 pm.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, being first duly sworn, states that on October 7, 2019, the foregoing was served on all parties of record via CM/ECF.


/s/Thomas J. Davis_____
Thomas J. Davis

323376