UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

    Plaintiff,

v.

FORD MOTOR COMPANY,

    Defendant.

Case No. 19-cv-10167

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT [#27]

### I. INTRODUCTION

On January 17, 2019, Plaintiff DeAnna Johnson ("Plaintiff") filed the instant sexual and racial harassment claims, pursuant to Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") and 42 U.S.C. § 1981, and sexual assault claim, pursuant to Michigan common law, against Defendant Ford Motor Company ("Defendant"). ECF No. 1. Plaintiff purports that she was forced to take medical leave from her position as a Production Supervisor due to severe sexual and racial harassment from another Production Supervisor, Mr. Nicholas Rowan. ECF No. 1, PageID.2–3.

Presently before the Court is Plaintiff's Motion for Leave to File First Amended Complaint, filed on October 16, 2019. ECF No. 27. Defendant filed a

1

Response on October 30, 2019. ECF No. 38. Plaintiff filed her Reply on November 6, 2019. ECF No. 42. A hearing on Plaintiff's Motion was held on December 5, 2019. For the reasons that follow, the Court will GRANT IN PART and DENY IN PART Plaintiff's Motion for Leave to File First Amended Complaint [#27].

## II. FACTUAL BACKGROUND

### A. Plaintiff's Employment at Ford Motor Company

Plaintiff's claims stem from the allegedly hostile work environment she experienced while employed at Defendant's Dearborn Truck Plant. From the outset of her employment in June 2018, Plaintiff was purportedly subjected to Mr. Rowan's unwanted comments and conduct of both a sexual and racial nature. ECF No. 27-1, PageID.397. Mr. Rowan was allegedly directed to both teach Plaintiff her duties and assess her performance as a new Production Supervisor. *Id.* Defendant maintains that Mr. Rowan was not Plaintiff's Supervisor. ECF No. 38, PageID.491.

Plaintiff was allegedly subject to Mr. Rowan's behavior on a "daily basis." ECF No. 27-1, PageID.397. Specifically, Plaintiff claims that Mr. Rowan repeatedly asked to see her breasts. *Id.* Mr. Rowan also purportedly called Plaintiff names, including "chocolate jolly rancher" and "chocolate treat." *Id.* Furthermore, Mr. Rowan "constantly asked Plaintiff to send him naked pictures." *Id.*

Mr. Rowan's alleged verbal harassment escalated to physical harassment when he "grabbed Plaintiff's breast." *Id.* Additionally, Mr. Rowan purportedly took

2

pictures of Plaintiff without her permission. *Id.* at PageID.399. Plaintiff claims Mr. Rowan also sent her "numerous sexually suggestive inappropriate texts"—including photographs of himself in his underwear and of his genitals. *Id.*

Plaintiff informed Mr. Rowan that if his behavior continued, she would report him. ECF No. 27-1, PageID.398. She explains that she was both "fearful of [Mr.] Rowan and his erratic behavior" and in need of her job, so she "attempted to be pleasant with [him]." *Id.* Plaintiff insists that she never participated in nor responded to Mr. Rowan's "lewd talk" or "disgusting demands." In October 2018, Plaintiff reported Mr. Rowan to a manger Rich Mahoney. *Id.* at PageID.399. She then reported this behavior to "LaDon," who Plaintiff identifies as an "Assistant Plant Manager at Dearborn Truck." *Id.* at PageID.400. Another supervisor, Bill Markovich, was also made aware of Plaintiff's allegations against Mr. Rowan. *Id.*

Plaintiff asserts that her "extremely toxic and hostile work environment" forced her to take a medical leave of absence and she remains "medically unable to return to work." *Id.* at PageID.401. Defendant advised Plaintiff in a letter dated August 22, 2019 that she was terminated. *Id.* at PageID.402. Plaintiff alleges in her proposed amended complaint that she was terminated "in retaliation for [her] protected activity, including this lawsuit." *Id.* Defendant contends that Plaintiff's termination was a result of her failing to extend her unpaid medical leave past its April 2019 expiration. ECF No. 38, PageID.487.

