UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

     Plaintiff,

v.

FORD MOTOR COMPANY,
a Delaware corporation,

     Defendant.

Case No. 19-cv-10167

Honorable Gershwin A. Drain

Magistrate Elizabeth A. Stafford

---

STERLING ATTORNEYS AT LAW, P.C.
Carol A. Laughbaum (P41711)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

---

**Defendant's Reply Brief in Support of its Motion for Summary Judgment**

Plaintiff's advocacy in her response brief is absolutely shameless, grossly distorting and outright misrepresenting the record in violation of her ethical duty of candor to the tribunal. It is designed to obscure her deposition admissions and the truth.[1] It can only be assumed that she harbors the false hope that this Court will assume there must be "something there" due to the sheer repetition of offensive language, and be distracted from the fact that Ford *immediately* suspended and then terminated her harasser. The centerpiece of Plaintiff's brief is a *thirty-five* paragraph sham declaration overflowing with new allegations that just happen to fill in major factual holes in her earlier sworn story.

Plaintiff also has nothing to say with respect to her outright resume fraud, conduct that is sadly consonant with her summary-judgment tactics. But while this Court cannot resolve issues of credibility in the context of a Rule 56 motion, it can demand that Plaintiff's counsel be truthful in addressing this Court. Ultimately, Defendant respectfully requests that this Court closely examine the documentary record and the relevant law, and grant summary judgment.

---

[1] It is not possible to identify every such distortion, even with a 14-page reply brief. But one particularly egregious example is the statement that she "does not claim, as Ford suggests, that she passed out because she saw a picture of Rowan's penis." R. 55, Pg ID 1139 n.4. In fact, she made *precisely* that claim in her complaint: "After receiving the penis picture, Plaintiff became ill, passed out, and sought medical treatment at Beaumont Hospital, where she was kept overnight." *See* R. 1, Pg ID 5. If she is claiming otherwise now, it is only because Ford proved that she did not pass out at work the day she received the picture. *See* R. 51, Pg ID 704-05.

## I.      The Court should refuse to consider Plaintiff's sham affidavit.

"When a party says one thing live at a deposition but another thing in a written statement, the change is conspicuous. The written words—often composed by the party's lawyer—look too contrived to deserve any weight." *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 352 (6th Cir. 2013). Thus, the Sixth Circuit has held that (1) an affidavit that directly contradicts earlier testimony should be disregarded unless there is a "persuasive justification for the contradiction," and (2) even if "there is no contradiction," the court should still "strike or disregard that affidavit" if it "constitutes an attempt to create a sham fact issue." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). Factors that should guide the Court on whether there is a "sham fact issue" are  (1) "whether the affiant had access to the pertinent evidence at the time of his earlier testimony," (2) "whether the affidavit was based on newly discovered evidence," and (3) whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." *Id.* at 908–09.

The Court should, under these standards, disregard nearly every paragraph of Plaintiff's new declaration. Not only does she directly contradict her deposition, Plaintiff is obviously trying to create sham fact issues. She offers no justification for her contradictions. She does not claim to have discovered new evidence. And although she was cross-examined by Ford at length over two days, somehow none of the stories—which just happen to fill in specific evidentiary deficiencies Ford

identified in its summary-judgment brief—ever came up. Her declaration, R. 55-4, is a textbook sham. The most egregious examples of the sham are as follows:

*First*, she claims that Mahoney "and/or" Markavich heard Rowan make sexual comments about *other* women, laughed, and did nothing. R. 55-4, ¶¶ 6-8. These allegations are made to support a new claim, not raised in her Complaint, that she was harassed by Rowan's comments to these *other* women. R. 55, Pg ID 1152. Plaintiff, however, explicitly testified that she did not consider comments about other women to be sexual harassment, and that she was not harassed until Rowan made comments *to her*. R. 55-3, Pl's Dep. 142-43. Moreover, her allegations contradict her Complaint, her statement to Les Harris (which she testified was accurate), and her deposition testimony, where she claimed that she *told* Mahoney or Markavich about inappropriate comments—*not* that they heard the comments directly. *See* R. 46, ¶¶ 23, 29-35; R. 51-2, Pl's Dep., Pg ID 743-46, 775-76; R. 55-3, Pl's Dep. 142, 166-67, 190. These allegations are a sham.

*Second*, Plaintiff now says she showed Mahoney nearly every negative text from Rowan, including "racial" texts. R. 55-4, ¶¶ 17, 20. This contradicts her own complaint, where she said she only told Mahoney about "sexual" talk, not racial talk. R. 46, ¶ 23. And it contradicts her deposition, where she said she only told Mahoney about "sexual things" and texts related to the image of Rowan's penis. *See, e.g.*, R. 55-3, Pl's Dep. 129-30, 137-38, 150-52, 236-37, 340, 376-77, 420.

This is a sham meant to avoid Ford's argument that Plaintiff's only report of racial harassment was to Harris, who immediately remedied it. R. 51, Pg ID 723-24.

*Third*, Plaintiff claims she did want Mahoney and Markavich to report Rowan's alleged harassment. R. 55-4, ¶ 18. At deposition, however, she admitted to the accuracy of her November 27, 2018 statement to Les Harris that she did *not* want their involvement. R. 51-2, Pl's Dep. 186-87 & Dep. Ex. 6. These sham facts are meant to avoid Ford's argument that Plaintiff waived her argument that a report to Mahoney or Markavich put Ford on notice of harassment. R. 51, Pg ID 718.

*Fourth*, she claims Mahoney and Markavich said they would fire process coaches who didn't learn the job fast enough, that Rowan said she wasn't "getting" the job, and that her greenbelt certification was delayed. R. 55-4, ¶¶ 5, 9, 11, 35. At deposition, however, she said she was "competent" and "extremely confident" in her job, including in her greenbelt training; said she no job-related problems "with anyone except for Nick Rowan"; and cited her recent *graduation* from greenbelt training as proof of her competence! R. 55-3, Pl's Dep. 399-403. Her allegation that Mahoney or Markavich caused her job-related harm, at Rowan's insistence, is a sham meant to avoid Ford's argument that Rowan's alleged failure to train her did not result in a materially adverse employment action. R. 51, Pg ID 715-16.

*Fifth*, Plaintiff now tries to backdate, by three weeks, her alleged report of harassment to LaDawn Clemons. R. 55-4, ¶¶ 23-26. Her story has always been that

-4-

she told Clemons about Rowan's "antics" the day before she met with HR's Les Harris on November 26, 2018. R. 55-3, Pl's Dep. 31-32, 114-15, 127, 131, 250; R. 46, Amd. Compl. ¶ 35. When asked if she had "a conversation with LaDawn about Nick Rowan and your issues with him that preceded November 25," Plaintiff said "No." R. 55-3, Pl's Dep. 252:1-4. But now, she says she complained to Clemons on November 3, 2018—three weeks earlier—and that an agitated Mahoney and Markavich dramatically burst into the room, interrupting their meeting. R. 55-4, ¶¶ 23-26. This fictitious story, another escalation in the severity of her accusations against Mahoney and Markavich, *see* R. 51, Pg ID 717 n.4, is yet another sham.[2]

## II.    With or without her sham facts, Plaintiff's sexual harassment claims fail.

Ford's brief set out multiple reasons why Plaintiff's sexual harassment claims—brought under Elliott-Larsen—fail as a matter of law. Plaintiff ignores nearly all the binding *Michigan* authority, and ignores or misstates the facts.

### A.    Plaintiff's quid pro quo claim fails for multiple reasons.

As the Court earlier held, Plaintiff's quid pro quo claim rested on a factual theory that Rowan's failure to train her was so severe that it impacted her ability to

---

[2]This sham story reflects a common tactic of Plaintiff's: finding innocuous texts (here, about a November 3 meeting) and manufacturing a false narrative around it. Another example is her claim that Mahoney's "kiss and make up" text—which she had no details about at deposition, R. 55-3, Pl's Dep. 149—was meant to imply that Plaintiff should *send Rowan nudes* so that he would help her restart the engine line. R. 55-4, ¶ 10. This sham is meant to avoid Ford's observation that the text was not even about Rowan, as the face of the text shows. R. 51, Pg ID 722 n. 5.

retain her job. R. 45, Opinion, Pg ID 647. But as Ford argued, there is no record

support for the notion that the alleged lack of training impacted her job security in

any way; indeed, Plaintiff was promoted. R. 51, Pg ID 714-15. Plaintiff, in

response, merely repeats her bare assertion that Rowan "jeopardized [her] ability to

remain employed at Ford" without citing evidence to suggest she was in *actual*

jeopardy, let alone suffered actual harm. R. 55, Pg ID 1159. Indeed, while

Plaintiff's sham affidavit suggests she was delayed in obtaining greenbelt

certification, *supra* p. 4, she does not mention this in her argument section, or

otherwise suggest that she was at risk of losing her job or any other potential job

benefit as a result. The quid pro quo claim should be dismissed on this basis alone.[3]

Ford also argued that, as a matter of Michigan law, Ford could not be held

liable for quid pro quo harassment because Rowan was not a "supervisor" as

defined in Michigan law—someone with the power to hire, fire, promote, demote,

---

[3]As Ford argued, this "de facto supervisor" theory has no basis in Michigan law
anyway. R. 51, Pg ID 710-15. Plaintiff still cites no Michigan authority, and all of
the new out-of-state cases she relies on (R. 55, Pg ID 1157-58) involve essentially
the same, quasi-cat's paw theory whereby the non-supervisor influenced an
adverse employment action. *See Scarbary* (harasser influenced supervisor's
decision to promote plaintiff); *LaMarca* (harasser, co-director of police academy,
assisted recruits with admission; plaintiff denied admission); *Heskin* (harasser was
vice president of employer's client, used influence to have employer fire plaintiff);
*Gostanian* (actual supervisor accepted input of harasser on hiring and firing
decisions; plaintiff fired after ending relationship); *Hernandez* (harasser had close
friendship and influence over supervisor; plaintiff disciplined, denied overtime,
and not promoted thereafter); *cf. Perks* (harasser was *actual* supervisor who took
tangible employment actions). That scenario is not present here.

or discipline. R. 51, Pg ID 710-14 (quoting *Chambers v. Trettco, Inc.,* 463 Mich. 297, 310, 321 (2000)). Plaintiff does not dispute that Rowan lacked such authority, and entirely ignores the binding *Michigan* law that precludes the notion that training is a "tangible employment action." She cites instead two inapposite cases: *Cruz*, which held that denial of training itself was *not* an "adverse employment action" unless it led to a failure to promote or other actual adverse action, 2014 WL 2547541, at *5 (S.D.N.Y. June 4, 2014), and *Pitter*, which involved *termination* by the harasser, not lack of training. 735 F. Supp. 2d 379, 390-392 (D. Md. 2010). For this reason too, the quid pro quo claim should fail.

### B.  Plaintiff cannot establish a co-worker harassment claim by Rowan as a matter of law.

Plaintiff also fails to address, in a coherent way, Ford's arguments on her invalid co-worker harassment claim. Rather, as noted, her strategy was to bury the Court in an avalanche of largely-distorted factual assertions and hope the Court assumes there must be something there. The Court should not lose sight, however, of what is at issue. It is now undisputed that Ford promptly and adequately handled Plaintiff's November 26, 2018 complaint. And Plaintiff's attempts to hold Ford liable anyway, based on claims of earlier, indirect notice—through inflammatory, ever-shifting accusations against Mahoney and Markavich—should fail.

### 1.  Plaintiff waived her right to claim she notified Ford through Mahoney or Markavich. Under Michigan law, an alleged harassment victim who

does *not* want a supervisor to take action in response to a report of harassment waives the right to claim that the defendant was on "notice" from that report. R. 51, Pg ID 718 (citing *Elezovic*). The record is clear on this point: Plaintiff gave a statement to Les Harris on November 27, 2018, which she admitted was accurate at her deposition, in which she said (1) when Mahoney asked if she wanted him to talk to Rowan "I told him no"; and (2) "I didn't want to bring Billy [Markavich] into this…." R. 51-2, Pl's Dep. 186-87 & Dep. Ex. 6. She further admitted she never gave Markavich any details about her complaint about Rowan. *Id.* at 154-55. Her use of a sham affidavit to contradict these admissions must be rejected. *Supra* p. 4. She thus waived the right to rely on alleged reports to these men as "notice."

**2.    Plaintiff has failed to show that her alleged reports to Mahoney put Ford on notice under controlling Michigan law.** This Circuit has recognized that, under Michigan law, an employer is not put on notice of alleged harassment unless it is reported to "higher management." *See* R. 51, Pg ID 718-20 (citing *Sheridan* and *Kalich*). Under *Sheridan*, someone cannot be "higher management," unless they "have actual authority to effectuate change in the workplace" with respect to "hiring, firing, and disciplining the offensive employee." *Id.* Mahoney has no such actual authority over Rowan; he thus was not higher management. *Id.*

Plaintiff simply ignores the *Sheridan* standard, refusing to even discuss the "actual authority" standard, let alone offering evidence that Mahoney met that

specific standard.[4] Instead, she makes a bare statement that Mahoney was a "supervisor" (which is not the *Sheridan* test), and then flatly asserts that Mahoney is "higher management," without evidence in support. R. 55, Pg ID 1154.

She also claims *Sheridan* does not apply when "the employer's policies permit employees to notify non-higher management supervisors," *id.* at Pg ID 1155 (citing *Sheridan*, 247 Mich. App. at 625). *Sheridan* said no such thing. The cited page merely states that written employment policies with the "force of a binding contract" might give employees greater protection than ELCRA, but that the Court did not need to reach the question because there was no contract claim before it. *Sheridan*, 247 Mich. App. at 625. So too here: Plaintiff has not pled a breach of contract claim, or tried to prove that any written policy with the "force of a binding contract" gave her benefits beyond what ELCRA provides. Because Mahoney was not "higher management," Plaintiff's alleged reports to him did not put Ford on notice of alleged harassment as a matter of law.

**3.      Plaintiff has no proof that supervisor Markavich knew she was making sexual harassment claims.** Controlling Michigan law requires specific notice that a plaintiff is alleging *sexual harassment* to higher management; even generic references to "harassment" or a "hostile environment" are not enough. R.

---

[4]In her fact section, she falsely claims Mahoney could "write up" process coaches; what she cites, however, is Mahoney's explicit testimony that he *couldn't* write up process coaches. *Compare* R. 55, Pg ID 1134 *with* R. 55-7, Mahoney Dep. 111.

51, Pg ID 720-22 (citing *Elezovic*, *Sheridan*). Plaintiff did not do so here; in her own words, "I never got a chance to explain my full self to [Markavich] about Nick Rowan." R. 55-3, Pl's Dep. 362:7-8. Instead, Plaintiff speculated as to what Mahoney might have told Markavich, and made assumptions as to what Markavich might have heard or understood. *See* R. 51, Pg ID 720-22. But speculation and assumptions are not enough, and there was no evidence that Plaintiff (or Mahoney on her behalf) ever reported *sexual harassment* to Markavich. *Id.*

Plaintiff's brief ignores the relevant standard—one that does not permit her to hold Ford liable based on vague, non-specific complaints. *See* R. 55, Pg ID 1152-54. Instead, she misstates the record and relies on her sham affidavit to paper over her evidentiary insufficiencies. First, relying only on her sham affidavit, she claims Markavich knew about Rowan's comments to *other* women. *Id.* at 1152. Even if it is not disregarded (and it should be), this is not proof that Markavich had notice that *Plaintiff herself* felt that she was being indirectly harassed.

Next, she claims that she "yelled" to Markavich that Rowan was "sending her pictures of her [penis]." *Id.* (alteration in original). In fact, she testified (1) that she was "kind of getting loud," not that she yelled, R. 55-3, Pl's Dep. 153:6; and (2) she did not say "penis," but rather "weenie," *id.* at 153:19-20. There was no proof that Markavich even *heard* this statement on a noisy plant floor, let alone that he understood it to have a sexual connotation, as "weenie" was a word used in

-10-

the plant in a non-sexual way. R. 51, Pg ID 722 & n. 5. She still has no proof. That

her response relies on misquoting and altering her testimony speaks volumes.

Plaintiff finally claims Markavich had notice of her sexual harassment

claims, because he asked "how bad" things were from 1-10, R. 55, Pg ID 1153.

But this ignores her testimony that she did not know what Mahoney actually said

to prompt this question, and thus she can only speculate that Mahoney mentioned

*sexual harassment*. R. 51, Pg ID 709. Moreover, Plaintiff's testimony was that

Markavich did not even know what specifically Plaintiff was complaining about;

according to her own story, Markavich had to ask Plaintiff to identify what exactly

had happened with Rowan, and Plaintiff refused to tell him. R. 51, Pg ID 721-22.

In short, Plaintiff does not know what Mahoney said to Markavich, and she

admits that Markavich did not know what Rowan did to cause her to complain.

There are, of course, many reasons co-workers can have workplace disputes, apart

from sexual harassment. Markavich denies being told of sexual harassment, and

Plaintiff has no proof otherwise. Michigan law creates a high bar for proof of such

indirect claims of notice, and Ford—which, again, *did the right thing* here upon

proper notice—should not be held liable based on speculation and assumption.

### III.   Plaintiff offers only a bare-bones response to Ford's motion for summary judgment on the racial harassment claim, and ignores the relevant law.

Ford's summary judgment motion also argued that Plaintiff's Section 1981

racial harassment claim failed for two distinct reasons: (1) the complained-of

-11-

conduct was *sexual*, and courts have repeatedly refused to permit race-harassment claims over sexual comments merely because the sexual comments reference "chocolate" or "black"; and (2) because the record shows that Plaintiff did not allege racial complaints to Mahoney or Markavich—but only to Harris—Ford promptly and adequately remedied that complaint by suspending Rowan the same day the complaint was made. R. 51, Pg ID 722-24.

Plaintiff cites nothing in response to Ford's first argument. R. 55, Pg ID 1160-62. Indeed, she *admits* that her complaint is about "sexual comments" that included some references to "chocolate" or Plaintiff being black. *Id.* at Pg ID 1161. But she does not even address, let alone distinguish, Ford's authority that such allegations are simply insufficient to bring a *racial* harassment claim. Summary judgment on the racial harassment claim is appropriate on this basis alone.

As to Ford's second argument, Plaintiff claims—citing nothing but her sham affidavit—that she did tell Mahoney about race-related text messages. R. 55, Pg ID 1161-62. Because the sham affidavit should be disregarded, *see supra* pp. 3-4, there is also no material dispute of fact that Plaintiff's first complaint of race-related comments was to Les Harris, who promptly suspended Rowan. And even with the sham affidavit, she has no proof that she reported racial harassment to her *actual* supervisor Markavich, or that Mahoney did so on her behalf.  The racial harassment claim should be dismissed for these reasons too.

-12-

**IV.    Plaintiff ignores that the factually-indistinguishable *Hamed* case is fatal to her sexual assault claim**

Finally, Plaintiff alleges that Ford should be held responsible for Rowan's alleged sexual assault because Ford allegedly knew of his propensity to commit sexual assault because he had made sexual comments and allegedly punched file cabinets. R. 55, Pg ID 1162. But as Ford argued, the Michigan Supreme Court *expressly* rejected this precise argument in *Hamed v. Wayne* County, 490 Mich. 1 (2011). R. 51, Pg ID 724-26. *Hamed* held that an employer cannot be responsible for its employee's sexual assault merely because it knew that the employee had allegedly made "comments of a sexual nature" and had allegedly shown "aggressive tendencies." *See id.* That is all Plaintiff alleges here, and she does not even attempt to distinguish the controlling, directly-on-point *Hamed* decision. Summary judgment should be granted on this claim.

## Conclusion

Plaintiff has asserted multiple theories and claims, and attempted to bury the Court with irrelevant and often inaccurate facts. But the Court should grant summary judgment as to each count. To summarize these issues:

- The quid pro quo sexual harassment claim based on Rowan's conduct fails (1) because Rowan's alleged failure to train her did not result in an adverse job consequences; and (2) because under Michigan law,

Rowan was not a supervisor whose conduct can be attributed to the employer on a quid pro quo theory;

- The co-worker harassment claim fails because (1) Ford remedied her actual complaint; (2) Plaintiff waived her claim of earlier notice to Markavich and Mahoney because she did not want their involvement; (3) Mahoney is not "higher management" and he is not an appropriate recipient of her complaints; and (4) she has no proof that Markavich was ever made aware that she was complaining of sexual harassment.

- The racial harassment claim fails because (1) the complained-of conduct is sexual not racial, and not sufficiently severe; and (2) her complaint about racial comments was promptly addressed.

- The sexual assault claim fails because Ford did not have notice of Rowan's alleged propensity to commit sexual assault, which is required by Michigan law.

Respectfully submitted,

*/s/ Elizabeth Hardy*
　　Elizabeth Hardy (P37426)
　　Thomas J. Davis (P78626)
　　Attorneys for Defendant
　　280 N. Old Woodward Ave., Suite 400
　　Birmingham, MI 48009
　　(248) 645-0000
　　ehardy@khvpf.com
Dated: March 10, 2020　　tdavis@khvpf.com
364514

-14-

**Certificate of Service**

I hereby certify that on March 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/ Elizabeth Hardy*
Elizabeth Hardy (P37426)
Kienbaum Hardy Viviano
 Pelton & Forrest, P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
(248) 645-0000
E-mail:  ehardy@khvpf.com