UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

Plaintiff,

v.

FORD MOTOR COMPANY,

Defendant.

Case No. 19-cv-10167

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#51]

### I. INTRODUCTION

On January 17, 2019, Plaintiff DeAnna Johnson ("Plaintiff") filed the instant sexual and racial harassment claims, pursuant to Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") and 42 U.S.C. § 1981, respectively, and sexual assault claim, pursuant to Michigan common law, against Defendant Ford Motor Company ("Defendant"). ECF No. 1. Plaintiff filed her First Amended Complaint ("FAC") on December 9, 2019, ECF No. 46, which includes *quid pro quo* sexual harassment language in Count I, after the Court granted in part Plaintiff's Motion for Leave to File First Amended Complaint, ECF No. 27. *See* ECF No. 45.

Presently before the Court is Defendant's Motion for Summary Judgment, filed on January 21, 2020.[1]  ECF No. 51.  Plaintiff filed a Response on February 25, 2020.  ECF No. 55.  Defendant filed its Reply on March 10, 2020.  ECF No. 59.  A hearing on Defendant's Motion was held on May 7, 2020.  For the reasons that follow, the Court will **GRANT IN PART** Defendant's Motion for Summary Judgment [#51] on Plaintiff's racial harassment and racially hostile work environment in violation of 42 U.S.C. § 1981 claim (Count II).  Additionally, the Court will **DENY WITHOUT PREJUDICE IN PART** Defendant's Motion for Summary Judgment [#51] on Plaintiff's remaining Counts I and III.  The Court declines supplemental jurisdiction over these remaining state law claims against Defendant pursuant to 28 U.S.C. § 1367(c)(3).

## II. FACTUAL BACKGROUND

Plaintiff's claims stem from the allegedly hostile work environment she experienced at Defendant's Dearborn Truck Plant.  From the outset of her employment in June 2018, Plaintiff claims she was subjected to Mr. Nicholas Rowan's unwanted comments and conduct of both a sexual and racial nature.  ECF No. 46, PageID.658.  On December 21, 2019, Defendant terminated Mr. Rowan for violating company policies.  ECF No. 51, PageID.709.

---

[1] On January 30, 2020, Defendant filed an errata sheet to reflect the parties' agreement regarding certain confidential records.  ECF No. 53.  Defendant subsequently sent a copy of its Motion with the corrected pages and exhibits.

Plaintiff argues that her supervisors failed to address her hostile work environment despite being "well aware" of the alleged harassment. ECF No. 55, PageID.1132. On January 17, 2019, Plaintiff filed her FAC alleging: (1) sexual harassment and sexually hostile work environment in violation of Michigan's ELCRA (Count I); (2) racial harassment and racially hostile work environment in violation of 42 U.S.C. § 1981 (Count II); and (3) sexual assault and battery (Count III). *See* ECF No. 1. On December 9, 2019, Plaintiff filed her FAC, which added *quid pro quo* sexual harassment language to Count I. *See* ECF No. 46.

### A. Plaintiff is Hired as a Production Supervisor

On June 25, 2018 Defendant hired Plaintiff as a salaried Production Supervisor, a position now known as a "Process Coach."[2] ECF No. 51, PageID.703. Production Supervisors are "first-level supervisors of [Defendant's] hourly assembly-line workers, including the hourly 'team leaders.'" ECF No. 51, PageID.706. A Production Supervisor's responsibilities ranged from understanding the assembly process, to ensuring employee safety, to handling the payroll. ECF No. 55, PageID.1132–33; *see also* ECF No. 55-3, PageID.1279.

---

[2] In its Motion, Defendant highlights Plaintiff's admission at her deposition that she "smudged" some areas of her job application to obtain a better position. ECF No. 51, PageID.703 (quoting ECF No. 51-2, PageID.757). Defendant also points to Plaintiff's testimony surrounding some inaccuracies on her resume. *Id.* (quoting ECF No. 51-2, PageID.754). Plaintiff did not respond to Defendant's assertions.

Plaintiff was initially assigned to work on the frame and engine line. ECF No. 55-3, PageID.1202. After completing an "onboarding course," which typically spans one or two weeks, Plaintiff was given her first floor assignment with the A-Crew. ECF No. 55-8, PageID.1418. Once a Production Supervisor like Plaintiff was given a floor assignment, she or he was to mirror a more senior Production Supervisor, which would typically last about three to four months. *Id.*

Plaintiff worked with the A-Crew for approximately one month. ECF No. 55-3, PageID.1203. There, Plaintiff trained with Darnell, who Plaintiff claims to have had no problems learning from. ECF No. 55, PageID.1134. Indeed, she testified that Darnell gave her "appropriate training." ECF No. 55-3, PageID.1204. Plaintiff still required additional training for other responsibilities, including the payroll and other paperwork processes. *Id.*

### B. Plaintiff's Employment on the B-Crew

In July 2018, Plaintiff moved to the B-Crew shift. EF No. 51, PageID.704. There, Plaintiff began working with Production Supervisor Mr. Rowan as per Team Manger Mr. William Markavich's instructions. *Id.*; ECF No. 55-8, PageID.1420. Mr. Rowan was allegedly in a position to evaluate Plaintiff's job performance while she mirrored his work on the B-Crew shift. ECF No. 55-8, PageID.1419–20.

Plaintiff alleges that from the beginning of her employment, "[Mr.] Rowan subjected [her] to unwanted comments and conduct of a sexual nature[.]" ECF No.

46, PageID.658.   She testified that Mr. Rowan's conduct escalated from "inappropriate talking" to "sexual harassment," including his requests for nude photos of Plaintiff, to "sexual assault," when he allegedly grabbed Plaintiff's breast. ECF No. 55-3, PageID.1213.  Plaintiff claims that she began complaining about this behavior to Mr. Markavich "very early."  *Id.* at PageID.1236.  While she could not recall the exact date, Plaintiff explained that she remembers doing so "right after [she] got there."  *Id.*  According to Plaintiff, Mr. Markavich was unhelpful in his responses; he demonstrated "nastiness towards [her]," which were "typically followed up by apologies.  *Id.*; ECF No. 55, PageID.1136.

Plaintiff was allegedly subject to Mr. Rowan's behavior on a "daily basis." ECF No. 46, PageID.658.  In her Response to the instant Motion, Plaintiff included a "non-exhaustive list" to illustrate her purportedly "illegal work environment."  *See* ECF No. 55, PageID.1136–1142.  For example, she claims Mr. Rowan repeatedly asked to see her breasts.  ECF No. 55, PageID.1136–37.  Plaintiff also highlights how Mr. Rowan purportedly called her different racial slurs, including "chocolate jolly rancher" and "chocolate treat."  *Id.* at PageID.1137.  Furthermore, Mr. Rowan allegedly asked Plaintiff for nude photos "constantly."  *Id.*  Defendant contests this allegation, asserting that "[n]o such text [Mr. Rowan's request for nude pictures] appears in [Plaintiff's] production[.]"  ECF No. 53-3, PageID.1099.  Plaintiff purports that she "generally responded to [Mr.] Rowan's nasty comments and texts

by telling him to stop, or trying to change the subject[.]"  ECF No. 55, PageID.1137. She alleges that she never complied with his requests for pictures.  *Id.*

On one occasion, Mr. Rowan texted Plaintiff a picture of his "erect penis." ECF No. 55, PageID.1138; *see also* ECF No. 51-8, PageID.933 (redacted).  Plaintiff allegedly experienced an "emotional breakdown" a week after receiving this picture. ECF No. 55, PageID.1139.  She purportedly passed out and subsequently received treatment at Beaumont Hospital.  *Id.*  Defendant argues that Plaintiff received medical treatment for unrelated reasons, including vertigo and her lack of blood pressure medication.  ECF No. 53-3, PageID.1099.  Plaintiff testified that upon her return to work, Mr. Markavich approached her and "yelled repeatedly," with explicit language, that he did not care about her problems.  *Id.*

In her Response, Plaintiff also lists several other lewd text messages she received from Mr. Rowan.  ECF No. 55, PageID.1140–41.  Defendant argues that these other text messages are "entirely unsubstantiated by [Plaintiff's] own records." ECF No. 53-3, PageID.1099.  By October 2018, Plaintiff claims that her hostile work environment had become "so over the top."  ECF No. 55, PageID.1143.  Plaintiff testified that she told Mr. Mahoney before a crew meeting that she intended to report Mr. Rowan's sexual harassment to Human Resources.  ECF No. 55-3, PageID.1213.

In early November 2018, Plaintiff moved to the C-Crew and eventually to the chassis 4 and 5 line.  ECF No. 53-3, PageID.1099, 1271.  A couple of weeks later, Plaintiff rotated back to the frame and engine line.  ECF No. 55, PageID.1145.

### C. Mr. Rowan's Alleged Sexual Assault

On November 16, 2018, Mr. Rowan allegedly assaulted Plaintiff.  ECF No. 55 PageID.1146; *see also* ECF No. 46, PageID.658.  According to Plaintiff, Mr. Rowan "ran at her, pinned her against a wall, thrust his hand down her shirt, and forcefully grabbed her breast[.]"  ECF No. 55, PageID.1146.  Plaintiff testified that she was in physical pain and that she developed bruises on her breast.  *Id.*  Plaintiff also asserts that she was left distraught and crying.  *Id.*

Mr. Rowan denied grabbing Plaintiff's breast.  ECF No. 55-9, PageID.1473.  He describes the incident as one where he "bumped [Plaintiff's] leg."  *Id.*  He testified that he apologized to Plaintiff via text the following day, stating "[s]orry for my hand slippage yesterday."  ECF No. 51-7, PageID.900.  Defendant emphasizes that this exchange occurred "in the middle of a longer conversation," with Plaintiff "responding with joking banter."  ECF No. 53-4, PageID.1101.

Plaintiff purportedly reported this incident to Mr. Mahoney the next day.  ECF No. 55, PageID.1146.  Mr. Mahoney allegedly told Plaintiff he was going to notify Mr. Markavich.  ECF No. 55-3, PageID.1236.  Plaintiff testified that she declined to tell Mr. Markavich about this incident directly due to his "nastiness" toward her.  *Id.*

### D. Plaintiff's Complaints of Mr. Rowan's Conduct

### 1. LaDawn Clemons

Plaintiff met with Crew Operations Manager LaDawn Clemons, who allegedly reported directly to the Assistant Plant Manager, on November 25, 2018.[3] ECF No. 53-4, PageID.1101. There, Plaintiff provided Ms. Clemons with detailed information about the alleged harassment. ECF No. 55, PageID.1146. She testified:

> [Mr. Markavich] didn't care; [Mr. Mahoney] didn't care; none of the guys on the floor cared. Nobody cared. I thought about my subordinates on his phone, the positions and the sex videos, and then, and tis was – it just was too much, him grabbing my breast and bruising my breast. It was too much. It was over the top. I had no one else to tell, and [Ms. Clemons] had been nice to me.

ECF No. 55-3, PageID.1231.

At their meeting, Plaintiff stated that her past complaints to Mr. Mahoney and Mr. Markavich had not worked. ECF No. 55, PageID.1147. She allegedly told Ms. Clemons that Mr. Rowan had solicited explicit pictures from her and that he had sent

---

[3] In her Response, Plaintiff describes an earlier meeting with Ms. Clemons on November 3, 2018. ECF No. 55, PageID.1144. She alleges that she informed Ms. Clemons about Mr. Rowan's inappropriate behavior and that she did not want to work with him. *Id.* Plaintiff cites to an attached declaration describing this meeting for support. *See* ECF No. 55-4, PageID.1295. In its Reply, Defendant asserts that Plaintiff is attempting to "backdate, by three weeks, her alleged report" to Ms. Clemons. ECF No. 59, PageID.1565. The Court takes notice of this factual dispute and will address Defendant's argument that Plaintiff's attached declaration is a "sham affidavit," ECF No. 59, PageID.1562, in the next section.

explicit pictures of himself.  ECF No. 53-4, PageID.1101.  After this meeting, Ms. Clemons reported this conversation to Mr. Leslie Harris the next day.  *Id.*

### 2.  Leslie Harris

On November 26, 2019, Mr. Harris arranged an interview with Plaintiff.  ECF No. 51, PageID.707.  At this meeting, Mr. Harris allegedly told Plaintiff he had already spoken to other employees about Plaintiff's concerns, including Mr. Mahoney.  ECF No. 55, PageID.1148.  Plaintiff gave Mr. Harris a statement about her complaints, which she testified was an accurate account of the conversation, ECF No. 51-2, PageID.772–73, though it was missing a few words, ECF No. 55-3, PageID.1220.  Plaintiff also purportedly shared some of the text messages from Mr. Rowan.  ECF No. 55, PageID.1148.

Mr. Harris then interviewed Mr. Rowan.  ECF No. 51, PageID.707.  There, Mr. Rowan denied Plaintiff's allegations, excluding the assertion that he sent a photo with his shirt unbuttoned.  *Id.*  Mr. Rowan suggested that Plaintiff used his phone to send the explicit photos to herself.  *Id.* (citing ECF No. 51-6, PageID.842–44.

The day after her in-person interview, Plaintiff allegedly emailed Mr. Harris to provide further information.  ECF No. 51, PageID.708.  Mr. Harris then summarized their conversation in an email, which Plaintiff agreed was accurate except for one change.  *Id.*  In her statement, Plaintiff explained that she previously informed Mr. Mahoney of Mr. Rowan's conduct, and also showed him one of the

explicit pictures.  ECF No. 51-2, PageID.775.  Further, Plaintiff hypothesized that Mr. Mahoney told Mr. Markavich since Mr. Markavich asked Plaintiff how "bad" it was between she and Mr. Rowan on a scale from 1 to 10.  *Id.*

### E. Defendant Terminates Mr. Rowan

Mr. Harris suspended Mr. Rowan pending an investigation.  ECF No. 51, PageID.707.  During the investigation, Mr. Harris interviewed Mr. Markavich and Mr. Mahoney, who both denied that Plaintiff complained about sexual harassment by Mr. Rowan to them.  *Id.* at PageID.709; *see also* ECF No. 51-6, PageID.849, 851. Mr. Harris asked for permission to search Plaintiff's phone; Plaintiff was cooperative.  ECF No. 55-6, PageID.1357.  He also sought to obtain Mr. Rowan's phone records during the investigation.  ECF No. 51, PageID.709.  Mr. Rowan refused to comply with this request.  *Id.*  Mr. Harris sent his investigative materials to Defendant's headquarters.  *Id.*  Mr. Rowan was terminated for violating Defendant's policies on December 21, 2018.  ECF No. 53-5, PageID.1104.

Separately, Mr. Harris contacted Plaintiff, informing her that she needed to bring her phone into headquarters and that she needed to sign a "Consent to Search" form.  ECF No. 55, PageID.1149.  The form requested permission to search Plaintiff's premises.  ECF No. 55-16, PageID.1546.  Mr. Harris testified that Plaintiff was mistakenly sent the "wrong form" and that he apologized for the error via email. ECF No. 55-6, PageID.1343.

On November 28, 2018, Plaintiff's counsel emailed Mr. Harris, notifying him that she now represented Plaintiff in the instant matter.  ECF No. 51-6, PageID.855.  Plaintiff commenced her action in this Court on January 17, 2019.  ECF No. 1.

### III. LAW & ANALYSIS

#### A. Plaintiff's Declaration (ECF No. 55-4)

Plaintiff attached a declaration from February 24, 2020 as an exhibit to her Response to the instant Motion.  ECF No. 55-4.  Defendant argues in its Reply brief that the Court should "disregard nearly every paragraph of Plaintiff's new declaration," which it refers to as a "textbook sham."  ECF No. 59, PageID.1562, 1654.

The Court takes notice that Plaintiff testified, and was cross-examined by Defendant, at length over two days: October 7, 2019 and December 19, 2019.  ECF No. 55-3.  Plaintiff does not offer any explanation or justification in either her Response or declaration for filing an additional affidavit in opposing summary judgment.  *See generally* ECF No. 55; ECF No. 55-4.  At the hearing, Plaintiff disputed Defendant's claims that her declaration is a "sham affidavit."

#### 1. Legal Standard

When deciding the admissibility of a post-deposition affidavit at the summary judgment stage, a district court must first determine whether the submitted affidavit "directly contradicts the nonmoving party's sworn testimony."  *Aerel, S.R.L., v. PCC*

-11-

*Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (citation omitted). "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.*

If there is no direct contradiction, however, then a district court should not strike or disregard that affidavit "unless [it] determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" *Id.* (internal citation omitted). The Sixth Circuit has adopted a non-exhaustive list of factors to guide a district court's determination of whether there is a "sham fact issue": (1) "whether the affiant was cross-examined during [her] earlier testimony"; (2) "whether the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence"; and (3) "whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." *Id.* at 908–09 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

## 2. Analysis

Here, Defendant argues that Plaintiff's declaration is both contradictory and an attempt to create sham fact issues. ECF No. 59, PageID.1562. In its Reply, Defendant listed "[t]he most egregious examples" demonstrating its argument. The Court will address each example in turn.

First, Defendant contests paragraphs 6 through 8, where Plaintiff explains how Mr. Mahoney and/or Mr. Markovich often heard Mr. Rowan make sexual

comments about other women.  ECF No. 55-4, PageID.1290–91.  Plaintiff asserts that Mr. Rowan made sexual comments "out in the open, for everyone around to hear."  *Id.* at PageID.1291.  Defendant argues that these paragraphs are made to support a "new claim" that she was harassed by Mr. Rowan's comments to other women.  ECF No. 59, PageID.1564.  In her Response, Plaintiff cites to these specific paragraphs as evidence to establish that Defendant had "notice" of Mr. Rowan's alleged sexual harassment.  ECF No. 55, PageID.1152.

The Court does not find that paragraphs 6 through 8 of the declaration contradict Plaintiff's testimony and FAC.  In her FAC, Plaintiff alleges that she directly informed Mr. Mahoney and Mr. Markavich about Mr. Rowan's behavior.  ECF No. 46, PageID.660–61.  For example, she purports that "she showed the penis picture to [Mr.] Mahoney, and told him that [Mr.] Rowan was asking to see her breasts or send him pictures of her breasts every day."  *Id.* at PageID.660.  Further, "Plaintiff confronted [Mr.] Markovich [*sic*] about his rude behavior[.]"  *Id.* (emphasis added).  Plaintiff also "reported [Mr.] Rowan's antics to 'La Don'[.]"  *Id.* at PageID.661.  Upon review of Plaintiff's deposition, the Court further notes that Plaintiff testified to conversations she had with Mr. Mahoney or Mr. Markavich where she informed of Mr. Rowan's sexual comments.  *See, e.g.*, ECF No. 55-3, PageID.1219.  She also explained that Mr. Rowan's "inappropriate talking" to her and "other ladies" did not rise to the level of sexual harassment.  *Id.* at PageID.1213.

These allegations relate to how much notice Mr. Mahoney and Mr. Markavich had of Mr. Rowan's behavior.

At the hearing, Plaintiff clarified that the averments in paragraphs 6 through 8 are included for to provide "an important backdrop" for Mr. Rowan's alleged conduct towards women at the plant. Further, she explained that these assertions can undercut Mr. Mahoney's and Mr. Markavich's testimony and interview answers that they were unaware of Mr. Rowan's alleged conduct. The Court finds that these justifications are sufficient. Paragraphs 6 through 8 should therefore be viewed as "attempts to explain" Plaintiff's prior testimony concerning her conversations with Mr. Mahoney and Mr. Markavich. *See Aerel, S.R.L., 448 F.3d* at 909 (citing *Franks,* 796 F.2d at 1237). Specifically, the Court finds that these paragraphs provide clarity to the issues of fact surrounding the extent of Mr. Mahoney's and Mr. Markavich's notice of Mr. Rowan's alleged behavior. Accordingly, the Court declines to strike paragraphs 6 through 8.

Second, Defendant argues that paragraph 20 is contradictory of her FAC and deposition. ECF No. 59, PageID.1564. Defendant claims that Plaintiff's assertion— that she told Mr. Mahoney about Mr. Rowan's texts, "including those that were race related"—are a "sham meant to avoid [its] argument that Plaintiff's only report of racial harassment was to [Mr.] Harris[.]" *Id.* at PageID.1565.

-14-

The Court takes notice that Plaintiff did not allege telling Mr. Mahoney about race-related texts in her FAC. *See* ECF No. 46, PageID.659–60. Further, Plaintiff was asked five times at her deposition to describe the "topic[] of texts" or "any other text," besides the explicit pictures and message concerning Mr. Rowan's alleged sexual harassment, which she showed to Mr. Mahoney. *See* ECF No. 55-3, PageID.1209–10. Plaintiff failed to mention the race-related texts. Rather, Plaintiff only mentioned the "sexual talk" and related text messages in her two-day deposition. Additionally, the Court denotes that Mr. Mahoney did not testify to knowledge of any race-related comments from Mr. Rowan at his own deposition. *See generally* ECF No. 55-7. Indeed, at his investigatory interview with Mr. Harris on November 30, 2018, Mr. Mahoney was only asked about Plaintiff's sexual harassment complaints against Mr. Rowan. ECF No. 51-6, PageID.848.

At the hearing, Plaintiff spoke generally about how Mr. Rowan's racial comments were often made in a sexual context. She did not explain why this specific allegation—that she told Mr. Mahoney about Mr. Rowan's race-related texts—was left out of her earlier averments. Given the fact that Plaintiff never suggested, either in her FAC or in her deposition, that she told Mr. Mahoney about any race-related texts she allegedly received from Mr. Rowan, the Court questions Plaintiff's motives in bringing forth these assertions at this juncture. The Court therefore agrees with Defendant that paragraph 20 of the declaration is an attempt to create a sham fact

issue.  Specifically, the Court is concerned with Plaintiff's citation to this paragraph as support for her argument that she told Mr. Mahoney about race-related text messages.  ECF No. 55, PageID.1161.  Indeed, this was the only instance where Plaintiff cited to the record in her argument opposing summary judgment for her hostile work environment claim on the basis of race.  Accordingly, the Court will strike paragraph 20 of Plaintiff's declaration.

Third, Defendant takes issue with paragraph 18 of the declaration.  In its Reply, Defendant argues that Plaintiff now claims she wanted Mr. Mahoney and Mr. Marakvich to report Mr. Rowan's alleged harassment.  ECF No. 59, PageID.1565. Defendant correctly points to Plaintiff's deposition, where she admitted that her statement to Mr. Harris was correct in that she did not want Mr. Mahoney or Mr. Marakvich involved.  *Id.*

The Court does not find that paragraph 18 of the declaration contradicts Plaintiff's testimony.  Rather, Plaintiff reiterates in this paragraph that she did not want Mr. Mahoney to be involved given Mr. Rowan's alleged "erratic and violent behavior[.]"  ECF No. 55-4, PageID.1293.  Plaintiff's asserted expectation that Mr. Mahoney and Mr. Markavich would "do their jobs and get [her] out of the hostile work environment" aligns with her deposition testimony that she spoke with these employees several times about Mr. Rowan's alleged sexual harassment.  For example, Plaintiff testified that she talked with Mr. Mahoney "[j]ust about" every

single day regarding her problems with Mr. Rowan.  ECF No.55-3, PageID.1212.
In another instance, she described an exchange with Mr. Markavich where he asked
how bad the alleged harassment was on a scale from 1 to 10.  *Id.* at PageID.1215–
16.  Plaintiff also described a conversation she had with Mr. Mahoney, where he
allegedly told her that she didn't have to continue worrying about Mr. Rowan.  *Id.*
at PageID.1274.  Paragraph 18 therefore should be viewed as an "attempt[] to
explain" Plaintiff's prior testimony.  *See Aerel, S.R.L.*, 448 F.3d at 909 (citing
*Franks*, 796 F.2d at 1237).  Specifically, the Court finds that this paragraph provides
clarity to Plaintiff's prior attempts to complain of the alleged harassment before she
ultimately decided, and confirmed in a statement to Mr. Harris, that she did not want
Mr. Mahoney and Mr. Markavich involved any further.  Accordingly, the Court
declines to strike paragraph 18.

Fourth, Defendant contests several paragraphs related to Plaintiff's job
training and performance.  ECF No. 59, PageID.1565.  In paragraphs 5, 9, and 11,
Plaintiff asserts that Mr. Mahoney and Mr. Markavich informed her that if she did
not learn the job fast enough, she would be fired or moved out and that Mr. Rowan
reported to them that Plaintiff was not "getting it."  ECF No. 55-4, PageID.1290–91.
At her deposition, Plaintiff testified that she was "competent" and "extremely
confident" in her job."  ECF No. 55-3, PageID.1280.  The Court does not find that
this testimony reflected "confusion" that Plaintiff now needs to explain.  *See Aerel,*

*S.R.L.*, 448 F.3d at 909 (quoting *Franks*, 796 F.2d at 1237).  Rather, the averments appear to be an attempt to create an issue of fact surrounding the adequacy of the training she received from Mr. Rowan.  Further, the Court takes notice that Plaintiff cites to these paragraphs in her argument opposing summary judgment for the *quid pro quo* claim.  ECF No. 55, PageID.1157.  Without a justification for these additional assertions, the Court will strike paragraphs 5, 9, and 11.

The Court does not find that paragraph 35 is contradictory nor an attempt to create a sham fact issue, however.  Paragraph 35 includes details of Plaintiff's alleged progress in obtaining a "Six Sigma Green Belt" training.  ECF No. 55-4, PageID.1296–97.  In her deposition, Plaintiff testified that she was on her way to obtaining her certification and that she had just graduated from *one* of the certification classes.  ECF No. 55-3, PageID.1280 (emphasis added).  Plaintiff's declaration supports her earlier testimony that her certification was not yet complete.  Absent a direct contradiction, the court should only strike this paragraph if it finds the declaration was "added in an attempt to create a sham fact issue."  *See Aerel, S.R.L.*, 448 F.3d at 909.  Plaintiff's testimony reveals that she was questioned about her competence in her job and that Plaintiff responded by mentioning her Green Belt certification.  However, Defendant's counsel followed up with a more general question about Plaintiff's ability to meet all expectations in the performance of her job duties.  ECF No. 55-3, PageID.1280.  Paragraph 35 of the declaration is therefore

an "attempt[] to explain" Plaintiff's progress which was previously alluded to but not further explored during her deposition.  *See Aerel, S.R.L.*, 448 F.3d at 909 (citing *Franks*, 796 F.2d at 1237).  Accordingly, the Court will not strike paragraph 35.

Fifth, Defendant argues that Plaintiff "tries to backdate, by three weeks, her alleged report of harassment to [Ms.] Clemons."   ECF No. 59, PageID.1565. Defendant claims that Plaintiff's assertions concerning an alleged meeting with Ms. Clemons on November 3, 2018 is yet another sham.  *Id.*  While it is true that Plaintiff testified to speaking with Ms. Clemons on November 25, 2018, the Court takes notice that she also explained that she could not recall whether she spoke to Ms. Clemons at an earlier date.  ECF No. 55-3, PageID.1240.  Plaintiff also testified to having positive interactions with Ms. Clemons in the past, including a time when she allegedly gave Plaintiff a bracelet and told her "to keep going, to preserve over everything[.]"  *Id.* at PageID.1231.

In her declaration, Plaintiff provides further details about her meeting with Ms. Clemons where she received a "Nevertheless SHE PERSISTED" bracelet.  ECF No. 55-4, PageID.1294.   She also asserts that she met with Ms. Clemons on "numerous prior occasions" prior to her November 25, 2018 meeting.  *Id.*  The Court finds that these paragraphs are not evidence of Plaintiff's attempt to create a sham fact issue.  Rather, paragraphs 23 through 26 are attempts to explain conversations which Plaintiff alluded to, but was unable to provide detail to, at her deposition.  *See*

*Aerel, S.R.L.*, 448 F.3d at 909 (citing *Franks*, 796 F.2d at 1237) ("listing 'whether the earlier testimony reflects confusion [that] the affidavit attempts to explain' as one factor in determining the existence of sham fact issue."). Accordingly, the Court concludes that these paragraphs do not constitute an attempt to create a shame fact issue and will thus not be stricken.

While the Court takes notice that Defendant argues for "nearly every paragraph" to be stricken, the Court declines to do so at this juncture. Upon review of Plaintiff's declaration, the FAC, and Plaintiff's two-day deposition, the Court finds that the remaining paragraphs are neither contradictory nor attempts to create additional sham issues of fact. For example, Plaintiff's declaration that Mr. Rowan had pictures and videos of himself engaging in sex acts with several women in paragraph 14, ECF No. 55-4, PageID.1292, directly aligns with Plaintiff's testimony that she saw pictures and videos of different women on his phone, including one of an employee from the engine line, ECF No. 55-3, PageID.1285.

In sum, the Court will strike paragraphs 5, 9, 11, and 20 of Plaintiff's declaration.

## B. Summary Judgment

### 1. Legal Standard

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252.   Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### 2.  Analysis

Defendant argues that summary judgment is appropriate for all of Plaintiff's claims.    Plaintiff's FAC includes a racial harassment/racially hostile work environment claim in violation of 42 U.S.C. § 1981.  ECF No. 46, PageID.663–65. The Court notes that this is the only federal claim in the instant matter.  Plaintiff claims that Defendant "subjected her to unwanted racial comments which were severe and pervasive, and which constituted a racially hostile work environment." *Id.* at PageID.664.

The same principles that govern sexual harassment also govern claims of racial harassment. *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999).  To

succeed on a claim of a racially hostile work environment, a plaintiff must demonstrate that (1) she belonged to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (5) the defendant knew or should have known about the harassment and failed to act. *Williams v. CSX Transportation Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011). Defendant challenges the third, fourth, and fifth elements of a hostile work environment claim pursuant to § 1981.[4]

### a. Based on Race

A plaintiff may prove that the alleged harassment was based on race either by "(1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511

---

[4] The Court denotes that Defendant articulates two reasons why Plaintiff's racially hostile work environment claim fails: "(1) the complained-of conduct was sexual, and courts have repeatedly refused to permit race-harassment claims over sexual comments merely because the sexual comments reference "chocolate" or "black"; and (2) because the record shows that Plaintiff did not allege racial complaints to Mahoney or Markavich—but only to Harris—Ford promptly and adequately remedied that complaint by suspending [Mr.] Rowan the same day the complaint was made." ECF No. 59, PageID.1572–73. While the Court recognizes these arguments as challenges to the third and fifth elements of a hostile work environment claim, it also notes that Defendant argues that the alleged comments "do not constitute severe or pervasive racial harassment." ECF No. 51, PageID.723. This additional argument challenges the fourth element of a hostile work environment claim. Accordingly, the Court will address these three elements.

(6th Cir. 2011) (internal citation omitted).  The alleged harassment may contribute to a plaintiff's proof of a hostile work environment if it would not have occurred but for the plaintiff's race.  *Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999); *see also Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).  "[A] showing of the use of racial epithets in a work environment may create an inference that racial animus motivated other conduct as well."  *Jackson*, 191 F.3d at 662 (internal quotation marks and citation omitted).

Here, Plaintiff relies on direct evidence, citing to several race-specific and derogatory terms which Mr. Rowan allegedly used towards her when they worked together.  ECF No. 55, PageID.1161.  Specifically, Plaintiff alleges that Mr. Rowan repeatedly asked to see Plaintiff's breasts: "[l]et me see those black mounds.  Let me see those brown mountains."  ECF No. 55-3, PageID.1226.  Further, Mr. Rowan purportedly called Plaintiff a "chocolate jolly rancher" and "spicy chocolate."  ECF *Id.* at PageID.1230–31.  Mr. Rowan also allegedly told Plaintiff that he wanted to add a black woman to his "collection."  *Id.* at PageID.1230.  The statements are racially charged and directed at Plaintiff.  *See Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 433 (6th Cir. 2014).

Defendant argues that these comments, while inappropriate and offensive, were made in a "plainly sexual" context and thus do not establish a racially hostile environment.  ECF No. 51, PageID.723.  It points to three district court decisions

which have addressed "similar efforts to recast sexual comments as racial harassment."[5]  *Id.*  In *Wyatt v. Nissan N. Am., Inc.*, the only cited case within the Sixth Circuit, the district court held that the plaintiff did not sufficiently allege severe and pervasive racially harassing conduct.  No. 3:17-cv-1545, 2019 WL 6682197, at *4 (M.D. Tenn. Dec. 6, 2019).  There, the plaintiff purported that two managers made "highly offensive racial remarks," including calling her a "brownie bite" and referencing her "chocolate skin."  *Id.*  In a footnote, the district court denoted that such remarks are "racial."  *Id.* at *18 n.6.  The district court's determination that plaintiff's allegations were insufficient to survive summary judgment was based on plaintiff's inability to satisfy the fourth element—whether the alleged harassment was "sufficiently severe or pervasive"—not the third element.

The Court finds that Mr. Rowan's statements in the instant case are plainly based on Plaintiff's race.  Accordingly, Plaintiff has met the third element of a racially hostile work environment claim.

### b.  Severe or Pervasive

The Court must next consider whether the totality of Plaintiff's race-based harassment was "sufficiently severe or pervasive to alter the conditions of [her]

---

[5] The Court notes that two of these three decisions are unpublished opinions outside of the Sixth Circuit.  *See Keever v. Mediation Ctr. Of San Joaquin*, No. 13-cv-00029, 2015 WL 75194 (E.D. Cal. Jan. 6, 2015); *Smith v. City of New York*, No. 03 Civ. 1252, 2008 WL 1970316 (S.D.N.Y. May 6, 2008).

employment and create an abusive working environment." *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 707 (6th Cir. 2007) (internal quotation marks and citation omitted). The alleged conduct "must be judged by both an objective and a subjective standard." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 251 (6th Cir. 1998). In other words, the conduct "must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Id.* (internal quotation omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011). "The harassment should be ongoing, rather than a set of isolated or sporadic incidents." *Mathews v. Massage Green LLC*, 2016 WL 1242354, at *7 (E.D. Mich. Mar. 30, 2016) (quoting *Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d 811 (E.D. Mich. 2011)).

Defendant argues that Plaintiff's claim fails because the alleged conduct does not constitute severe or pervasive racial harassment. ECF No. 51, PageID.723. In her Response, Plaintiff only asserts a conclusory argument that her claim must be submitted to a jury since the question of whether conduct is "severe or pervasive" is "quintessentially a question of fact." ECF No. 55, PageID.1162 (quoting *Jordan v.*

*City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006); *Smith v. Rock-Tenn Services, Inc.*, 813 F.3d 298, 310 (6th Cir. 2016)).   Significantly, Plaintiff fails to identify sufficient evidence to show that Mr. Rowan's alleged comments were sufficiently severe or pervasive in order to establish the fourth element of her claim.  *Id.*  Indeed, she excludes any citation to the record in her argument.[6]  *Id.*

The Court finds that the alleged racial harassment described by Plaintiff is not sufficiently severe or pervasive.  While it may satisfy the subjective prong of the hostile work environment test,[7] it does not follow that the objective prong, in and of

---

[6] The Court notes that Plaintiff's only citation to the record in this section is to her attached declaration.  ECF No. 55, PageID.1161–62.  Plaintiff points to her assertion that she allegedly told Mr. Mahoney "about the nasty texts and comments, including those that were race related."  *Id.* at PageID.1162 (citing ECF. No 55-4, PageID.1293).  Plaintiff does not cite to this evidence for the argument that the purported conduct was "severe or pervasive."  Rather, the Court construes this citation as an attempt to support an argument that she establishes the fifth element of a racial hostile work environment claim: that Defendant knew or should have known about the harassment and failed to act.  Nevertheless, the Court concluded in the previous section that this paragraph of the declaration should be stricken.

[7] Plaintiff alleges that "[a]s a direct and proximate result of [Mr. Rowan's] actions, the terms, conditions, and benefits of Plaintiff's employment were adversely affected."  ECF No. 46, PageID.664.  She purports that she perceived Mr. Rowan's comments, and reported as such to Mr. Mahoney, that the harassment was "100" on a scale of "1 to 10."  ECF No. 55-4, PageID.1216.  Further, she testified that by late October 2018, her hostile work environment had become "so over the top."  *Id.* at PageID.1213.   These allegations and testimony could indicate that Plaintiff perceived Mr. Rowan's racial remarks as sufficiently severe or pervasive to interfere with her work performance or alter the conditions of her job.  However, the Court denotes, that Plaintiff fails to offer evidence, excluding her attached declaration, that she reported Mr. Rowan's racial comments specifically to Mr. Mahoney or Mr. Markavich.

itself, is also established.  Rather, the objective prong requires conduct sufficiently severe or pervasive to create the type of "environment that a reasonable person would find it to be hostile or abusive."  *Harris*, 510 U.S. at 23.  The Sixth Circuit has not set forth an exact number of incidents that must occur within a certain period of time; however, when comparing the conduct alleged in Plaintiff's instant case to the conduct purported in other cases within this Circuit, Plaintiff's claim on the basis of race does not favorably compare.

For example, in *Williams v. CSX Transp. Co., Inc.*, the Sixth Circuit concluded that the alleged racist statements over a two-year period were not sufficiently pervasive.  643 F.3d 502 (6th Cir. 2011).  There, the court acknowledged that while the statements were "despicable," they more closely resembled "mere offensive utterance[s]" than conduct that is "physically threatening or humiliating."  *Id.* at 513 (quoting *Harris*, 510 U.S. at 23).   Additionally, another court in this district determined that alleged threatening statements, including a number of racially charged jokes, did not support plaintiff's claim because they were isolated.  *Garner v. Gerber Collision & Glass*, No. 16-12908, 2017 WL 3542192 (E.D. Mich. Aug. 24, 2017); *see also Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 432–33 (6th Cir. 2014) (holding that two instances of racist jokes and an episode in which a supervisor stood behind plaintiff and fashioned a noose out of a telephone cord did not constitute a hostile work environment).

-28-

The Court also takes notice that there is little evidence documenting the frequency and pervasiveness of the alleged conduct here.  Another court in this district took issue with the lack of evidence in its analysis of the objective prong in a hostile work environment claim.  *See Hunter v. General Motors LLC*, No. 17-10314, 2019 WL 1436847, at *11 (E.D. Mich. Mar. 31, 2019).  There, the court focused on plaintiff's inability to provide specific examples of the alleged sexual harassment despite asserting that she was subjected to a hostile work environment on a "daily basis."  *Id.*  The court concluded that plaintiff did not proffer "sufficient evidence from which a jury could reasonably conclude that she was subjected to a pervasive hostile work environment on the basis of sex."  *Id.*; *see also E.E.O.C. v. Spitzer Mngt, Inc.*, 866 F.Supp.2d 851 (N.D. Ohio 2012) (concluding that plaintiff's vague testimony regarding the alleged racial harassment of its employees and their frequency was insufficient evidence to meet the pervasiveness standard).

In sum, a hostile work environment claim cannot rest upon "the sporadic use of abusive language, gender[or race]-related jokes, and occasional teasing." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998) (internal quotation marks and citation omitted); *Harrison v. Oakland County*, 612 F. Supp. 2d 848, 857 (E.D. Mich. 2009).  Here, while Plaintiff says she was "constantly" subjected to Mr. Rowan's racially charged comments, ECF No. 55-3, PageID.1226, she presents little evidence regarding the frequency of

the alleged conduct.  She testified that Mr. Rowan "constantly harass[ed her], asking [her] to "[l]et me see those black mounds.  Let me see those brown mountains." *Id.* She also asserted that Mr. Rowan called her a "chocolate [j]olly rancher" on "several occasions." *Id.* at PageID.1231.  When referring Mr. Rowan's racial comments generally, Plaintiff explained he would "constant[ly] comment." *Id.* In her FAC, Plaintiff alleges that Mr. Rowan "repeatedly" told her that he wanted to have sex with her, explaining that he wanted to add a black woman to his "collection." ECF No. 46, PageID.659.  At her deposition, Plaintiff did not speak to the frequency of this specific statement; rather, she testified generally to Mr. Rowan's alleged statement that he desired to have a "chocolate one[] in [his] collection of women." ECF No. 55-3, PageID.1231.

In addition to this testimony, the Court notes that there is one text message in the record where Mr. Rowan employs a racially charged comment.  Specifically, he texted "[n]ot exactly the black mounds I wanted to feast my eyes upon ..." on October 22, 2018.  ECF No. 55-11, PageID.1522.  None of the other provided text exchanges included the alleged racial harassment.  *See generally* ECF No. 55-11. Further, the Court takes notice of the lack of questions regarding Plaintiff's alleged racial harassment claim against Mr. Rowan in both Mr. Mahoney's and Mr. Markavich's investigatory interviews with Mr. Harris.  In their interviews, Mr. Harris only questioned Mr. Mahoney and Mr. Markavich on what they did when

Plaintiff informed them that Mr. Rowan was *sexually* harassing her.  ECF No. 51-6, PageID.848, 851 (emphasis added).

The Court further emphasizes that Plaintiff failed to cite to any of this evidence in her Response brief; she instead offered the conclusory statement that her "hostile work environment (race) claim must [] be submitted to a jury."  ECF No. 55, PageID.1162.  Further, at the hearing, Plaintiff only spoke generally to how Mr. Rowan's race-related comments were "overwhelming," as they were allegedly made "constantly."  The Court finds that Plaintiff has not proffered sufficient, specific evidence from which a jury could reasonably conclude that she was subjected to a pervasive hostile work environment based on her race.[8]

Accordingly, the Court concludes that the alleged conduct does not satisfy the objective prong of the hostile work environment standard on either severity or pervasiveness.  Since Plaintiff therefore fails to meet the fourth requirement to show a hostile work environment as it relates to her racial claim, the Court need not consider the fifth element: whether Defendant knew or should have known of the offensive conduct and failed to respond.

---

[8] The Court's conclusion as to the racially hostile work environment claim (Count II) does not affect Plaintiff's sexual harassment and sexually hostile work environment claim (Count I).  The Court notes, without making any further conclusions, that Plaintiff included several citations to the record and presented supportive case law in her argument opposing summary judgment for this claim.  *See* ECF No. 55, PageID.1150–55.

"[T]his court has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017). "These incidents, if true, are offensive and condemnable. But they are not actionable as a hostile work environment." *Id.* at 328. The conduct which Plaintiff allegedly endured while employed at Defendant's Dearborn Truck Plant, is "despicable," but "not sufficiently 'severe' or 'pervasive' standing alone to create a jury question of [Plaintiff]'s racially hostile work environment claim." *See id.* at 512.

Accordingly, the Court finds that summary judgment in favor of Defendant on Plaintiff's racially hostile work environment claim (Count II) is warranted.

### c. Plaintiff's Remaining State Claims

Plaintiff's FAC includes two state claims: (1) sexual harassment/*quid pro quo* and sexually hostile work environment in violation of Michigan's ELCRA (Count I) and (2) sexual assault and battery (Count III). *See* ECF No. 46. The Court declines supplemental jurisdiction over these remaining claims against Defendant pursuant to 28 U.S.C. § 1367(c)(3) and accordingly dismisses these claims without prejudice.

"A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1995) (internal citation omitted); *see also City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 173 (1997) (explaining that

under the supplemental jurisdiction statute, federal courts decide whether to exercise supplemental jurisdiction "at every stage of the litigation"). If the federal claim(s) is dismissed before trial, even though that claim is not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The Sixth Circuit has determined that when all federal claims are dismissed before trial, the "balance of considerations" typically points to dismissing the state law claims or remanding them to state court. *See id.*; *Musson Theatrical*, 89 F.3d at 1254–55; *Perry v. Se. Boll Weevil Eradication Found.,* 154 F. App'x. 467, 478 (6th Cir. 2005) (noting that dismissal is the "clear rule of this circuit") (internal citations omitted).

"In determining whether to exercise supplemental jurisdiction, federal courts balance the values of judicial economy, convenience to parties, fairness, and comity to state courts." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) (internal citations omitted). Here, the relevant factors weigh in favor of dismissing Plaintiff's remaining state claims. Pursuant to the Court's findings as to Plaintiff's racial harassment and racially hostile work environment claim, no federal subject-matter jurisdiction remains. The state court is well-equipped to try the remaining state law claims. The parties' completed discovery in this Court will be available in state court.

Accordingly, after balancing the interests, the Court declines supplemental jurisdiction over Counts I and III.  The Court will thus deny without prejudice in part Defendant's Motion as it relates to Counts I and III.

## IV. CONCLUSION

For the reasons articulated above, the Court will **GRANT IN PART** Defendant's Motion for Summary Judgment [#51] on Plaintiff's racial harassment and racially hostile work environment in violation of 42 U.S.C. § 1981 claim (Count II).

**IT IS FURTHER ORDERED** that the Court will **DENY WITHOUT PREJUDICE IN PART** Defendant's Motion for Summary Judgment [#51] on Plaintiff's remaining Counts I and III.  The Court declines supplemental jurisdiction over these remaining state law claims against Defendant pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS SO ORDERED.**

Dated:      May 12, 2020

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 12, 2020, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager