# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>Deborah S. Hunt<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed: September 02, 2021

Mr. Thomas J. Davis
Ms. Elizabeth Phelps Hardy
Kienbaum, Hardy, Viviano, Pelton & Forrest
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI 48009

Ms. Stephanie Douglas
Mr. Grant A. Newman
Bush, Seyferth
100 W. Big Beaver Road, Suite 400
Troy, MI 48084

Ms. Carol Laughbaum
Law Offices
33 Bloomfield Hills Parkway
Suite 250
Bloomfield Hills, MI 48304

Re: Case No. 20-2032, *DeAnna Johnson v. Ford Motor Company*
Originating Case No. : 2:19-cv-10167

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DEANNA JOHNSON,

        *Plaintiff-Appellant,*

    *v.*

FORD MOTOR COMPANY,

        *Defendant-Appellee.*

No. 20-2032

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:19-cv-10167—Gershwin A. Drain, District Judge.

Argued: June 10, 2021

Decided and Filed: September 2, 2021

Before: MOORE, CLAY, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Carol A. Laughbaum, STERLING ATTORNEYS AT LAW, P.C., Bloomfield Hills, Michigan, for Appellant. Stephanie A. Douglas, BUSH SEYFERTH PLLC, Troy, Michigan, for Appellee. **ON BRIEF:** Carol A. Laughbaum, STERLING ATTORNEYS AT LAW, P.C., Bloomfield Hills, Michigan, for Appellant. Stephanie A. Douglas, Grant A. Newman, BUSH SEYFERTH PLLC, Troy, Michigan, Elizabeth P. Hardy, Thomas J. Davis, KIENBAUM HARDY VIVIANO PELTON & FORREST, PLC, Birmingham, Michigan, for Appellee.

───────────────

## OPINION

───────────────

CLAY, Circuit Judge. Plaintiff DeAnna Johnson appeals the district court's order granting summary judgment to Defendant Ford Motor Company ("Ford") on her racial harassment and racially hostile work environment claim under 42 U.S.C. § 1981 and striking

portions of her declaration.  Because the district court erred in granting summary judgment to Ford and abused its discretion in striking a portion of Johnson's declaration, we **REVERSE** the district court's judgment and **REMAND** to the district court for further proceedings.

## BACKGROUND

DeAnna Johnson is a 56-year-old African American woman who was hired by Ford Motor Company on June 25, 2018, as a "process coach"—also referred to as a production supervisor—at Ford's Dearborn Truck Plant.  Process coaches are the immediate supervisors to hourly employees working on the assembly line. Johnson was assigned to the frame and engine line and trained for about a month with "Darnell," who was a more senior production supervisor. (R. 55-3, Johnson Dep. at PageID # 1203.)  Johnson was also part of the A-crew who worked from 5:30 AM until whenever the line shut down for the day, Monday through Thursday.  She reported to Senior Process Coach Richard Mahoney and Team Manager William Markavich, to whom Mahoney also reported.

In July 2018, Markavich assigned Johnson to shadow Nick Rowan in order to continue her training on how to run the frame and engine line, at which point Johnson moved to the B-crew, which worked the afternoon shift, Tuesday through Friday. "Shadowing" consisted of following around the assigned process coach, watching the boards that "tell them what jobs are going down," and "training for payroll" by learning how to input and adjust time entries. (R. 55-9, Rowan Dep. at PageID # 1460.)  Rowan had been working at Ford since 2005 and as a production supervisor at the Dearborn Truck Plant since 2008, and he had previously been shadowed by new process coaches.  While Johnson was shadowing him, Rowan was in a position to evaluate Johnson's performance as a process coach.

During his time at Ford, Rowan was known to have engaged in sexual relationships with some of the female hourly employees, but none of these women accused Rowan of harassment, instead indicating that the relationships were consensual.  As a result of these rumors, Rowan was often relocated to different areas of the plant.  Additionally, according to Johnson's deposition, Rowan would get angry and punch the inside of his cubicle and his filing cabinet.

In August 2018, Rowan started making unwanted and sexually inappropriate comments to Johnson as well as to the female hourly employees under his supervision. Rowan's comments towards Johnson escalated into demands for pictures of Johnson's breasts and vagina; sending her lewd messages and inappropriate photos beginning in late August or early September, including on one occasion a picture of his "erect penis" and on another occasion a picture of his crotch in "[a]nimal print underwear;" and showing her pornographic videos and images, often of female hourly employees that worked with him. (R. 55-3, Johnson Dep. at PageID # 1215, 1227, 1230–32, 1285–86; R. 55-4, Johnson Decl. at PageID # 1291–92; R. 55-10, Rowan Texts at PageID # 1501–19.) Rowan would ask for photos of her vagina "several times a week" and would show her pornographic images "every day." (R. 55-3, Johnson Dep. at PageID # 1242, 1287.) Rowan constantly made comments and sent text messages to Johnson that were both sexual and racial in nature: telling her that he wanted to see her "black mounds" and "black mountains;" referring to her as a "chocolate Jolly Rancher" and as "spicy, chocolate;" and indicating that he wanted to add a Black woman to his "collection of women." (*Id.* at PageID # 1226, 1230–31; R. 55-4, Johnson Decl. at PageID # 1293.)

Any time Johnson asked him for help on a work-related matter, Rowan would ask for a picture of her vagina or breasts or indicate that she owed him these pictures. And though she was "competent in performing the duties of [her] job," Johnson felt that there was about "60 percent of the job" for which she needed more training from Rowan that she did not receive, particularly as related to payroll. (R. 55-3, Johnson Dep. at PageID # 1280–81.)

Johnson testified at her deposition that she first reported Rowan's inappropriate and sexual comments and conduct to Mahoney in August and thereafter spoke to him every day regarding Rowan's conduct.[1] Johnson also testified that she showed Mahoney the pictures that

---

[1] When she told Mahoney that she "need[ed] to go to HR and report everything that's going on inside this entire plant," in a crew meeting, he responded, "You've only been here for a hot f---ing minute. You better watch what you do and watch what you say. I have kids to take care of. I have a wife. And you're running around here saying sh-t. You better watch what you say." (R. 55-3, Johnson Dep. at PageID # 1212.) In his deposition, Mahoney denied making this response to Johnson.

No. 20-2032                  *Johnson v. Ford Motor Co.*                  Page 4

Rowan had sent her contemporaneously with when she received them.[2] On the day she showed Mahoney the picture of Rowan's "erect penis,"[3] Johnson told Mahoney, "I can't do it over here anymore. You guys got to move me," after which Mahoney walked over to Markovich to inform him about her complaints regarding Rowan. (*Id.* at PageID # 1215.) Markavich then approached Johnson and said, "'Okay. I need to know this. On a scale from 1 to 10, how bad is it between you and Nick Rowan?' [Johnson's] reply was '100.' And he goes, 'Oh, God, I don't want to hear anything.'" (*Id.* at PageID # 1216.) Markavich later texted Johnson for her to "write down everything [Rowan] did and we'll handle it tomorrow." (*Id.*) On or around when she showed the picture to Mahoney, and subsequently spoke to Markavich, Johnson passed out due to stress while at work and was taken to Beaumont Hospital. Following this, Rowan texted Johnson, "I knew I shouldn't have shown you that picture." (*Id.* at PageID # 1267; R. 55-10, Rowan Texts at PageID # 1517.)

In early November, Johnson moved to the C-crew and to the chassis line for a few weeks, where she did not have to work with Rowan, but then had to switch back to the frame and engine line for a few days to cover for an employee on that line who was absent. On November 16, 2018, while Johnson was getting up from her cubicle and walking over to the copy machine, Rowan came over to her and sexually assaulted her by "put[ting] his hand down [her] blouse and grab[bing] [her] breast." (R. 55-3, Johnson Dep. at PageID # 1233.)

Following the assault, on November 25, 2018, Johnson met with Crew Operations Manager LaDawn Clemons to discuss Rowan's conduct. Clemons testified at deposition that at first Johnson spoke about the situation as a hypothetical. Once she realized that Johnson was speaking about herself, Clemons said, "DeAnna, if it's you, I need to know, and I need true details if you really do want it to stop;" and Clemons "made [Johnson] aware that [she] would have to report it" because of Ford's zero tolerance policy regarding sexual harassment. (R. 55-5,

---

[2]Both Mahoney and Markavich testified at their depositions that they did not know about Johnson's claim that Rowan was harassing her until after he was reported to Human Resources, and that neither of them had seen any of Rowan's messages or pictures sent to Johnson via text.

[3]Rowan sent this photo to Johnson on September 13, 2018, and when she showed the picture to Mahoney, he said that she "needed to warn him before showing him a 'wienie' picture." (R. 55-4, Johnson Decl. at PageID # 1292.)

Clemons Dep. at PageID # 1309.)  Johnson told Clemons about how Rowan touched her breast and asked her for naked pictures of herself, and, after Johnson told this to Clemons, Clemons indicated "that was enough for [her]," and she "didn't need to see any pictures."  (*Id.*)  Johnson testified that she told Clemons that she was coming to her because Mahoney and Markavich, who already knew about Rowan's conduct and comments towards her, "just made a mockery out of [the situation]," "scared [her] to death," and "put [her] in a horrible position with threats." (R. 55-3, Johnson Dep. at PageID # 1209.)

After meeting with Johnson, on November 26, 2018, Clemons reported Johnson's claims regarding Rowan to her boss, Corey Williams, and to Les Harris, who worked in Human Resources as a Salaried Personnel Supervisor, via email.  After Clemons' report, Harris took statements from Clemons, Johnson, Markavich, Mahoney, and Rowan.  Harris interviewed Johnson for about 15–20 minutes, and Harris typed up what she said "word-for-word via computer, captured it in a Word file, reviewed it with her," and "[s]he signed off on" the statement.  (R. 55-6, Harris Dep. at PageID # 1338.)  Johnson provided Harris with some of the pictures that Rowan had sent her and told Harris that Rowan had been asking her to send him nude photos of herself.  The next day, Johnson sent an email to provide Harris with more information that she did not disclose during the interview, including that she had reported her concerns to Mahoney—who she was certain had told Maravich about what was happening—and that Rowan had grabbed her breast and later texted her to apologize for his "hand slippage." (R. 51-2, Email to Harris at PageID # 775.)

After Rowan's interview with Harris, in which Rowan denied most of the allegations against him, Harris suspended Rowan pending the outcome of the investigation.  Harris asked if he could go through Rowan's phone in connection with the investigation, but Rowan denied him consent to do so.  Harris also sought consent to search Johnson's phone, which she initially granted, but, after Harris accidentally sent Johnson a form requiring consent to search her home, Johnson did not hand over her phone.  Johnson proceeded to take unpaid medical leave and never returned to Ford.  Rowan was ultimately terminated for violating Ford policy on December 21, 2018.

Johnson filed her complaint against Ford on January 17, 2019, in the U.S. District Court for the Eastern District of Michigan seeking damages and injunctive relief. In her amended complaint, she asserted the following claims: (1) sexual harassment/quid pro quo and hostile work environment under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.*; (2) racial harassment/racially hostile work environment under 42 U.S.C. § 1981; and (3) sexual assault and battery. Ford filed a motion for summary judgment on all claims on the following grounds: (1) Johnson cannot demonstrate that Rowan engaged in quid pro quo harassment for which Ford can be held vicariously liable because Rowan was not her supervisor; (2) Johnson cannot proceed on her hostile work environment claim because Ford remedied the harassment by immediately suspending Rowan following her report of Rowan's misconduct; (3) Johnson cannot state a racial harassment claim because she has not demonstrated severe or pervasive racial harassment and Ford remedied the harassment by suspending Rowan; and (4) Ford cannot be held vicariously liable for Rowan's sexual assault committed only a few days before he was suspended.

Johnson's response in opposition to Ford's motion for summary judgment contended that (1) her sexual harassment and hostile work environment claim under ELCRA can proceed because there is a genuine dispute of material fact regarding whether Ford had notice of Rowan sexually harassing Johnson; (2) Ford can be vicariously liable for Rowan's quid pro quo harassment because Rowan was acting in a de facto supervisory role and he engaged in an adverse employment action by denying her training; (3) Johnson has sufficiently stated a racial harassment claim because Rowan's comments were based on race and whether the harassment was severe or pervasive is a question of fact for the jury to decide; and (4) Ford can be held vicariously liable for Rowan's sexual assault because Ford knew or should have known about his inappropriate sexual conduct towards Johnson.

The district court granted in part and denied in part without prejudice Ford's motion for summary judgment. The district court struck paragraphs 5, 9, 11, and 20 of her declaration— filed after her deposition was taken and Ford's motion for summary judgment was filed—on the ground that they constituted attempts to create sham issues of fact. Regarding her § 1981 claim, the district court determined that Johnson had failed to satisfy the objective prong of the hostile

work environment test because she had not shown that the racial harassment was severe or pervasive such that a reasonable person would find the environment hostile or abusive. The district court then declined to exercise supplemental jurisdiction over Johnson's remaining state law claims and dismissed those claims without prejudice.

Johnson filed a motion for reconsideration of the district court's order granting Ford's motion for summary judgment as to her racial harassment claim and striking portions of her declaration. Johnson asserted the following three errors as warranting reversal to prevent manifest injustice: (1) Ford asked Johnson few questions about her racial harassment claim at her deposition, and her declaration was meant to fill those gaps as well as clarify her deposition testimony, rather than create sham issues of fact; (2) the district court found, contrary to the factual record and the law, that the racial harassment was not sufficiently severe or pervasive despite Rowan engaging in daily and repeated racial harassment of Johnson; and (3) the district court erroneously struck portions of her declaration related to her ability to do her job and pertaining to whether her training had been adequate. Ford opposed this motion on the grounds that (1) it was an improper attempt to relitigate the motion for summary judgment and (2) Johnson had failed to cite to a palpable defect in the district court's opinion that warranted reversal.

The district court denied Johnson's motion for reconsideration. The court found that Ford asked Johnson several times during the deposition to discuss the topics of any texts she received from Rowan, but she still failed to mention any race-related texts. Additionally, she did not amend her complaint to include mention of receiving any race-related texts from Rowan. The court also found that Johnson did not present arguments related to Rowan's specific and daily comments to her for purposes of demonstrating that the conduct was severe or pervasive, and these arguments were untimely raised for the first time at the motion for reconsideration. Finally, the district court determined that Johnson could not show that correcting the defect of

striking paragraphs of her declaration related to her training and ability to do her job would result in a different disposition of the case. This timely appeal followed.[4]

## DISCUSSION

### I. The Striking of Johnson's Affidavit

We review the district court's decision to strike portions of an affidavit for an abuse of discretion. *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906 (6th Cir. 2006). "A district court abuses its discretion when it 'relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment.'" *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (quoting *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006)).

Johnson argues that the district court abused its discretion in striking key portions of her declaration based on the "sham affidavit doctrine." Johnson contends that, in striking ¶ 20 because she failed to testify that she showed Mahoney the race-related texts from Rowan during her two-day deposition, the district court focused too much on Rowan's single racial text to her—which she showed Mahoney—rather than the racial comments Rowan made that she reported to Mahoney and were also sexual in nature.[5]

We have indicated that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Robuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986). In determining the affidavit's admissibility at summary judgment, the district court must first consider "whether the affidavit 'directly contradicts the nonmoving party's prior sworn testimony,'" which, "[i]f so, absent a persuasive justification for the contradiction, the court should not consider the

---

[4]Johnson does not appeal the district court's decision to decline to exercise supplemental jurisdiction over her state law claims and has since refiled those claims in state court.

[5]Johnson also argues on appeal that the district court erred in striking ¶¶ 5, 9, and 11 because these paragraphs were consistent with her testimony regarding Johnson's training and performance as a process coach. However, we will not disturb the district court's ruling on these paragraphs given that they relate to Johnson's state law claims, which are not at issue in this appeal. (*See* R. 61, Am. Op. & Order at PageID # 1628 (taking notice that Johnson "cite[d] to these paragraphs in her argument opposing summary judgment for the quid pro quo claim," not for her racial harassment and racially hostile work environment claim).)

affidavit." *Reich v. City of Elizabethtown*, 945 F.3d 968, 976 (6th Cir. 2019) (quoting *Aerel, S.R.L.*, 448 F.3d at 908). "If the affidavit does not directly contradict prior sworn testimony, it should be stricken if it is 'an attempt to create a sham fact issue.'" *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016) (quoting *Aerel, S.R.L.*, 448 F.3d at 908).[6] The purpose of this rule to is prevent a party from "rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony," which "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (internal quotation marks and citation omitted).

However, this rule is not intended to "prevent[] a party who was not directly questioned about an issue from supplementing incomplete deposition testimony with a sworn affidavit," which serves to "fill[] a gap left open by the moving party" and "provide[] the district court with more information, rather than less, at the crucial summary judgment stage." *Aerel, S.R.L.*, 448 F.3d at 907. This is because we do not require the deponent "to volunteer information the questioner fails to seek." *Reich*, 945 F.3d at 976; *see Briggs v. Potter*, 463 F.3d 507, 513–14 (6th Cir. 2006) (finding that the district court abused its discretion in striking a reference in a post-deposition affidavit on which the deponent "was not expressly asked" at deposition despite being "questioned generally about that June 2001 conversation"). As a result, we construe whether the affidavit directly contradicts prior deposition testimony narrowly—"[w]here a deponent is 'asked specific questions about, yet denie[s] knowledge of, the material aspects of her case, the material allegations in her affidavit directly contradict her deposition.'" *Reich*, 945 F.3d at 976 (second alteration in original) (quoting *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 353 (6th Cir. 2013)).

The district court abused its discretion in striking ¶ 20 because this paragraph did not directly contradict Johnson's deposition testimony and was not an attempt to create a sham issue of fact regarding whether Johnson reported Rowan's race-related texts to Mahoney. At her

---

[6]In determining whether an affidavit is attempting to create a sham issue of fact, we consider the following factors: (1) "whether the affiant was cross-examined during his earlier testimony," (2) "whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence," and (3) "whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." *Aerel, S.R.L.*, 448 F.3d at 909 (alteration in original) (internal quotation marks and citation omitted).

deposition, Johnson testified that she had told Mahoney about "the whole situation" with Rowan and that Mahoney "knew about the pictures and . . . the texts," (R. 55-3, Johnson Dep. at PageID # 1209), and she testified that Rowan made comments and sent messages referencing her "black mounds" and "black mountains" and calling her a "chocolate Jolly Rancher" and "spicy, chocolate," (*id.* at PageID # 1226, 1230–31).  Paragraph 20 of her post-deposition affidavit— stating that Johnson "told Rich Mahoney about the nasty texts, pictures and comments (and showed him most of the texts and pictures) including those that were race-related"—clarified what comments and messages she reported to Mahoney, which included the racially charged ones.  (R. 55-4, Johnson Decl. at PageID # 1293.)

At summary judgment, in deeming this paragraph an attempt to create a sham issue of fact, the district court focused on the fact that Johnson failed to allege in the First Amended Complaint that she told Mahoney about the race-related texts and that, when asked about the topics of the texts at deposition, Johnson mentioned only the sexually explicit pictures and the text message about Rowan's sexual harassment.  However, Johnson did allege that "Rowan would repeatedly ask to see [her] breasts," which he would refer to as "those black mounds [or mountains]," and that she "told a higher level manager, Rich Mahoney, about Rowan's constant sexual talk," which necessarily included the aforementioned references that were both sexual and racial in nature.  (R. 46, First Am. Compl. at PageID # 658–59.)  Additionally, at deposition, Ford's counsel never explicitly asked Johnson whether she shared the race-related texts and comments with Mahoney,[7] *see Briggs*, 463 F.3d at 513–14, nor did Johnson deny informing Mahoney about the racially charged messages and comments, *see Reich*, 945 F.3d at 976. Because ¶ 20 of the declaration did not directly contradict her deposition testimony that she informed Mahoney about Rowan's inappropriate texts and comments, and it was not an attempt to create a sham issue of fact, the district court abused its discretion by striking this paragraph.

---

[7]In fact, Ford's counsel asked about "the topics of texts" that Johnson showed Mahoney in the context of what Johnson told Clemons regarding which of Rowan's texts Johnson shared with Mahoney.  (R. 55-3, Johnson Dep. at PageID # 1209–10.)

## II. Johnson's Racial Harassment and Racially Hostile Work Environment Claim

"We review a district court's grant of summary judgment de novo." *McClellan v. Midwest Mach., Inc.*, 900 F.3d 297, 302 (6th Cir. 2018). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit," and a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389–90 (6th Cir. 2008). Once the moving party has met its burden, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," although the evidence need not be "in a form that would be admissible at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). All reasonable inferences are drawn in favor of the non-moving party. *Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 857 (6th Cir. 2007).

Johnson argues that the district court erred in granting summary judgment to Ford on her racial harassment and racially hostile work environment claim because Rowan's racial harassment of Johnson was ongoing and constant, which is sufficient to establish severe or pervasive harassment. Specifically, she argues that, whereas this Court's caselaw indicates that isolated and sporadic comments are insufficient to establish a hostile work environment, in the present case, Rowan made racially harassing comments to Johnson daily for four months, repeating the same comments throughout this period, which demonstrates objectively severe or pervasive harassment.

Under 42 U.S.C. § 1981, employees have "a cause of action for racial harassment in the work place" against private employers. *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999); 42 U.S.C. § 1981 (providing all persons the same right to "make and enforce contracts," which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship"). The

elements of a racially hostile work environment are as follows: (1) the plaintiff "belonged to a protected group," (2) the plaintiff "was subject to unwelcome harassment," (3) "the harassment was based on race," (4) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and (5) "the defendant knew or should have known about the harassment and failed to act." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011). Ford does not challenge the first and second elements, and the district court determined that Rowan's harassment was based on race. Therefore, the only elements in dispute on appeal are whether Rowan's race-based harassment was severe or pervasive such that it created a hostile work environment, and whether Ford knew or should have known about Rowan's harassment and failed to act.

### A. Forfeiture of Johnson's Arguments on Appeal

Before proceeding to the merits of Johnson's racial harassment claim, we address Ford's argument on appeal that Johnson has forfeited her arguments regarding her racial harassment and racially hostile work environment claim—specifically those arguments related to whether Rowan's racial harassment was sufficiently severe or pervasive. Ford contends that the arguments presented on appeal as to this element were first raised in her motion for reconsideration, and not in her response opposing Ford's motion for summary judgment, making them untimely and forfeited on appeal.

We have previously indicated that "an argument not raised before the district court is waived on appeal." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008); *Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014) ("Generally, we will not address arguments raised for the first time on appeal."). Additionally, "[a]rguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal." *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012); *Morgan v. Fed. Bureau of Alcohol, Tobacco & Firearms*, 509 F.3d 273, 277 (6th Cir. 2007). This is because a "motion for reconsideration may not be used to raise issues that could have been raised in the previous motion." *Evanston Ins. Co.*, 683 F.3d at 692 (internal quotation marks and citation omitted); *see also Indah v. SEC*, 661 F.3d 914, 924 (6th Cir. 2011) (noting that E.D. Mich. Local Rule 7.1(g) "specifically states

that merely presenting the same issues that the court previously ruled on is not an acceptable ground for reconsideration").

Because this rule is not jurisdictional, "we have, on occasion, deviated from the general rule in 'exceptional cases or particular circumstances' or when the rule would produce 'a plain miscarriage of justice.'" *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) (quoting *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988)). For example, in *Pinney Dock and Transport Company*, we held that this Court can address an issue that would otherwise be forfeited on appeal where it "is presented with sufficient clarity and completeness and its resolution will materially advance the progress of this already protracted litigation." 838 F.2d at 1461. In *Friendly Farms v. Reliance Insurance Company*, we provided the following factors to guide the exercise of our discretion to hear forfeited issues on appeal: (1) "whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts;" (2) "whether the proper resolution of the new issue is clear and beyond doubt;" (3) "whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice;" and (4) "the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court." 79 F.3d 541, 545 (6th Cir. 1996).

In the present case, any forfeiture of Johnson's arguments on appeal regarding whether Rowan's harassment based on race was severe or pervasive is excused. In her response in opposition to Ford's motion for summary judgment, Johnson argued that "[w]hether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment under federal law is quintessentially a question of fact," and "Plaintiff's hostile work environment (race) claim must therefore be submitted to a jury." (R. 55, Pl.'s Resp. Opposition Mot. Summ. J. at PageID # 1162 (internal quotation marks and citation omitted).) However, in the "Pertinent Facts" section, she cited to portions of the record demonstrating Rowan's race-based comments and messages, some of which occurred "daily and repeatedly." (*Id.* at PageID # 1136–37.) And, after identifying the relevant portions of the record, the district court determined that as a matter of law that Johnson had failed to provide sufficient evidence demonstrating that Rowan's racial harassment was severe or pervasive such that a reasonable person would find the environment to

be hostile, noting that she failed to provide evidence of the "frequency and pervasiveness" of Rowan's racially charged comments and messages. (R. 61, Am. Op. & Order at PageID # 1636–41.) As a result, the issue of whether Rowan's racial harassment was sufficiently severe or pervasive to be objectively hostile is a question of law and does not require any further factual determination. *See Bryant v. Dollar General Corp.*, 538 F.3d 394, 400 (6th Cir. 2008) (finding that "Dollar General's challenge to the validity of a federal regulation" could be addressed on appeal, despite not being raised below, because it "present[ed] a pure [] question of law and require[d] no further development of the record").

Additionally, both Johnson and Ford have fully briefed the issue "with sufficient clarity and completeness" for us to decide the issue. *Pinney Dock & Transp. Co.*, 838 F.2d at 1461. Both at the district court in her motion for reconsideration and before this Court on appeal, Johnson presented the argument that the record demonstrates severe or pervasive racial harassment because Rowan made racially harassing comments to Johnson daily and repeatedly, standing in stark contrast to the cases involving "isolated or sporadic comments" deemed by this Court to be insufficiently severe or pervasive. (R. 63, Mot. for Reconsideration at PageID # 1662 (emphasis omitted); Appellant Br. at 26–29.) Ford has similarly responded to this argument both in its response to Johnson's motion for reconsideration below and in its responsive brief on appeal. Finally, as discussed futher below, failure to take up this issue on appeal will result in a "miscarriage of justice" because the district court plainly erred in finding that Johnson had not presented sufficient evidence of objectively severe or pervasive racial harassment, despite there being evidence in the record of constant racially harassing comments. *Friendly Farms*, 79 F.3d at 545. Therefore, we excuse any forfeiture of Johnson's arguments regarding the severe or pervasive nature of Rowan's race-based harassment and proceed to address her arguments on the merits.

## B.  Severe or Pervasive Racial Harassment

As indicated, the district court granted summary judgment to Ford on Johnson's racial harassment and racially hostile work environment claim based on its conclusion that she had failed to satisfy the objective prong of the severe or pervasive inquiry. In determining whether the harassment is sufficiently severe or pervasive to create a hostile work environment, "the

conduct in question must be judged by both an objective and a subjective standard." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 251 (6th Cir. 1998) (quoting *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)).  This means that "[t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Id.* (quoting *Black*, 104 F.3d at 826).

"Because the same principles that govern sexual harassment also govern claims of racial harassment," we look at the totality of the circumstances in determining whether the conduct created a hostile work environment. *Jackson*, 191 F.3d at 658.  The Supreme Court has indicated that this inquiry is not "a mathematically precise test" but has provided some guidance on relevant considerations, "includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 22–23 (1993).  We have clarified that "[t]he totality of the circumstances, of necessity, includes all incidents of alleged harassment;" therefore, "the issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999).  Generally, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted).  But we have noted that "comments and harassing acts of a 'continual' nature are more likely to be deemed pervasive" and evidence of an objectively hostile work environment. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (quoting *Abeita*, 159 F.3d at 252).

For example, in *Abeita*, we reversed the district court's conclusion that Abeita's evidence of sexual harassment was not sufficiently severe or pervasive to constitute an objectively hostile work environment—finding that the district court failed to consider Abeita's contention that the harassing comments "were commonplace, ongoing, and continual."  159 F.3d at 252. Although Abeita mentioned a few specific instances of the defendant's sexual comments, only one of

which was directed at her, she also testified that the defendant's "sexual comments . . . 'went beyond business and into the personal' about models and other female employees" and "were 'ongoing,' 'commonplace,' 'continuing,' and too numerous to recall in detail beyond the detail described[.]" *Id.* at 248–49. As a result, while the comments individually were not severe, they were sufficiently pervasive such that Abeita had presented enough evidence of an objectively hostile work environment to survive summary judgment. *Id.* at 252.

In the present case, the district court erred in granting summary judgment to Ford on the severe or pervasive prong of Johnson's claim because there is sufficient evidence in the record that Rowan's racial harassment was severe or pervasive enough for a reasonable person to find the work environment hostile. As the district court noted in its order, Johnson testified that, over the four-month period in which Johnson worked with Rowan at Ford, Rowan was "constantly harassing" her, (R. 55-3, Johnson Dep. at PageID # 1226), and she made specific references to Rowan's racially harassing comments, (*id.* at PageID # 1230–31). The district court erroneously discounted this testimony, determining that Johnson "present[ed] little evidence regarding the frequency of the alleged conduct." (R. 61, Am. Op. & Order at PageID # 1639–40.) But as in *Abeita*, in the present case, Johnson's testimony was sufficient to demonstrate that Rowan's constant and ongoing harassing conduct was pervasive. *See* 159 F.3d at 252.

The district court also failed to account for the fact that these comments and messages were not "mere offensive utterance[s]" but rather they were "physically threatening or humiliating." *Harris*, 510 U.S. at 23. As Johnson testified at deposition and included in her declaration, many of Rowan's harassing comments constituted specific demands to see or receive pictures of Johnson's breasts or vagina, infused with references to Johnson's race. (*See* R. 55-3, Johnson Dep. at PageID # 1226 (testifying that Rowan asked Johnson to "[l]et me see those black mounds. Let me see those brown mountains. Send me a picture when you go to the bathroom."); R. 55-4, Johnson Decl. at ¶¶ 19–20 (indicating that Rowan told Johnson that "he needed a black woman in his 'collection'" and that one day at work after "she brought him a Mounds bar" he texted her "not exactly the black mounds I wanted to feast my eyes upon").) These comments and messages go beyond "simple teasing, offhand comments, and isolated incidents" and constitute severe and pervasive racial harassment. *Faragher*, 524 U.S. at 788.

Additionally, despite rejecting Ford's argument that the comments "were made in a 'plainly sexual' context and thus do not establish a racially hostile environment," the district court impermissibly parsed out what it viewed as sexually harassing as opposed to racially harassing statements, by, for example, focusing on the fact that the record only contained one text message with "a racially charged comment." (R. 61, Am. Op. & Order at PageID # 1634, 1640.) As we noted in *Jackson*, "even though a certain action may not have been specifically racial in nature, it may contribute to the plaintiff's proof of a hostile work environment if it would not have occurred but for" the plaintiff's race. 191 F.3d at 662. And given how intertwined the sexual and racial harassment was in the present case, the district court erred in failing to consider, as part of the totality of the circumstances, those comments, messages, and pictures that were overtly sexual in addition to the race-related ones.

Finally, the district court failed to consider the evidence Johnson cited in her response in opposition to Ford's motion for summary judgment from which a reasonable person would find that Rowan's harassment unreasonably interfered with her employment. This included references to Johnson's deposition testimony where she recounted how Rowan was not properly training her for the job because she was not providing him the requested photos, as well as Johnson having an emotional breakdown and passing out at work due to stress. Based on the above, a reasonable person would find Johnson's work environment at Ford to be hostile and abusive based on Rowan's severe and pervasive racial harassment, and the district court erred in granting Ford summary judgment on this basis.

## C. Ford's Knowledge of Rowan's Racial Harassment

On appeal, Ford contends that, notwithstanding the severity or pervasiveness of Rowan's harassment, we can affirm the district court's grant of summary judgment on the ground that Johnson forfeited her arguments regarding whether Ford had notice of Rowan's harassment. In her response in opposition to Ford's motion for summary judgment, Johnson did not include any argumentation regarding Ford's knowledge of the harassment, but she did include a citation to ¶ 20 of her declaration "confirming that Plaintiff told Mahoney about the nasty texts and comments, including those that were race-related." (R. 55, Pl.'s Resp. Opposition Mot. Summ. J. at PageID # 1161–62.) And she did not raise any arguments related to this element of her

claim on appeal.  However, at summary judgment, the district court declined to reach whether Ford knew or should have known about the harassment and did not respond.  The appropriate course of action is for the district court to determine in the first instance whether there is a genuine dispute of material fact regarding whether Ford knew or should have known about Rowan's race-based harassment and failed to act in response.  *See Tilley v. Kalamazoo Cnty. Road Comm'n*, 777 F.3d 303, 314 (6th Cir. 2015) (declining to "address the additional arguments raised in the Road Commission's summary judgment motion" because "[t]he district court should address those arguments in the first instance").

## CONCLUSION

For these reasons, we **REVERSE** the district court's order granting summary judgment to Ford and **REMAND** the case for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 20-2032

DEANNA JOHNSON,

     Plaintiff - Appellant,

     v.

FORD MOTOR COMPANY,

     Defendant - Appellee.

> **FILED**
> Sep 02, 2021
> DEBORAH S. HUNT, Clerk

Before:  MOORE, CLAY, and STRANCH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED and REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk