UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————

DEANNA JOHNSON

       Plaintiff,

vs.

FORD MOTOR COMPANY,
*a Delaware corporation;*

       Defendant.

Case No. 2:19-cv-10167
Hon. Gershwin A. Drain

———————

| | |
|---|---|
| Carol A. Laughbaum (P41711)<br>STERLING ATTORNEYS AT LAW, P.C.<br>Attorneys for Plaintiff<br>33 Bloomfield Hills Pkwy., Ste. 250<br>Bloomfield Hills, Michigan 48304<br>(248) 644-1500<br>claughbaum@sterlingattorneys.com | Elizabeth P. Hardy (P37426)<br>Julia Turner Baumhart (49173)<br>Thomas J. Davis (P78626)<br>KIENBAUM, HARDY, VIVIANO,<br>  PELTON & FORREST, P.L.C.<br>Attorneys for Defendant<br>280 N. Old Woodward Ave., Ste.400<br>Birmingham, MI 48009<br>(248) 645-0000<br>ehardy@khvpf.com<br>jbaumhart@khvpf.com<br>tdavis@khvpf.com |

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

    Plaintiff, DeAnna Johnson, by her attorneys Sterling Attorneys at Law, P.C., for her Second Amended Complaint and Jury Demand, submits the following:

*Jurisdiction and Parties*

    1.    This is an action for employment discrimination, and specifically *quid pro quo* and hostile work environment sexual harassment in violation of

Michigan's Elliott Civil Rights Act, MCL 37.2101 *et seq.*; and hostile work environment racial harassment in violation of 42 USC 1981; as well as sexual assault pursuant to Michigan common law, arising out of Plaintiff's employment relationship with Defendant.

2. Plaintiff DeAnna Johnson (hereafter "Plaintiff," "Johnson" or "Plaintiff Johnson") resides within the Eastern District of Michigan.

3. Defendant Ford Motor Company (hereafter "Defendant," "Ford" or "Defendant Ford") is incorporated in the State of Delaware, and maintains its principal place of business and corporate headquarters in the Eastern District of Michigan.

4. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1331 (federal question), 28 USC 1343 (civil rights) and 28 USC 1367 (supplemental jurisdiction).

*Background Facts*

5. Plaintiff Johnson, born October 23, 1964, is a black woman.

6. Johnson became employed by Defendant Ford Motor Company in June 2018 as a Production Supervisor at the Ford Dearborn Truck Plant.

7. At all times, Johnson performed her job duties in a manner that was satisfactory or better.

8. Ford Production Supervisor Nicholas Rowan was put in charge of teaching Plaintiff the job and assessing her performance.

9. From the outset of Plaintiff's employment, Rowan subjected Plaintiff to unwanted comments and conduct of a sexual nature, and unwanted comments of both a sexual and racial nature.

10. On a daily basis, Rowan would repeatedly ask to see Plaintiff's breasts ("show me those black mounds [or mountains]"; "show me those chocolate mounds [or mountains]").

11. Rowan also called Plaintiff "chocolate jolly rancher." When she asked him what that meant, he responded that she was a chocolate treat that he wanted to lick and suck on.

12. Rowan also constantly asked Plaintiff to send him naked pictures of herself.

13. Plaintiff ignored his lewd requests.

14. On one occasion, Rowan grabbed Plaintiff's breast, and then apologized for his hand "slipping."

15. Upon information and belief, Rowan has had sex with numerous women at the plant, many of whom are his subordinates and who rely on him for favorable terms, benefits, and conditions of employment.

16. Upon information and belief, Rowan's sexual relations with various female subordinates is well known to higher management.

17. Rowan has demonstrated extremely violent and disturbing behavior in the workplace, including punching file cabinets.

18. Because Plaintiff was fearful of Rowan and his erratic behavior and because she needed her job, she attempted to be pleasant with Rowan. However, Plaintiff never participated in lewd talk or responded to his disgusting demands. Further, she told Rowan to stop the lewd behavior and that if he did not, she would report him to HR.

19. On numerous occasions, in the context of purporting to show Plaintiff photos related to work issues, Rowan stuck his cell phone in Plaintiff's face, showing her a picture or video of him engaged in sex. Plaintiff recognized some of the women in the pictures as Rowan's subordinates – women who worked the line and reported to him. Each time, Rowan would comment "oops, wrong picture" or something similar.

20. Rowan repeatedly told Plaintiff he wanted to have sex with her, advising that he did not yet have a black woman in his "collection" and wanted to add Plaintiff to his "collection."

21. Rowan had a running "joke" that Plaintiff had nipple piercings, a false claim, and that he could see them through her shirt.

22. Rowan took pictures of Plaintiff without her permission, including pictures of her rear end.

23. In approximately October 2018, Plaintiff told a higher level manager, Rich Mahoney, about Rowan's constant sexual talk, requests for sex,

4

and "sharing" sex pictures on his cell phone, and advised Mahoney that the situation was "out of hand."

24. Mahoney told Plaintiff she should "just f---k him [Rowan] and get it over with."

25. Rowan also sent Plaintiff numerous sexually suggestive inappropriate texts.

26. Rowan sent Plaintiff a photo of himself in his underwear, and pictures of his genitals, including a picture of his erect penis.

27. After receiving the penis picture, Plaintiff became ill, passed out, and sought medical treatment at Beaumont Hospital, where she was kept overnight.

28. Plaintiff was then off work for a few days.

29. After Plaintiff returned to work, she showed the penis picture to Rich Mahoney, and told him that Rowan was asking to see her breasts or send him pictures of her breasts every day, and that this had to stop.

30. Rich remarked, "Oh my god, I'm telling."

31. A higher level supervisor, Billy Markovich, asked Plaintiff how she was doing, and then remarked that he "didn't give a f---k" about her problems, leaving Plaintiff distraught and in tears.

32. A few days later, Plaintiff confronted Markovich about his rude behavior, and he apologized.

5

33. In that conversation, Markovich also asked Plaintiff how bad things were between her and Rowan "on a scale of 1 to 10." Plaintiff answered, "100."

34. Markovich's response was "Oh, God, I don't want to know" and walked away.

35. Subsequently, on a Saturday, Plaintiff reported Rowan's antics to "LaDon" who upon information and belief is an Assistant Plant Manager at Dearborn Truck.

36. That Monday, Plaintiff received a call from Les Harris from Ford's HR Department.

37. Harris hounded Plaintiff to turn over her cell phone, so that the lewd data could be taken off of it.

38. When Plaintiff asked Harris why Ford was not demanding Rowan's cell phone, Harris responded that Rowan refused to give it up.

39. Harris also asked Plaintiff to sign what he referred to as a "standard form" authorizing Ford to conduct a search of Plaintiff's home and property.

40. Harris' hounding of Plaintiff included calling her at home at 7:00 a.m. demanding that Plaintiff turn in her phone.

41. Plaintiff remains fearful of Rowan, has been forced off work on a medical leave, and has been medically unable to return to work.

42. Plaintiff has sought professional help for her workplace issues, which Ford failed to address.

43. Plaintiff has been diagnosed with post-traumatic stress disorder, among other things, due to her extremely toxic and hostile work environment at Ford Motor Company.

44. Plaintiff's future ability to work is unknown.

45. Defendant Ford has cut off Plaintiff's pay, leaving her in severe financial hardship.

## COUNT I

### *Sexual Harassment/Quid Pro Quo and Hostile Work Environment in Violation of Michigan's Elliott-Larsen Civil Rights Act*

46. Plaintiff incorporates by reference the above paragraphs as though set forth in full again here.

47. At all material times, Plaintiff Johnson was an employee and Defendant Ford was her employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA) MCL 37.2101, *et seq.*

48. Michigan's ELCRA prohibits sex discrimination, which includes sexual harassment.

49. Defendant Ford subjected Plaintiff to unwanted sexual comments and conduct, which was severe and pervasive, and which constituted a sexually hostile work environment.

50. Plaintiff's submission to Mr. Rowan's unwelcomed requests for sexual favors was an express or implied condition of Plaintiff receiving job benefits, including training.

51. The conduct at issue was intentional and willful, and engaged in with malice or with reckless disregard to the rights and sensibilities of Plaintiff.

52. Defendant failed to take prompt remedial action to end the harassment.

53. As a direct and proximate result of those actions, the terms, conditions, and benefits of Plaintiff's employment were adversely affected.

54. As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT II

*Racial Harassment/Racially Hostile Work Environment
in Violation of 42 USC 1981*

55. Plaintiff incorporates the above paragraphs as though set forth in full again here.

56. At all material times, Plaintiff Johnson was an employee and Defendant Ford was her employer, covered by and within the meaning of 42 USC 1981.

57. Section 1981 prohibits race discrimination, which includes racial harassment.

58. Defendant Ford subjected Plaintiff to unwanted racial comments which were severe and pervasive, and which constituted a racially hostile work environment.

59. Defendant harassed Plaintiff and subjected her to a hostile work environment on the basis of her race.

60. The conduct at issue was intentional and willful, and engaged in with malice or with reckless disregard to the rights and sensibilities of Plaintiff.

61. Defendant failed to take prompt remedial action to end the harassment.

62. As a direct and proximate result of those actions, the terms, conditions, and benefits of Plaintiff's employment were adversely affected.

63. As a direct and proximate result of the Defendants' wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and

embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT III

### *Sexual Assault and Battery*

64. Plaintiff incorporates the above paragraphs as though set forth in full again here.

65. Defendant Ford, by its agent Nicholas Rowan, subjected Plaintiff to unwelcome touching of a sexual nature.

66. Rowan's actions were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

67. As a direct and proximate result of those and the above enumerated actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected and she was forced off on a medical leave.

68. As a direct and proximate result of the Defendant's wrongful and illegal treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff DeAnna Johnson demands judgment against the Defendant as follows:

**A.  Legal Relief:**

1. Compensatory damages in whatever amount she is found to be entitled;

2. Exemplary damages in whatever amount she is found to be entitled;

3. Punitive damages in whatever amount she is found to be entitled;

4. A judgment for lost wages and benefits in whatever amount she is found to be entitled;

5. An award of interest, costs and reasonable attorney fees; and,

6. Whatever other legal relief appears appropriate at the time of final judgment.

**B.  Equitable Relief:**

1. An injunction out of this Court prohibiting any further acts of wrongdoing;

2. An award of interest, costs and reasonable attorney fees; and,

3. Whatever other equitable relief appears appropriate at the time of final judgment.

## JURY DEMAND

Plaintiff, by her attorneys, hereby demands a trial by jury of all issues in this cause.

<table>
<tr><td>

**PROOF OF SERVICE**

I certify that on October 25, 2021, I filed the foregoing paper with the Clerk of the Court using the ECF system which will electronically send notification to all counsel of record.

    /s/Carol A. Laughbaum
Sterling Attorneys at Law, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com

</td><td>

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:  /s/Carol A. Laughbaum
      Carol A. Laughbaum (P41711)
      Attorney for Plaintiff
      33 Bloomfield Hills Pkwy., Ste. 250
      Bloomfield Hills, MI 48304
      (248) 644-1500

</td></tr>
</table>