UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

     Plaintiff,

v.

FORD MOTOR COMPANY,
a Delaware corporation,

     Defendant.

Case No. 19-cv-10167

Honorable Gershwin A. Drain

Magistrate Elizabeth A. Stafford

---

STERLING ATTORNEYS AT LAW, P.C.
Carol A. Laughbaum (P41711)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

---

**Defendant's Renewed Motion for Summary Judgment**

Defendant Ford Motor Company moves this Court, under Rule 56, for entry of summary judgment. In support of the motion, Ford states:

1.      Johnson filed her Second Amended Complaint on October 25, 2021. ECF No. 81.

2.      For the reasons set forth in the accompanying brief, there is no genuine dispute as to any material fact arising out of the claims stated in Johnson's Complaint, and Ford is entitled to judgment as a matter of law.

3.      On December 6, 2021, counsel for Ford explained the nature of the motion and relief it would be seeking. Concurrence was denied, requiring this motion.

<div style="margin-left:45%">

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By: */s/ Elizabeth Hardy*
     Elizabeth Hardy (P37426)
     Thomas J. Davis (P78626)
     Attorney for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

</div>

Dated: December 6, 2021

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

     Plaintiff,

v.

FORD MOTOR COMPANY,
a Delaware corporation,

     Defendant.

Case No. 19-cv-10167

Honorable Gershwin A. Drain

Magistrate Elizabeth A. Stafford

---

| STERLING ATTORNEYS AT LAW, P.C. | KIENBAUM HARDY VIVIANO |
|---|---|
| Carol A. Laughbaum (P41711) | PELTON & FORREST, P.L.C. |
| Attorneys for Plaintiff | Elizabeth P. Hardy (P37426) |
| 33 Bloomfield Hills Pkwy., Ste. 250 | Thomas J. Davis (P78626) |
| Bloomfield Hills, MI 48304 | Attorneys for Defendant |
| (248) 644-1500 | 280 N. Old Woodward Ave. |
| claughbaum@sterlingattorneys.com | Ste. 400 |
| | Birmingham, MI 48009 |
| | (248) 645-0000 |
| | ehardy@khvpf.com |
| | tdavis@khvpf.com |

---

**Defendant's Brief in Support of its Renewed Motion for Summary Judgment**

## Statement of the Issues Presented

1. Johnson seeks to hold Ford liable for a tort claim of sexual assault allegedly perpetrated by her harasser. Under Michigan law, an employer cannot be responsible for criminal acts of an employee unless it knew that employee engaged in similar criminal conduct in the past, and had a propensity for engaging in that conduct. No such evidence appears in this record. Should the Court dismiss the sexual assault claim?

2. Under Michigan law, a report of sexual harassment does not provide adequate notice to an employer unless it is made to "higher management," defined as someone who can "effectuate change" in the workplace by disciplining the harasser. Mahoney was not "higher management" per this definition. Should the Court hold that the alleged report to Mahoney was inadequate to put Ford on notice of alleged co-worker harassment as a matter of law?

3. Under federal law, an employer does not have notice of harassment unless (a) it is known to a supervisor who can take disciplinary action to stop the harassment, or (b) it is made to an employee specifically designated to receive such complaints. Plaintiff's report of race harassment was allegedly made to Mahoney—who falls into neither category. Should the Court hold that the racial harassment thus fails as a matter of law?

4. Under Michigan law, a report of sexual harassment must be specific. An employer is not put on notice of sexual harassment through generic references to problems with a co-worker, or even to "harassment" without more. Here, Johnson has no evidence that Markavich was ever told of "sexual" harassment and admittedly refused to give him details. Should the Court hold that there was no adequate notice to Markavich on this record?

5. Under Michigan law, an employee cannot engage in quid pro quo sexual harassment unless they are the alleged victim's supervisor, and took a tangible employment action causally related to the rejection of sexual advances. Here, the alleged harasser was not Plaintiff Johnson's supervisor as defined in Michigan law, and his alleged "denial of training" is not a tangible job action. Should the Court dismiss the quid pro quo claim?

## Table of Contents

Statement of the Issues Presented ............................................................ i

Controlling Authorities ...................................................................... iv

Introduction ..................................................................................1

Factual Background ..........................................................................1

A.   Johnson is hired by Ford on June 25, 2018 and almost
     immediately brings a (non-sexual) harassment concern to HR. ....................2

B.   Johnson moves to B-Crew and begins working with co-worker
     Nick Rowan, who she claims harassed her. .....................................2

C.   Rowan allegedly grabs Plaintiff's breast on November 16, 2018...................3

D.   On November 25, 2018, Johnson complains about Rowan and
     Ford investigates...............................................................3

E.   Johnson files a lawsuit, and in her complaint and later
     testimony, makes new, inconsistent allegations.................................4

F.   The Court grants summary judgment on the federal claim,
     strikes sham portions of a subsequently-filed affidavit, and
     dismisses the state claims. ....................................................5

G.   The Sixth Circuit remands the case, after reinstating one of the
     four stricken paragraphs held to be a sham. ...................................6

Argument......................................................................................6

I.   Johnson's attempt to hold Ford responsible for Rowan's alleged
     sexual assault mere days before his suspension is contrary to
     Michigan law. .................................................................6

II.  Johnson has failed to raise a genuine issue of material fact as to
     whether she put Ford on notice that *she* was being sexually or
     racially harassed..............................................................9

     A.   An alleged report to Mahoney—a senior process coach
          without power to discipline Rowan—is not sufficient

notice to Ford for either the state sex harassment or federal race harassment claims............................................................9

    1.    A report to Mahoney is not adequate under state law. ..................................................................................9

    2.    A report to Mahoney is not sufficient under federal law............................................................................11

B.    Johnson did not put Markavich on adequate notice of sex or race harassment. ..........................................................12

    1.    There was no notice of sexual harassment to Markavich. .................................................................12

    2.    Johnson does not claim Markavich knew of race harassment..............................................................14

III.    There was no quid pro quo harassment. ........................................15

A.    As Rowan was not Johnson's supervisor, Ford cannot be held vicariously liable for his actions on a quid pro quo theory.......................................................................................16

B.    Johnson's "de facto" supervisor theory rests on inapplicable law that would not apply regardless. ................18

C.    The alleged "denial of training" was not a tangible job action. .........................................................................20

Conclusion .........................................................................................22

# Controlling Authorities

## Cases

*Barhouma v. Athenian Assisted Living, Ltd.*,
    2015 WL 5437786 (N.D. Ohio Sept. 15, 2015) ........................................... 18, 19

*Burton v. Ford Motor Co.*,
    2003 WL 21279588 (Mich. Ct. App. June 3, 2003) ...........................................10

*Byers v. Honeytree II Ltd P'ship*,
    2010 WL 481011 (Mich. Ct. App. Feb. 11, 2010) .............................................10

*Chambers v. Trettco, Inc.*,
    463 Mich. 297 (2000) ........................................................................... 15, 16, 17

*Curtis v. Hanger Prosthetics & Orthotics, Inc.*,
    2002 WL 1378228 (W.D. Ky. June 25, 2002) ...................................................21

*Douglas v. Caldera*,
    29 Fed. Appx. 257 (6th Cir. 2002) ....................................................................21

*E.E.O.C. v. Harbert-Yeargin, Inc.*,
    266 F.3d 498 (6th Cir. 2001) .............................................................................11

*Elezovic v. Bennett*,
    274 Mich. App. 1, (2007) ..................................................................................17

*Foster v. Ohio Bell*,
    2009 WL 4697733 (Ohio Ct. App. Dec.10, 2019) ....................................... 18, 19

*Gallagher v. C.H. Robinson Worldwide, Inc.*,
    567 F.3d 263 (6th Cir. 2009) .............................................................................12

*Hamed v. Wayne County*,
    490 Mich. 1 (2011) ...........................................................................................7, 8

*Hartleip v. McNeilab, Inc.*,
    83 F.3d 767 (6th Cir. 1996) .......................................................................... 15, 20

*Holland v. Best Buy Stores, L.P.*,
    2018 WL 4679610 (E.D. Mich. Sept. 28, 2018) ...............................................16

*Huston v. Procter & Gamble Paper Prod. Corp.*,
    568 F.3d 100 (3d Cir. 2009) .......................................................... 11, 12

*Iceberg v. Whole Foods Mkt. Grp., Inc.*,
    914 F. Supp. 2d 870 (E.D. Mich. 2012) ............................................21

*Johnson v. Ford Motor Co.*,
    13 F.4th 493 (6th Cir. 2021) ..........................................................6, 9

*Kalich v. AT & T Mobility, LLC*,
    679 F.3d 464 (6th Cir. 2012) ...........................................................10

*Lindsey v. Whirlpool Corp.*,
    295 F. App'x 758 (6th Cir.2008)......................................................21

*Mueller v. Brannigan Bros. Rests & Taverns LLC*,
    323 Mich. App. 566 (2018) ................................................................8

*Radtke v. Everett*,
    442 Mich. 368 (1993) ......................................................................17

*Sheridan v. Forest Hills Pub. Sch.*,
    247 Mich. App. 611 (2001) ..................................................... 9, 10, 12

*Vance v. Ball State*,
    570 U.S. 421 (2013) ........................................................................17

*Zackery v. Auto Air Composites, Inc.*,
    1993 WL 146687 (W.D. Mich. Feb. 17, 1993)..................................16

**Statutes**

MCL 37.2013(i) .....................................................................................15

## Introduction

Ultimately, there is no question that Ford did the right thing when—within hours of receiving a report of harassment—it suspended and later terminated the harasser. While the Sixth Circuit remanded this case after a limited holding that Plaintiff Johnson had sufficiently alleged severe or pervasive racial harassment, it recognized a significant federal issue of whether Ford was put on notice of the alleged racial harassment *prior to* its prompt and adequate resolution of Plaintiff's formal complaint in November 2018. Because no such early notice was given here, the federal claim should fail as a matter of law.

Moreover, the Sixth Circuit's decision did not address any of the state-law claims—claims that this Court dismissed for lack of jurisdiction. Those claims also fail on the merits. There is no evidence that Johnson adequately reported sex harassment before November 2018. Her quid pro quo claim, directed at a *co-worker* and not a supervisor, has no basis in Michigan law. And Johnson's sex assault claim is precluded by a directly-on-point Michigan Supreme Court decision holding that an employer cannot be liable for assault where, as here, the alleged attacker had never been accused of an assault beforehand. Summary judgment is appropriate.

## Factual Background

In light of the earlier-briefed summary judgment motion, Ford will only summarize here the relevant facts and will refer to the previously-filed exhibits.

**A.     Johnson is hired by Ford on June 25, 2018 and almost immediately brings a (non-sexual) harassment concern to HR.**   Ford hired Johnson as a salaried production supervisor on June 25, 2018. ECF No. 51-2, PageID.731. She was assigned to the Engine Line, on the A Crew morning shift, and trained with fellow production supervisor Darnell Wilson. *Id.*, PageID.733-734. Shortly after she was hired, she interviewed for a Paint process coach position, and later complained that the interviewer treated her with disrespect. *Id.*; ECF No. 51-6, PageID.828-830. Harris investigated and disciplined the lead interviewer. *Id.* Johnson admits that Harris responded appropriately, was receptive to her complaint, and didn't make her fear retaliation. ECF No. 51-2, PageID.734-735.

**B.     Johnson moves to B-Crew and begins working with co-worker Nick Rowan, who she claims harassed her.**   After a few weeks, Johnson rotated to the B-Crew afternoon shift. ECF No. 51-2, PageID.733. While on B-Crew, and still assigned to the Engine Line, she began working with fellow production supervisor Nick Rowan. *Id.* She alleges around the end of August, he started asking her for pictures and began making inappropriate comments to her. *Id.*, PageID.737.

Three months later, Johnson moved to the C-Crew, and ultimately to the Chassis 4/5 Line, a different area within the plant from where she had been working. *Id.*, PageID.731, 733-734; ECF No. 51-4, PageID.801. Although no longer in

Rowan's area, Johnson continued to text him for help with work matters. *See* ECF No. 51-7, PageID.893-899.

**C.    Rowan allegedly grabs Plaintiff's breast on November 16, 2018.**

Johnson claims that on November 16, 2018, Rowan grabbed her breast. *Id.*, PageID.900; ECF No. 51-2, PageID.737. Rowan, at deposition, claimed that his hand accidentally touched Johnson's thigh, and never touched her breast. ECF No. 51-9, PageID.957, 960. The day after the alleged assault, Rowan texted Johnson that he was "[s]orry for [his] hand slippage yesterday," with Johnson responding with joking banter. ECF No. 51-7, PageID.899-903. Over the next few days, Johnson texted Rowan to wish him Happy Thanksgiving and again asked work-related questions. *Id.*, PageID.904-908. Her last texts with Rowan were work-related. *Id.*

**D.    On November 25, 2018, Johnson complains about Rowan and Ford investigates.**    The evening of November 25, 2018, Johnson told Crew Operations Manager LaDawn Clemons that Rowan had solicited explicit pictures from her, and had sent her explicit pictures of himself. ECF No. 51-2, PageID.736, 770-771; ECF No. 51-12, PageID.973-975. Clemons reported this to Les Harris the next day; Harris immediately interviewed Johnson and Rowan. ECF No. 51-6, PageID.832-838, 842-844; ECF No. 51-2, PageID.735, 741-742, 772-773.

The day after Johnson's in-person interview, Johnson emailed Harris claiming that she did "not say everything" the day prior. ECF No. 51-2, PageID.744-746, 774-

775. She gave a new statement claiming that she had told senior process coach Richard Mahoney about Rowan and showed him one of the pictures. *Id.* Mahoney allegedly said "you two should go ahead and get married or something," but asked if she wanted him to talk to Rowan, and that Johnson "told him no because I was scared and didn't want retaliation." *Id.*, PageID.775. Johnson speculated that Mahoney shared their conversation with Team Manager William Markavich because Markavich allegedly asked "from 1-10 how bad is it between you and [Rowan]," and when Johnson said "100," he said "Oh God, I don't want to know." *Id.*

Harris interviewed Markavich and Mahoney, who both denied that Johnson complained about harassment by Rowan. ECF No. 51-6, PageID.832, 836-837, 848-853. Harris sent his investigative materials to Mario Spadafora at Ford World Headquarters, who ultimately decided that Rowan should be terminated. ECF No. 51-13, PageID.976-977 ¶ 3. Rowan was terminated for violating Ford policies on December 21, 2018. ECF No. 53-5, PageID.1104, 1114.

**E.      Johnson files a lawsuit, and in her complaint and later testimony, makes new, inconsistent allegations.**  Johnson filed this lawsuit in January 2019, and in the course of the litigation made new claims not reported to Harris. At deposition, Johnson was asked "what do you claim you told Mr. Markavich about Mr. Rowan?" ECF No. 51-2, PageID.739. She said that she told Mahoney "I can't do it over here anymore. You guys got to move me." *Id.* Johnson further testified

that Mahoney then went to talk to Markavich, but admitted that she "did not hear what they were talking about." *Id.* Markavich came back and asked "how bad is it between you and Nick Rowan?" *Id.*, PageID.739-740. Johnson said "100" on a scale of 1-10, with Markavich saying he didn't want to hear it; he then walked away. *Id.*, PageID.740. At this point, Johnson referenced out loud the word "weenie." *Id.* She also claims that Markavich sent her a text asking her to "write down everything [Rowan] did and we'll handle it tomorrow." *Id.* She testified that she did not recall responding, or having any other exchanges with Markavich thereafter regarding issues with Rowan. *Id.*

**F.     The Court grants summary judgment on the federal claim, strikes sham portions of a subsequently-filed affidavit, and dismisses the state claims.**

Ford sought summary judgment and moved to strike certain paragraphs of an affidavit filed by Johnson in response to the summary judgment brief as a sham. ECF No. 51; ECF No. 59. The Court struck paragraphs 5, 9, 11, and 20 of the new declaration. ECF No. 61, PageID.1630. It also granted summary judgment on the federal § 1981 claim because Johnson failed to put forth evidence on the "severe or pervasive" prong of the harassment test. *Id.*, PageID.1641-1642. The Court then denied a motion for reconsideration, holding that Johnson was waived her newfound arguments by not raising them in her original brief. ECF No. 68, PageID.1697-1707.

**G.     The Sixth Circuit remands the case, after reinstating one of the four stricken paragraphs held to be a sham.**  On September 2, 2021, the Sixth Circuit held that it would disregard Johnson's forfeiture of the relevant legal arguments, and held that Johnson had sufficiently alleged facts supporting the severe-or-pervasive prong of her racial harassment claim. *Johnson v. Ford Motor Co.*, 13 F.4th 493, 504-507 (6th Cir. 2021). It also found that the Court should not have stricken Paragraph 20 of the new affidavit—that she had mentioned race-related texts and pictures to Mahoney—but did "not disturb the district court's ruling on" Paragraphs 5, 9, and 11 of the affidavit. *Id.* at 500 & n.5 (6th Cir. 2021),

The Sixth Circuit, however, recognized that at summary judgment this Court did not address "whether Ford knew or should have known about the harassment and did not respond," and remanded for the Court to "determine in the first instance whether there is a genuine dispute of material fact regarding whether Ford knew or should have known about Rowan's race-based harassment and failed to act in response." *Id.* at 507.

## Argument

**I.     Johnson's attempt to hold Ford responsible for Rowan's alleged sexual assault mere days before his suspension is contrary to Michigan law.**

Johnson's second amended complaint alleges that Ford should be liable for Rowan's alleged "sexual assault and battery," based on her allegation that "[o]n one occasion, Rowan grabbed [her] breast, and then apologized for his hand 'slipping.'"

ECF No. 81, PageID.1804, 1811 ¶¶ 14, 65. Based on Johnson and Rowan's text messages, the incident occurred on November 16, 2018—a few days before Rowan was suspended. *Supra* at 3. But directly-controlling Michigan law precludes her attempt to hold Ford liable for Rowan's alleged assault, and summary judgment should be granted on this count.

In *Hamed v. Wayne County*, the Michigan Supreme Court addressed whether an employer could be vicariously liable for its employee's sexual assault "committed during working hours but plainly beyond the scope of his employment." 490 Mich. 1, 5 (2011). In *Hamed*, a deputy sheriff with supervisory authority over a female inmate offered her better treatment in exchange for sexual favors, and when she resisted, he sexually assaulted her. *Id.* at 6-7. The Supreme Court held, however, that an employer cannot be vicariously liable for an employee's torts that are beyond the scope of the employer's business. *Id.* at 10-11. And sexual assault is beyond the scope of employment: it is an "independent action accomplished solely in furtherance of [the attacker's] own criminal interests" that does not "in any way" benefit the employer, particularly where behavior violates defendant's policies and the criminal law. *Id.* at 11-13.

The only exception, the Supreme Court held, is if the employer knew or should have known about the employee's "propensities and criminal record before that employee committed an intentional tort." *Id.* at 12. That, in turn, requires "actual

or constructive knowledge of prior similar conduct," *and* "actual or constructive knowledge of the employee's propensity to act in accordance with that conduct." *Id.* And the Court made clear that neither "[c]omments of a sexual nature" nor mere "aggressive tendencies" are enough to put an employer on reasonable notice of criminal sexual conduct. *Id.* at 13, 16. Because the *Hamed* employee had—at most— shown a propensity to act aggressively, and to disobey work protocols, the employer was not on reasonable notice that the employee would commit sexual assault as a matter of law, and vicarious liability was impermissible. *Id.* at 16-17; *see also, e.g.*, *Mueller v. Brannigan Bros. Rests & Taverns LLC*, 323 Mich. App. 566 (2018) (holding that "lewd and crude commentary is not enough to put an employer on notice than an employee will commit a rape," and a "past history of generally aggressive and irresponsible behavior is not enough to put an employer on notice that the employee would engage in a violent sexual assault").

   *Hamed* directly controls here. Johnson alleges that Rowan made sexual comments to her before the alleged November 16, 2018 assault, claimed that he would punch his cubicle walls, and alleges that he engaged in consensual sexual relationships with other female employees. ECF No. 51-2, PageID.763. But *Hamed* made clear that such claims, even if substantiated, would be insufficient. There is no evidence that Rowan had engaged in sexual assault in the past, let alone that Ford was aware of it. And sexual assault is, of course, contrary to Ford's policies in

addition to being criminal. ECF No. 53-5, PageID.1104 ¶ 4. Any sexual assault by Rowan would not have been within the scope of his employment, and would not have been foreseeable to Ford as a matter of law. Summary judgment is appropriate on this claim.

**II.    Johnson has failed to raise a genuine issue of material fact as to whether she put Ford on notice that *she* was being sexually or racially harassed.**

As reflected in the earlier summary judgment briefing, there is no dispute that if Ford's notice was measured by the late November 2018 report to HR's Les Harris, then Ford's immediate suspension and termination of Rowan was prompt and adequate as a matter of law. So, Johnson seeks to pre-date Ford's notice so that she can maintain this suit despite Ford's swift action. The Sixth Circuit thus remanded to "determine in the first instance whether there is a genuine dispute of material fact regarding whether Ford knew or should have known about Rowan's race-based harassment and failed to act in response." *Johnson,* 13 F.4th at 507. There is no genuine dispute, both as to the race claim and the state-law sexual harassment claim.

**A.    An alleged report to Mahoney—a senior process coach without power to discipline Rowan—is not sufficient notice to Ford for either the state sex harassment or federal race harassment claims.**

**1.    A report to Mahoney is not adequate under state law.**   Under Michigan law, a report of alleged harassment to another employee does not provide adequate notice to an employer unless the employee is "higher management." *Sheridan v. Forest Hills Pub. Sch.*, 247 Mich. App. 611, 622 (2001); *Kalich v. AT&T*

*Mobility, LLC*, 679 F.3d 464, 474 (6th Cir. 2012) (recognizing *Sheridan* standard). To be "higher management," the employee must "have actual authority to effectuate change in the workplace" with respect to "hiring, firing, and disciplining *the offensive employee*." *Sheridan*, 247 Mich. App. at 622-23 (emphasis added). Thus, even a report to an "immediate supervisor, even one who might handle issues arising during the performance of their jobs, is insufficient to trigger the employer's liability." *Byers v. Honeytree II Ltd P'ship*, 2010 WL 481011, at *3 (Mich. Ct. App. Feb. 11, 2010). Thus, for example, in *Burton v. Ford Motor Co.*, the Court held that a nurse's report of harassment to her direct supervisor—one who oversaw her day-to-day work—was insufficient where there was no record evidence that nursing supervisor had the power to effectuate change through the discipline or firing of the harasser. 2003 WL 21279588, at *1 (Mich. Ct. App. June 3, 2003).

*Sheridan* itself is uncommonly similar both factually and legally to this case. As here, (1) the plaintiff complained to HR, which promptly investigated and terminated the harasser; (2) the plaintiff immediately went on medical leave after reporting; and (3) then sued the employer for damages anyway, claiming she had provided notice before going to HR: the plaintiff, a custodian, claimed she told the *head* custodian of the harassment. 247 Mich. App. at 613-14. But the head custodian could not effectuate change by firing or disciplining the offending employee; thus, the report to the head custodian was inadequate notice to the employer. *Id.* at 615.

Just as *Sheridan* involved a custodian reporting to the head custodian, this case involves a process coach (Johnson) who allegedly reported to the senior process coach (Mahoney). As senior process coach, Mahoney's primary duty was to actually perform each process coach's job if that coach was absent, and to provide direction on quality matters and safety requirements, like ensuring employees wore their protective equipment. ECF No. 51-4, PageID.798-799. But like the head custodian in *Sheridan*, the senior process coach Mahoney could not effectuate change in the workplace by firing or disciplining the offending employee Rowan. PageID.51-5, PageID.823; ECF No. 51-15, PageID.987 ¶ 4. As a matter of law, Johnson's alleged reporting of sexual harassment to Mahoney was not adequate notice to Ford.

**2.      A report to Mahoney is not sufficient under federal law.**  The federal notice standard is similar, and can be shown in two ways. *First*, an employer has notice of harassment if a supervisor becomes aware of the harassment. *See E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001). This is adequate notice because a supervisor is "sufficiently senior in the employer's governing hierarchy" and generally "has the authority to act on behalf of the employer to stop the harassment." *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 107 (3d Cir. 2009). *Second,* an employer has notice when a complaint is made to an employee "who has been authorized—or is reasonably believed by a complaining employee to have been authorized—to receive and respond to or forward such

-11-

complaints to management." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 277 (6th Cir. 2009). This category typically involves a person in "the employer's human resources, personnel, or employee relations group" who is a "point person for receiving complaints of harassment." *Huston*, 568 F.3d at 107.

Here, as discussed, Mahoney was neither. For the same reasons he was not "higher management," Mahoney was not a person sufficiently senior in Ford's hierarchy with the ability to take adverse employment action against Rowan to stop the harassment. *See supra* at 10-11. Nor was Mahoney a human resources or similar professional (and Johnson does not claim that she reasonably, but mistakenly, thought he was such a person.) Rather, that person was Les Harris—the person who did promptly and adequately address the harassment within a day of it being reported. Johnson's attempt to back-date Ford's alleged notice of race harassment by reference to senior process coach Mahoney fails as a matter of law.

**B.    Johnson did not put Markavich on adequate notice of sex or race harassment.**

**1.    There was no notice of sexual harassment to Markavich.**  Under Michigan law, notice to a supervisor must be sufficient to make that person aware that *sexual harassment* is at issue. Thus, for instance, in *Elezovic*, the Michigan Supreme Court held that even an employee who used the terms "harassment" and "hostile environment" in a written complaint did not sufficiently provide notice of *sexual* harassment to the employer. 472 Mich. 408, 428–29; *accord Sheridan*, 247

Mich. App. at 611 (complaint that co-worker "bothered" her, without directly stating there was harassment "of a sexual nature" insufficient.) The insufficiency of a generic report is particularly acute when, as here, the plaintiff has complained of non-sexual harassment in the workplace before, and knows how to allege sexual harassment. *Elezovic*, 472 Mich. at 428-29.

Here, Johnson *had* complained of non-sexual harassment by other Ford employees during her short time on the job (and to the most appropriate person, Les Harris). *Supra* at 2. And she knew how to allege sexual harassment, having sued a previous employer in state court for sexual harassment less than two years before joining Ford. ECF No. 51-2, PageID.747. Her claimed report to Markavich, however, rests on vague and speculative testimony that Markavich had second-hand notice of Johnson's claims. Given the *Elezovic* standard, this evidence is insufficient.

As discussed in detail at pp. 4-5, Johnson's most recent story as recounted at deposition was that (1) she made generic complaints to Mahoney about needing to move from Rowan, without even using the word "harassment," let alone "sexual" harassment; (2) Mahoney said something to Markavich, but she doesn't know what; (3) Markavich asked a question about "how bad" things were, without referencing sexual harassment; (4) after Markavich walked away, Johnson said the word "weenie" in reference to Rowan, without any indication that Markavich heard it; and (5) after that, Markavich *asked* what Rowan had done, and Johnson did not tell him.

At best, this testimony requires speculation as to (1) what Mahoney said to Markavich; (2) whether Markavich even heard Johnson's alleged "weenie" comments; and (3) if so, whether Markavich understood the reference to "weenies" to be sexual in nature—at issue here given unrebutted testimony that the word "weenie" was unambiguously used in the plant in a non-sexual context. ECF No. 51, PageID.722 & n. 5. Johnson's own allegations refute such understandings: Markavich *did not know* and had to ask what her specific problems with Rowan were, and Johnson declined to tell him. ECF No. 51, PageID.721-22. Given that, under *Elezovic*, a plaintiff must show specific reporting of sexual harassment to provide adequate notice to her employer, these thin claims—even if believed—are insufficient.

**2.   Johnson does not claim Markavich knew of race harassment.**
Notably, Johnson does not claim—not even in her last-minute affidavit—that anyone ever put Markavich on notice of racial harassment claims. The since-reinstated Paragraph 20 says only that Johnson told *Mahoney* about race-related texts, pictures and comments. *See* ECF No. 55-4, PageID.1293 ¶ 20. And her convoluted deposition story at her deposition about her speculation as to what Mahoney told Markavich did not discuss racial harassment either—at best, Johnson claims that she screamed out the word "weenie" to Markavich. *See supra* at 4-5. Thus, because the alleged report to Mahoney was not sufficient to put Ford on notice,

and there is zero evidence of a racial harassment report to Markavich, the racial harassment claim against Ford should fail as a matter of law.[1]

## III.   There was no quid pro quo harassment.

In Michigan, quid pro quo harassment requires proof (1) that a person was subjected to unwelcome sexual conduct or communication, and (2) that her employer or its agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment. MCL 37.2013(i); *Chambers v. Trettco, Inc.,* 463 Mich. 297, 310 (2000). The second prong requires proof of a "tangible (adverse or otherwise) employment action that was shown to be causally related to plaintiff's submission to or rejection of" the sexual harassment. *Chambers*, 463 Mich. at 317. This can only happen when the alleged harasser "is in a position to offer tangible job benefits in exchange for sexual favors or, alternatively, threaten job injury for a failure to submit." *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 775 (6th Cir. 1996) (citing Michigan law). Thus, "a tangible employment action is an indispensable

_____

[1]Johnson's newfound allegations in her last-minute affidavit regarding earlier conversations with LaDawn Clemons does not change the analysis for either claim. Her affidavit says only that she told Clemons that there was a "lot of testosterone on the floor," that Rowan was saying "nasty things to women on the floor," and that Clemons "knew things were bad in my area as she heard it over the radio." ECF No. 55-4, PageID.1294 ¶ 24. This is neither sufficient to show a specific report to Clemons of *sexual* harassment (as defined in Michigan law), let alone a report that Johnson—rather than unnamed women—were the victims of sex harassment. And it says nothing whatsoever about notice of *racial* harassment allegations. *See id.*

element of quid pro quo harassment, and only persons with supervisory powers could ever effectively make such a decision." *Chambers*, 463 Mich. at 321.

Here, in prior briefing, Johnson did not dispute that Rowan—the alleged harasser—lacked such authority. He cannot, by definition, engage in quid pro quo.

### A.  As Rowan was not Johnson's supervisor, Ford cannot be held vicariously liable for his actions on a quid pro quo theory.

Johnson's claim that Rowan engaged in quid pro quo harassment, and that Ford is vicariously liable for his conduct, should be rejected outright. Johnson's quid pro quo theory is that Rowan had the power to train her but refused to do so because Johnson rejected his advances. ECF No. 27, PageID.389-390. But the notion that vicarious liability should attach over acts by an employee whose sole power over the alleged victim is training is flatly incompatible with *Chambers*. As noted, quid pro quo claims require a "tangible employment action," which is the kind of job decision that "only persons with supervisory powers could ever effectively make." 463 Mich. at 321. But training is not something that can only "effectively" be done by someone with supervisory powers; case law is replete with examples of co-workers training colleagues.[2] Failure to train cannot be a "tangible employment action" as defined in *Chambers*, and thus cannot support a quid pro quo claim.

---

[2] *See, e.g.*, *Holland v. Best Buy Stores, L.P.*, 2018 WL 4679610, at *9 (E.D. Mich. Sept. 28, 2018) (legitimate to expect employee to "teach, coach, and train his coworkers"); *Zackery v. Auto Air Composites, Inc.*, 1993 WL 146687, at *1 (W.D. Mich. Feb. 17, 1993) (describing use of co-workers to train new employee).

Additionally, Michigan law—including *Chambers* itself—explicitly describes what sort of power a harasser must have before vicarious liability may be imposed: the power to hire, fire, promote, demote, and discipline. In *Chambers*, the Court noted that vicarious liability is warranted in quid pro quo cases because the harasser "by definition, uses the power of the employer to alter the terms and conditions of employment." *Id.* at 311. But vicarious liability is *inappropriate* when the harasser "acts outside 'the scope of actual or apparent authority to hire, fire, discipline, or promote.'" *Id.* In *Radtke v. Everett*, vicarious liability was permitted against an individual defendant because he could "hire and fire plaintiff and [] control her working conditions, maintained her discipline, paid her wages, and owned the corporation that employed her." 442 Mich. 368, 397 (1993). And in *Elezovic v. Bennett*, the Michigan Court of Appeals found that supervisory power means having control over the "promotions, bonuses, overtime options, raises, shift and job assignments, and terminations" of the alleged victim. 274 Mich. App. 1, 12 (2007).

This definition of a "supervisor" has since been adopted by the United States Supreme Court. In *Vance v. Ball State*, the Supreme Court held that the "authority to take tangible employment actions is the defining characteristic of a supervisor," and that an employee who "did not have the power to hire, fire, demote, promote, transfer, or discipline" the plaintiff was not a supervisor, even if the employee was authorized to direct the employee's daily tasks. 570 U.S. 421, 425, 431-32 (2013).

-17-

Here, Rowan—being a process coach, just like Johnson—did not have the power to hire, fire, transfer, promote, demote, discipline, or otherwise impose any tangible changes in Johnson's employment status. ECF No. 51-15, PageID.987 ¶ 3; ECF No. 51-9, PageID.961. He was not Johnson's supervisor, and thus he could not have engaged in quid pro quo harassment.

### B. Johnson's "de facto" supervisor theory rests on inapplicable law that would not apply regardless.

Johnson's efforts to avoid the obvious flaw in her theory—that only a victim's supervisor can engage in quid pro quo harassment, and Rowan was not her supervisor—rests on the word game that Rowan was her "de facto" supervisor. But that is meaningless. She concedes Rowan was not her supervisor on paper, and does not claim that Rowan had the power to fire, discipline, or demote her, and the like. Rather, she claims he could train and assist her with supervising hourly workers. ECF No. 45, PageID.645; ECF No. 42, PageID.607-08. But by the plain meaning of the words, to be a "de facto" supervisor Rowan would need the unwritten—but actual—authority to fire, discipline, and the like. He did not have such authority.

Moreover, *Barhouma v. Athenian Assisted Living, Ltd.*, 2015 WL 5437786 (N.D. Ohio Sept. 15, 2015) does not support Johnson's "de facto" decision-maker theory. *Barhouma* cites only a single Ohio case interpreting Ohio's civil rights statute. *Id.* at *4 & nn. 66-67 (citing *Foster v. Ohio Bell*, 2009 WL 4697733, at *4 (Ohio Ct. App. Dec.10, 2019)). That case—*Foster*—in turn, relied on now-obsolete

-18-

law—rejected by the Supreme Court in *Vance*, *see supra* at 17—that a person can be a supervisor even if they cannot take tangible actions like hiring or firing. *Id.* And regardless, the Michigan Supreme Court, in *Chambers*, has long rejected the idea that a supervisor need not be able to take tangible employment actions. *Supra* at 15-16. *Barhouma* is not good law.

But even accepting the *Foster/Barhouma* "de facto" decision-maker theory, it is inapplicable here. Both cases shared the same fact pattern: (1) the plaintiff suffered a tangible job action—failure to promote in *Foster*, and termination in *Barhouma*—performed by an actual supervisor who was *not* the harasser; but (2) the harasser allegedly had a "significant influence" on the actual decision-maker. *Foster*, 2009 WL 4697733 at *4; *Barhouma*, 2015 WL 5437786, at *1-2, *5. But here, Johnson's actual supervisor Markavich never took tangible employment action against her—she was not demoted, docked in pay, disciplined, or anything of the sort—and thus there was no tangible decision Rowan could have "significantly influenced."

Indeed, Johnson's bare allegation that Rowan "reported negative feedback to higher level Ford agents with respect to Johnson's performance" that "jeopardized Plaintiff's ability to remain employed at Ford," ECF No. 42, PageID.611, has no record support. Johnson's supervisor Markavich testified that he thought she was doing a good job. ECF No. 51-5, PageID.818. And after her training with Rowan ended, she was moved from the Engine Line to the Chassis 4/5 Line, which both

Markavich *and* Johnson agreed was a more favorable line, and a promotion. *Id.*; ECF No. 51-2, PageID.761.

Johnson herself appears to have recognized this fundamental flaw in her theory, by attempting to introduce sham declaration testimony to bolster her meritless suggestion that Rowan's conduct put her at risk of termination. But those paragraphs were stricken by this Court as a sham, and that ruling was not altered by the Sixth Circuit on appeal. *See* ECF No. 55-4, PageID.1290-1291 ¶¶ 5, 9, 11; *see supra* at 5-6 (reflecting sham declaration ruling and Sixth Circuit's determination not to disturb the Court's holdings on those paragraphs). There is thus no record evidence whatsoever that Rowan did *anything* that put Johnson at risk of termination *vis-à-vis* her actual supervisor Markavich.

In other words, contrary to her bare allegation that Rowan's alleged lack of training "jeopardized" her job, Johnson—in her own words—said she was *promoted* to a better line while at Ford. The *de facto* supervisor allegation is unsupportable on the summary judgment record.

## C. The alleged "denial of training" was not a tangible job action.

Even if—contrary to Michigan law—Rowan was legally a supervisor capable of quid pro quo harassment, the alleged denial of training here is not legally adverse because failure to train is not even a tangible job action. *See Hartleip*, 83 F.3d at 771, 775 (citing Michigan law and rejecting quid pro quo claim despite harasser

-20-

being responsible for training.) This is so even when the harasser is a supervisor—which Rowan clearly was not. *See Iceberg v. Whole Foods Mkt. Grp., Inc.*, 914 F. Supp. 2d 870, 880 (E.D. Mich. 2012) (holding supervisor's excluding plaintiff from training sessions was not a tangible employment action in a quid pro quo case.)

Johnson tried to distinguish *Iceberg* by claiming that it only involved "a few training sessions," while she was allegedly denied "basic, ongoing training needed to learn and succeed on the job." ECF No. 42, PageID.612; ECF No. 45, PageID.647 (noting same). This argument is beside the point—*Iceberg* did not make the distinction Johnson asserts. Further, many courts have held that a denial of training is not even adverse unless it leads to a failure to promote or the like. *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 768 (6th Cir. 2008) ("failure to provide plaintiff with extra training does not constitute an adverse employment action."); *Douglas v. Caldera*, 29 F. App'x 257, 258–59 (6th Cir. 2002) (denial of training not materially adverse unless it actually resulted in a denial of promotion or opportunity for advancement); *Curtis v. Hanger Prosthetics & Orthotics, Inc.*, 2002 WL 1378228, at *4 (W.D. Ky. June 25, 2002) ("deprivations of training opportunities do not constitute an adverse employment action under Title VII."), *aff'd,* 101 F. App'x 61 (6th Cir. 2004).

But, as Johnson's post-Rowan promotion shows, there was no adverse consequences from the alleged lack of training, and her bare allegation that Rowan

denied her basic training she needed to "succeed" is factually unsupported. If anything, it was Johnson's utter lack of prior production supervisor experience that led to her lengthy training. She admitted that training for a process coach ordinarily took only two to three weeks, ECF No. 51-2, PageID.732, and trained for several weeks before Rowan was even in the picture. *Supra* at 2-3. For her part, Johnson filibustered when asked to explain what training Rowan failed to give her, saying at one point she didn't know. ECF No. 51-2, PageID.764-766. And ultimately, Johnson contradicted her counsel's in-court representation that Rowan denied her *all* training she needed to succeed, *see id.*, PageID.765, 767. The quid pro quo claim should be rejected for this reason too.

### Conclusion

The Court should grant summary judgment on all claims.

<div align="right">

/s/ Elizabeth Hardy
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
Attorneys for Defendants
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

</div>

Dated: December 6, 2021

431621

-22-

### Certificate of Service

I hereby certify that on December 6, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ Elizabeth Hardy
Elizabeth Hardy (P37426)
Kienbaum Hardy Viviano
 Pelton & Forrest, P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
(248) 645-0000
E-mail:  ehardy@khvpf.com

431621