UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

    Plaintiff,

v.

FORD MOTOR COMPANY,
a Delaware corporation,

    Defendant.

Case No. 19-cv-10167

Honorable Gershwin A. Drain

Magistrate Elizabeth A. Stafford

---

| STERLING ATTORNEYS AT LAW, P.C. | KIENBAUM HARDY VIVIANO PELTON & FORREST, P.L.C. |
|---|---|
| Carol A. Laughbaum (P41711) | Elizabeth P. Hardy (P37426) |
| Attorneys for Plaintiff | Thomas J. Davis (P78626) |
| 33 Bloomfield Hills Pkwy., Ste. 250 | Attorneys for Defendant |
| Bloomfield Hills, MI 48304 | 280 N. Old Woodward Ave. |
| (248) 644-1500 | Ste. 400 |
| claughbaum@sterlingattorneys.com | Birmingham, MI 48009 |
| | (248) 645-0000 |
| | ehardy@khvpf.com |
| | tdavis@khvpf.com |

**Defendant's Reply Brief in Support of its
Renewed Motion for Summary Judgment**

Plaintiff's response brief reflects an erroneous understanding of federal jurisdiction, and the implications of the Court's earlier dismissal without prejudice. It has long been the rule that when a federal lawsuit involves state-law claims asserted under supplemental jurisdiction, "if the federal claims are dismissed before trial… the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *accord, e.g.*, *Weser v. Goodson*, 965 F.3d 507, 519 (6th Cir. 2020). Without a federal claim, there is no need to pass on the merits of the remaining state claims and, in most cases, it is error for a trial court to do so. *See Weser*, 965 F.3d at 519 (directing district court to decline supplemental jurisdiction of state-law claims on remand.) Thus, contrary to Plaintiff's assertion, ECF No. 90, PageID.1885, this Court's earlier decision declining supplemental jurisdiction *after* granting summary judgment to Ford on the sole federal claim did not reflect its "weigh[ing] in" on the state law claims and finding "that genuine issues of material fact exist precluding summary judgment." And, as with her earlier briefing, Plaintiff cannot contest the relevant, undisputed material facts warranting summary judgment. The motion should be granted.

**I.    Michigan law plainly precludes a sexual assault claim against an employer absent specific knowledge of *sexual violence* by the perpetrator.**

Plaintiff claims that Ford should be held responsible for Rowan's alleged sexual assault because Ford allegedly knew both that Rowan made sexual comments and that he was violent (albeit towards inanimate objects), and that somehow these

facts distinguish the Michigan Supreme Court's holding in *Hamed v. Wayne County*.[1] ECF No. 90, PageID.1896-1897. This argument flatly misreads the *Hamed* decision, which is directly on point. 490 Mich. 1, 13 (2011). In *Hamed*, the perpetrator subjected the victim to "sexually charged comments and offers for better treatment in exchange for sexual favors," *and* displayed "aggressive behavior" including a physical altercation with a male inmate. *Id.* at 6, 16. Yet the Court held that the employer could not be vicariously liable for the perpetrator's subsequent rape of the victim, because "[c]omments of a sexual nature do not inexorably lead to criminal sexual conduct," and "violent actions do not inevitably lead to acts of criminal sexual conduct." *Id.* at 13-16. Because the employer had no prior knowledge that the perpetrator had committed violent *sexual* misconduct, the Court held that it would not hold the employer liable for the assault—and explained, at length, the significant policy reasons why it would be inappropriate to do so. *Id.*

If anything, the alleged "violent" misconduct is even less troubling here; in

---

[1] Plaintiff misleadingly truncates a quote from the Sixth Circuit's opinion to suggest that the appeals court agreed that Ford knew of Rowan's violent tendencies. *See* ECF No. 90, PageID.1896 ("… Rowan would get angry and punch the inside of his cubicle and his filing cabinet."). Her ellipsis obscures the court's actual sentence: "Additionally, *according to Johnson's deposition*, Rowan would get angry and punch the inside of his cubicle and his filing cabinet." *Johnson v. Ford*, 13 F.4th 493, 497 (6th Cir. 2021) (emphasis added). No Ford witness claimed awareness of Rowan punching objects, and even Plaintiff's tale to the contrary did not say that these witnesses had knowledge. Rather, she complained that Ford did not gather "evidence" of punched cabinets. ECF No. 55-3, Page.ID 1278, Pl's Dep. 394-95.

*Hamed*, the perpetrator assaulted another person, while Rowan allegedly punched a cabinet. Even if Ford knew of Rowan allegedly punching cabinets (and Plaintiff offers no such proof) that would not put Ford on notice that he would physically assault a *person*, let alone sexually assault someone. The sexual assault claim is plainly and unambiguously foreclosed by *Hamed* and should be dismissed.

**II.     Plaintiff fundamentally misconstrues the law and facts regarding the required notice to higher management.**

Ford's brief set out multiple reasons why Plaintiff's federal racial harassment, and state-law sexual harassment claims fail as a matter of law. Plaintiff ignores nearly all the binding Michigan authority, and ignores or misstates the facts.

**A.     There was not sufficient notice to Ford of racial harassment under federal law, or of sexual harassment under state law.**

Plaintiff claims that Ford had "notice" citing (1) the now-reinstated paragraph 20 of her affidavit, claiming that she told Mahoney about Rowan's sex and race-based comments, and (2) her affidavit claim that Markavich and Mahoney heard Rowan make sexual comments about *other women*. ECF No. 90, PageID.1886-87, 1899. But this sidesteps Ford's actual argument: that Mahoney is not an appropriate recipient of *Plaintiff's* complaints at all, and that there is no evidence of a specific report to Markavich that Plaintiff herself was being harassed.

*First*, Plaintiff seems to recognize that Michigan applies a "higher management" test in determining who is an appropriate recipient of a harassment

-3-

case—*i.e.*, that the recipient must have "actual authority to effectuate change in the workplace" by firing or disciplining the offender, ECF No. 87, PageID.1857-1859 (citing *Sheridan*.) And she appears to concede that Mahoney is not higher management, since he did not have this level of authority over Rowan. Instead, she claims *Sheridan* does not apply when "the employer's policies permit employees to notify non 'higher management' of sexual harassment," ECF No. 90, PageID.1901 (citing *Sheridan*, 247 Mich. App. at 625). But *Sheridan* said no such thing. The cited page merely states that written policies with the "force of a binding contract" might give employees greater protection than ELCRA, but that the Court did not need to reach the question because there was no contract claim before it. *Sheridan*, 247 Mich. App. at 625. So too here: Plaintiff has not pled a breach of contract claim, or offered proof that a policy with the "force of a binding contract" gave her benefits beyond what ELCRA provides. Because Mahoney was not "higher management," Plaintiff's alleged report to him did not put Ford on notice of sex harassment.

*Second*, Plaintiff entirely ignores the argument that Mahoney is not a proper recipient of her alleged complaint of racial harassment (the sole federal claim)— even though the Sixth Circuit explicitly left this key issue to be decided on remand. *See* ECF No. 87, PageID.1859-1860.  The federal standard allows notice to be given to employees who can terminate or discipline the harasser, and also to employees, like human resources personnel, who are "point persons" for receiving complaints.

-4-

*Id.* Plaintiff, who ignores the federal standard and Ford's argument as to the same, has thus forfeited any argument that there was federally-sufficient notice.

*Third*, as to Markavich, Plaintiff cites nothing to establish she reported racial harassment to Markavich. Nor could she; all she cited before—paragraph 20 of her affidavit—references only her alleged notice to *Mahoney* of racial harassment, and she does not claim she told Markavich of racial harassment. *See* ECF No. 87, PageID.1862-1863. As to the sex-based claims, Plaintiff ignores that Michigan law requires a *specific* report of sexual harassment, and instead tries to prevail with the same vague innuendo, speculation, and implication that Ford addressed in its opening brief. *See* ECF No. 87, PageID.1860-1862. Because Plaintiff never reported racial harassment to Markavich, and because Plaintiff never gave him specific notice of sexual harassment as required by state law, Ford was not on notice.[2]

### B. Plaintiff's quid pro quo claim fails for multiple reasons.

Plaintiff's response to Ford's quid pro quo argument, ECF No. 90, PageID.1887, 1902-1903, once again ignores relevant procedure. It is true that, at the motion-to-amend stage, the court permitted Plaintiff's quid pro quo claim on the unsworn pleadings, based on her bare assertion that Rowan's failure to train her was

---

[2]Plaintiff again misstates the record when she cites an out-of-context quote from the Court's earlier opinion that she complained to Markavich "very early." ECF No. 90, PageID.1886 (citing ECF No. 61, PageID.1615). The cited page indicates that the "very early" report was Rowan's "inappropriate talking just to the *other women*, before he had even started talking to me like that." ECF No. 55-3, PageID.1236.

so severe that it impacted her ability to retain her job. ECF No. 45, PageID.647. But at the summary-judgment stage, pleadings are not enough; facts are required. And discovery revealed no record support for the theory that the alleged lack of training impacted her job security; indeed, Plaintiff was promoted. ECF No. 87, PageID.1864-1866. Plaintiff earlier tried to overcome this factual deficiency in a post-discovery affidavit, but the Court found the relevant paragraphs to be a sham—a holding not modified by the Sixth Circuit. *See id.* So, with no facts in the discovery record, Plaintiff can only make bare assertions that Rowan's alleged failure to train was "jeopardizing her employment," since she lacks evidence to suggest she was in *actual* jeopardy, let alone suffered adverse action. ECF No. 90, PageID.1903; *see also* M Civ JI 105.12 (requiring "tangible employment action" like "hiring, firing, or failure to promote" for a quid pro quo claim). There is no genuine issue of material fact on this de-facto supervisor theory, and summary judgment should be granted.[3]

---

[3] In any event, Plaintiff's "de facto supervisor" theory has no basis in Michigan law. ECF No. 87, PageID.1866-1868. Plaintiff still cites no Michigan authority, and the out-of-state cases she relies on (ECF No. 90, PageID.1904-1905) involve a quasi-cat's paw theory whereby the non-supervisor influenced an adverse employment action. *See Scarbary* (harasser influenced supervisor's promotion decision); *LaMarca* (harasser assisted with admission decisions; plaintiff denied admission); *Heskin* (harasser was vice president of employer's client, used influence to have employer fire plaintiff); *Gostanian* (actual supervisor accepted input of harasser on hiring and firing decisions; plaintiff fired after ending relationship); *Hernandez* (harasser had close friendship and influence over supervisor; plaintiff disciplined, denied overtime, and not promoted thereafter); *cf. Perks* (harasser was *actual* supervisor who took tangible employment actions). That scenario is not present here.

Alternatively, Ford argued that it cannot be held liable for quid pro quo harassment because Rowan was not a "supervisor" as defined in Michigan law—someone with the power to hire, fire, promote, demote, or discipline. ECF No. 87, PageID.1863-1866. Plaintiff does not dispute that Rowan lacked such authority, and entirely ignores the binding *Michigan* law that precludes the notion that training is a "tangible employment action." She cites instead two inapposite cases: *Cruz*, which held that denial of training itself was *not* an "adverse employment action" unless it led to a failure to promote or other actual adverse action, 2014 WL 2547541, at *5 (S.D.N.Y. June 4, 2014), and *Pitter*, which involved *termination* by the harasser, not lack of training. 735 F. Supp. 2d 379, 390-392 (D. Md. 2010). Under Michigan law, there is no quid pro quo sexual harassment as a matter of law (and there is no such thing as quid pro quo racial harassment, which Plaintiff does not allege.) Thus, for this reason too, the quid pro quo sexual harassment theory fails as a matter of law.

## Conclusion

The Court should grant summary judgment as to each count.

Respectfully submitted,

*/s/ Thomas J. Davis*
 Elizabeth Hardy (P37426)
 Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

Dated: January 10, 2022

434429

## Certificate of Service

    I hereby certify that on January 10, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

                              */s/ Thomas J. Davis*
                              Thomas J. Davis (P78626)
                              Kienbaum Hardy Viviano
                               Pelton & Forrest, P.L.C.
                              280 N. Old Woodward Avenue, Suite 400
                              Birmingham, MI  48009
                              (248) 645-0000
                              E-mail:  tdavis@khvpf.com