## B. Procedural History

On January 17, 2019, Plaintiff filed her initial Complaint against Defendant. ECF No. 1. Her Complaint alleges: (1) sexual harassment and sexually hostile work environment in violation of Michigan's ELCRA; (2) racial harassment and racially hostile work environment in violation of 42 U.S.C. § 1981; and (3) sexual assault and battery. *See id.*

Plaintiff filed a Motion to Extend Discovery and Scheduling Order Dates by sixty days on August 23, 2019. ECF No. 14. This Court granted Plaintiff's Motion three days later. ECF No. 15. The fact discovery deadline was therefore extended to November 11, 2019 and the dispositive motions deadline to December 11, 2019. *See id.*; ECF No. 38, PageID.488. At the hearing, Plaintiff asserted that she has agreed to another deposition on December 19, 2019.

Plaintiff now requests leave to file a First Amended Complaint ("FAC") to include two amendments. First, Plaintiff seeks to include *quid pro quo* sexual harassment language in Count I's ELCRA claim. She explains that her proposed amendment "simply clarifies the *quid pro quo* aspect of [Mr.] Rowan's demands[.]" ECF No. 27, PageID.390. She states that her initial Complaint "provides the facts supporting this claim." *Id.* at PageID.389. Second, Plaintiff moves to include an additional retaliation claim. Proposed Count IV alleges that "Defendant's retaliatory treatment of Plaintiff, including terminating her employment, was in violation of the

4

anti-retaliation provisions" of Michigan's ELCRA and 42 U.S.C. § 1981. ECF No. 27-1, PageID.406. Plaintiff explains that this proposed amendment is a result of events that "only arose recently." ECF No. 27, PageID.390. At the hearing, Plaintiff explained that she is not seeking any additional time for discovery for either of these two proposed amendments.

Defendant opposed Plaintiff's Motion on October 30, 2019, arguing that the two proposed amendments to the initial Complaint are both futile and unduly delayed after the effective close of discovery. ECF No. 38, PageID.489. Plaintiff filed her Reply to Defendant's opposition on November 6, 2019. ECF No. 42.

### III. LEGAL STANDARDS

#### A. Motion for Leave to Amend

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. In a case where a responsive pleading has been filed, a party may amend its pleading only with the written consent of the opposing party or by leave of the court. FED. R. CIV. P. 15(a)(2). Defendant here does not concur in Plaintiff's Motion; it is thus within this Court's discretion whether to grant Plaintiff's Motion for Leave to File an amended complaint. *See United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, No. 15-4406, 2016 WL 6832974, at *7 (6th Cir. Nov. 21, 2016) ("[D]istrict courts have discretion to permit or deny amendment after a defendant files an answer to a plaintiff's complaint"); *see also Zenith Radio Corp. v. Hazeltine*

*Research, Inc.*, 401 U.S. 321, 330 (1971) (explaining that the decision as to whether justice requires the amendment is committed to the district court's sound discretion).

Pursuant to Rule 15(a)(2), "leave shall be freely given when justice so requires." "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (*citing Conley v. Gibson*, 355 U.S. 41, 48 (1957)).

Despite this liberal amendment policy, denial may be appropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is "futile" if the amendment could not withstand a Rule 12(b)(6) motion to dismiss. *See Peffer v. Thompson*, 754 F. App'x 316, 320 (6th Cir. 2018); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

Here, Defendant argues that Plaintiff's Motion is both "futile and unduly delayed." ECF No. 38, PageID.489. Therefore, the Court's analysis will focus on whether Plaintiff's proposed Complaint can survive the motion to dismiss standard articulated in Federal Rule of Civil Procedure 12(b)(6). The Court will also determine whether the second proposed amendment "rais[es] an inference of

prejudice against [Defendant]" due to Plaintiff's alleged undue delay in filing her Motion. *See Knight Capital Partners Corp.*, 930 F.3d 775, 786 (6th Cir. 2019) (internal citation omitted).

**B. Motion to Dismiss**

Rule 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic,* 550 U.S. at 555).

## IV. ANALYSIS

In the instant action, Plaintiff moves to amend her Complaint to specifically (1) include *quid pro quo* sexual harassment language in Count I; and (2) propose an additional count against Defendant for retaliation in violation of Michigan's ELCRA and 42 U.S.C. § 1981. The Court shall address each amendment in turn.

### A. Proposed Count I – *Quid Pro Quo* Sexual Harassment

Plaintiff explains that her first proposed amendment "simply clarifies the *quid pro quo* aspect of [Mr.] Rowan's demands." ECF No. 27, PageID.389–90. Further, she states that her initial Complaint "already provides the facts supporting this claim, including that Mr. Rowan, the Production Supervisor assigned to train Plaintiff, constantly asked Plaintiff to show him her breasts and send him nude pictures of herself." *Id.* at PageID.389. In its brief, Defendant contends this amendment is both futile, as it would not survive a motion to dismiss, and unduly delayed. At the hearing, Defendant only opposed proposed Count I based on a futility argument. The Court will therefore only assess the futility of this proposed amendment.

Under Michigan's ELCRA, a *quid pro quo* sexual harassment claim requires proof that (1) an employee was subjected to any of the types of unwelcome sexual conduct or communication described in the statute; and (2) her employer or her employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment. M.C.L. 37.2013(i); *Chambers v.*

*Trettco, Inc.*, 463 Mich. 297, 310 (2000). The second prong requires proof of a "tangible (adverse or otherwise) employment action that was shown to be causally related to plaintiff's submission to or rejection of" the alleged sexual harassment. *Chambers*, 463 Mich. At 317. A "tangible employment action" is an "indispensable element" of *quid pro quo* harassment, and only persons with supervisory powers could effectively make such a decision. *Id.* at 321.

Defendant asserts three reasons why Plaintiff's proposed change is futile. First, Defendant argues that Mr. Rowan was not Plaintiff's supervisor and that therefore, by definition, Mr. Rowan could not engage in *quid pro quo* harassment. ECF No. 38, PageID.491. At the hearing, Defendant disputed Plaintiff's use of "de facto supervisor" to characterize Mr. Rowan. Defendant also emphasized how Plaintiff offers minimal support for her argument that Mr. Rowan could be considered a supervisor, as she only cites to one case from the Southern District of New York in her Reply. *See* ECF No. 42, PageID.609–10 (citing to *Hernandez v. Jackson, Lewis, Schnitzler & Krupman*, 997 F. Supp. 412 (S.D.N.Y. Feb. 25, 1998).

Plaintiff cites to *Hernandez v. Jackson, Lewis, Schnitzler & Krupman* to support her argument that her *quid pro quo* claim is viable, even though Mr. Rowan was not her supervisor on paper. *Id.* at PageID.609. In *Hernandez*, the district court analyzed the alleged facts under the standard for summary judgment—which is not at issue in the instant motion. The court determined that even if Mr. Mack—the

9

purported supervisor—was not a "de facto supervisor, he did at least enjoy some degree of supervisory authority over Plaintiff[.]" *Hernandez*, 997 F. Supp. at 417.

The Court agrees with Defendant that *Hernandez* is not persuasive authority on this issue. However, when considering a Rule 12(b)(6) motion to dismiss, which the Court must do when presented with a futility argument, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of her factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The Court, therefore, must assess the sufficiency of her allegations as they relate to the proposed *quid pro quo* amendment.

Plaintiff contends that Mr. Rowan held a supervisory role, as he was assigned to train Plaintiff in her new position as a Production Supervisor. ECF No. 42, PageID.607. Specifically, Plaintiff alleges that Mr. Rowan trained Plaintiff on how to handle "day to day production issues, including the line going down; tracking attendance and handling payroll for the hourly reports, and more. *Id.* at PageID.608. At the hearing, Plaintiff informed the Court that Mr. Rowan trained her for approximately two to three months. Further, she conceded that Mr. Rowan was not her supervisor "on paper"; rather, Mr. Rowan was her "de facto supervisor."

Mr. Rowan testified to his alleged supervisory duties. *See* ECF No. 42-2. Specifically, Mr. Rowan stated that Production Manger Mr. Craig Olah asked him to train Plaintiff. ECF No. 42-2, PageID.624. He explained that he had discussions

with supervisors Mr. Richard Mahoney and Mr. Billy Markovich about Plaintiff's training, including conversations about whether Plaintiff was "catching on" and "how well she was doing." *Id.* Mr. Rowan also testified to communicating some verbal criticisms of Plaintiff's progress. *Id.* at PageID.625 ("Only on learning issues. As far as, like I said, had to keep writing the same things down over and over.").

Courts have determined within the Sixth Circuit that a *quid pro quo* claim of harassment can rest on an alleged harasser's authority to influence an adverse employment decision, if that influence is "so significant that the harasser may be deemed the de facto decision maker." *See, e.g.*, *Barhouma v. Athenian Assisted Living, Ltd.*, 2015 U.S. Dist. LEXIS 122742, at *14 (N.D. Ohio Sept. 15, 2015). In order to prevail with this argument, a plaintiff must establish that the alleged harasser had more than mere "influence" or "input" in the decision-making process. *Id.* The Court need not determine whether Plaintiff's *quid pro quo* claim survives on this ground for the purposes of the instant Motion, though. The Court finds that there are enough disputed issues of fact with respect to whether Mr. Rowan enjoyed sufficient supervisory authority over Plaintiff to support her *quid pro quo* claim.

Second, Defendant argues that "training" is not a tangible employment action as a matter of law. ECF No. 38, PageID.492. A tangible employment action, as explained above, is required in order to satisfy the second prong of a *quid pro quo* sexual harassment claim.

11

Defendant cites to several cases within the Sixth Circuit to support its argument that Plaintiff's *quid pro quo* claim is deficient. For example, Defendant explains that the Sixth Circuit held in *Hartleip v. McNeilab, Inc.* that "plaintiff could not establish a viable quid pro quo claim because the harasser did not have supervisory authority over her and was not directly responsible for any significant employment decisions affecting her." *Id.* (quoting *Hartleip*, 83 F.3d 767, 775 (6th Cir. 1996)). However, the plaintiff in *Hartleip* conceded that defendant Mr. Barnes "never had supervisory authority over her." 83 F.3d at 775. In the instant case, Plaintiff specifically alleges that Mr. Rowan held a "de facto" supervisory position over her. ECF No. 42, PageID.609. In her Reply, Plaintiff emphasizes the difference in supervisory authority between Mr. Rowan and Mr. Barnes. *Id.* at PageID.611.

Defendant also cites to *Iceberg v. Whole Foods Mkt. Grp. Inc.*, 914 F. Supp. 2d 870 (E.D. Mich. 2012) for its proposition that training is not a tangible job action. Plaintiff clarifies that the court in *Iceberg* found the ELCRA *quid pro quo* claim failed for several deficiencies, though, including that there was no evidence that the conduct at issue was unwelcome given that the parties had been in a consensual relationship. *Id.* at PageID.612. Additionally, the *Iceberg* court explained that "a few training sessions" failed to constitute a "tangible" job detriment. 914 F. Supp. 2d at 881. In the instant matter, Plaintiff alleges "basic, ongoing training needed to learn and succeed on the job." *See* ECF No. 42, PageID.612.

Accordingly, this Court finds that there are disputed issues of fact with respect to whether a denial of training can support a *quid pro quo* claim.

Third and finally, Defendant argues that Plaintiff fails to allege any *quid pro quo* activity. ECF No. 38, PageID.493. Specifically, it claims that Plaintiff does not allege any proof that the "tangible employment action … was a consequence of her rejection of, or submission to, [the] harassment." *Id.* at PageID.494 (citing *Chambers v. Trettco, Inc.*, 463 Mich. 297, 321 n. 8 (Mich. 2000)).

In her proposed FAC, Plaintiff alleges that her "submission to Mr. Rowan's unwelcomed requests for the sexual favors was an express or implied condition of Plaintiff receiving job benefits, including training." ECF No. 27-1, PageID.403. Dismissal is proper under Rule 12(b)(6) "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008). Here, Plaintiff specifically asserts a causal link related to her submission to Mr. Rowan's alleged sexual harassment. This Court will not dismiss the claim at this stage based on an assessment that Plaintiff will "fail to find evidentiary support for [her] allegations." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 n. 8 (2007).

Accordingly, this Court finds that a question of fact exists about whether Plaintiff adequately alleges *quid pro quo* activity.

This Court concludes, after viewing the allegations in a light most favorable to Plaintiff, that the proposed Count I—alleging *quid pro quo* sexual harassment—is not futile.

### B. Proposed Count IV – Retaliation in Violation of Michigan's ELCRA and 42 U.S.C. § 1981

Plaintiff also proposes an additional Count in her FAC: retaliation in violation of Michigan's ELCRA and 42 U.S.C. § 1981. ECF No. 27-1, PageID.406–07. Defendant disputes this proposed amendment by arguing that it is both futile and unduly delayed.

#### 1. Futility of amendment

Defendant first argues that Plaintiff's Proposed Count IV should be denied because it is futile. It maintains that Plaintiff cannot survive the motion to dismiss standard by merely alleging, without supporting facts, that a purported adverse employment action was retaliatory. ECF No. 38, PageID.495.

In her proposed FAC, Plaintiff alleges that she received letters from Defendant regarding her medical leave that (1) falsely state she had been cleared to return to work from her leave on August 13, 2019; (2) she had not yet been cleared to return to work; (3) she had to submit paperwork extending her leave no later than August 13, 2019 or return to work on that date; (4) she received the letter late due to an incorrect address; and (5) she was processed as "quit" effective on April 16, 2019. *See* ECF No. 27-1, PageID.401–02. Plaintiff additionally purports that her

termination was "in retaliation for [her] protected activity, including this lawsuit." *Id.* at PageID.402. These allegations were not incorporated in Plaintiff's initial Complaint; Plaintiff maintains that these "recent events" were not present at the time of her initial filing. ECF No. 42, PageID.612; *see also* ECF No. 27, PageID.391.

Defendant cites to several Sixth Circuit cases for the proposition that Plaintiff is unable to survive the motion to dismiss standard. *See* ECF No. 38, PageID.495–96. In *Boxill v. O'Grady*, the Sixth Circuit held that Plaintiff Boxill's complaint, which included a retaliation claim against each defendant under 42 U.S.C. § 1981, did not plausibly allege that any defendant took "an adverse action against her because of her protected speech." 935 F.3d 510, 520 (6th Cir. 2019). The court in *Boxill* explained that in order to survive dismissal of a retaliation claim, a plaintiff must allege that "(1) she engaged in protected activity; (2) her exercise of that activity was known by the Defendant; (3) the Defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action." *Id.*; *see also Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). In *Boxill*, Plaintiff's claims rested on "broad, conclusory allegations that the [Defendants] diminished her job responsibilities." 935 F.3d at 518.

Defendant also cites to *Koutsoukos v. Adecco USA, Inc.* as support. There, the court found that Plaintiff Koutsoukos failed to establish a prima facie case of

15

retaliation since she did not allege any facts to support a causal link between the protected activities and her transfers or removal from employment. 2017 WL 5514558, at *2 (6th Cir. July 14, 2017). Further, the court emphasized how Plaintiff did not allege facts showing that, but for her protected activities, she would not have been transferred or removed from employment. *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2528 (2013)).

Here, Plaintiff argues that Defendant's letter—dated for August 6, 2019 but not received until August 16, 2019—which notified her that she was retroactively fired was sent in "retaliation for her protected activity – her internal discrimination complaints, and this lawsuit." ECF No. 42, PageID.613. Plaintiff, similar to the plaintiffs in *Boxill* and *Koutsoukos*, does not allege any facts to support a causal link between her protected activity and her termination, though. She instead only asserts a conclusory allegation that her termination "was in retaliation for [her] protected activity, including this lawsuit."

This Court concludes that there is no adequate factual basis to plausibly suggest a retaliation claim here. Accordingly, this Court finds this amendment would be futile.

### 2. Undue delay in filing the Motion

Defendant lastly asserts that Plaintiff's Proposed Count IV will result in undue delay and prejudice to Defendant, since it was filed less than thirty days before the

16

close of fact discovery. ECF No. 38, PageID.488, 498. When a plaintiff moves to amend just before, or after, the close of discovery, the proposed amendment "rais[es] an inference of prejudice against its opponent." *Knight Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 786 (6th Cir. 2019) (noting that plaintiff moved for leave the day before discovery closed).

Here, Plaintiff argues that the events surrounding her proposed retaliation claim "only arose recently." ECF No. 27, PageID.390. Defendant responds that Plaintiff "knew about all of the events allegedly supporting her last-minute motion for leave to amend well before she filed her motion." ECF No. 38, PageID.500. Further, Defendant states that Plaintiff offers "no excuse for waiting until after the effective close of discovery, and after several key depositions, before moving for leave to amend." *Id.*

To determine what constitutes prejudice, the Sixth Circuit considers, among other things, if the amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial, and if it would significantly delay the resolution of the dispute. *Rogers v. I.R.S.*, 822 F.3d 854, 857 (6th Cir. 2016). Once a matter's scheduling order deadline has passed, a plaintiff must show good cause for failure to seek leave to amend earlier. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). District courts should also evaluate prejudice to the opposing party before modifying the scheduling order. *Id.*

Discovery in this case was set to end on November 11, 2019. ECF No. 15. The dispositive motion cutoff in this case is scheduled for December 11, 2019. *Id.* Plaintiff filed her Motion for Leave on October 16, 2019—less than thirty days before the close of fact discovery. ECF No. 27.

Allowing Plaintiff to add this retaliation count at this stage would likely require this Court to extend the scheduling order deadlines for a second time. Plaintiff admits in her Reply that additional discovery may be necessary, as she will "agree[] to submit to a second (half) day of being deposed by Defendant Ford." ECF No. 42, PageID.613. At the hearing, Plaintiff emphasized that she would not request any additional time for discovery. Defendant responded by explaining that Plaintiff's "remaining four-hour deposition" would not provide enough time to develop this new claim. Further, Defendant asserted that Plaintiff cannot point to facts in the current record to support this amendment. The Court finds that Defendant would thus likely need to expend more resources to participate in additional discovery if it granted leave.

Further, this Court questions how "recent" the events surrounding Plaintiff's proposed retaliation claim arose. In her proposed FAC, Plaintiff cites to letters from August 2019 surrounding her alleged termination. Defendant denotes that Plaintiff's counsel represented in an email to Defendant's counsel that she received notice of her termination on August 16, 2019. *See* ECF No. 38-3, PageID.512; ECF No. 38,

18

PageID.497. It appears, then, that Plaintiff became aware of these alleged facts approximately two months prior to her filing of the instant Motion.

To summarize, granting Plaintiff leave to amend for this claim of the proposed amendment at this late stage would require a second adjournment of the current scheduling order and thus cause prejudice to Defendant. Further, there is evidence to suggest that Plaintiff could have filed her Motion soon after she was made aware of the August 2019 termination letter. Lastly, this Court determined above that Plaintiffs' proposed Count IV alleging retaliation is futile. For these reasons, the Court will deny Plaintiff leave to amend with respect to the proposed retaliation claim.

## V. CONCLUSION

For the reasons articulated above, the Court will GRANT IN PART and DENY IN PART Plaintiff's Motion for Leave to File First Amended Complaint [#27].

IT IS SO ORDERED.

Dated: December 6, 2019

                s/Gershwin A. Drain
                HON. GERSHWIN A. DRAIN
                United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 6, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager
