UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

    Plaintiff,

v.

FORD MOTOR COMPANY,
a Delaware corporation,

    Defendant.

Case No. 19-cv-10167

Honorable Gershwin A. Drain

Magistrate Elizabeth A. Stafford

---

| STERLING ATTORNEYS AT LAW, P.C. | KIENBAUM HARDY VIVIANO |
|---|---|
| Carol A. Laughbaum (P41711) | PELTON & FORREST, P.L.C. |
| Attorneys for Plaintiff | Elizabeth P. Hardy (P37426) |
| 33 Bloomfield Hills Pkwy., Ste. 250 | Thomas J. Davis (P78626) |
| Bloomfield Hills, MI 48304 | Attorneys for Defendant |
| (248) 644-1500 | 280 N. Old Woodward Ave. |
| claughbaum@sterlingattorneys.com | Ste. 400 |
| | Birmingham, MI 48009 |
| | (248) 645-0000 |
| | ehardy@khvpf.com |
| | tdavis@khvpf.com |

---

**Defendant's Motion to Strike Testimony of
Mental Health Witness Dr. Ashok Shah**

Defendant Ford Motor Company moves this Court under the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and the Court's inherent authority to strike the testimony of Plaintiff's mental health witness Dr. Ashok Shah in all capacities, whether by deposition or as a witness at trial. In support of the motion, Ford states:

1. Plaintiff has identified Dr. Shah as a trial witness to give testimony, purportedly about her mental health diagnosis arising out of her brief interactions with a former Ford coworker.

2. Ford deposed Dr. Shah in 2019 concerning his own brief interactions with Plaintiff in November 2018 and in January 2019, when she twice walked into the Sinai-Grace Crisis Center. Both walk-in visits occurred after she had ceased work at Ford.

3. For the reasons set forth in the accompanying brief, Dr. Shah's testimony should be excluded because he refused to answer basic questions during his deposition regarding his PTSD diagnosis—both under this Court's inherent authority, and because Dr. Shah cannot satisfy the *Daubert* standard.

4. Besides offering the bare fact of his unexplained diagnosis, his testimony is likely to consist of his reading verbatim to the jury factual allegations that Plaintiff made to him about her former coworker. But because Plaintiff will

1

herself be testifying to her allegations against the coworker, Dr. Shah's function is to parrot Plaintiff's own allegations, to serve only as an impermissible "oath helper."

5. On June 30, 2023, counsel for Ford explained the nature of the motion and relief it would be seeking. Concurrence was not granted, requiring this motion.

                                         KIENBAUM HARDY VIVIANO
                                         PELTON & FORREST, P.L.C.

                                         By: */s/ Thomas J. Davis*
                                              Elizabeth Hardy (P37426)
                                              Thomas J. Davis (P78626)
                                              Attorneys for Defendant
                                         280 N. Old Woodward Ave., Suite 400
                                         Birmingham, MI 48009
                                         (248) 645-0000
                                         ehardy@khvpf.com
                                         tdavis@khvpf.com

Dated: July 3, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

    Plaintiff,

v.

FORD MOTOR COMPANY,
a Delaware corporation,

    Defendant.

Case No. 19-cv-10167

Honorable Gershwin A. Drain

Magistrate Elizabeth A. Stafford

---

| STERLING ATTORNEYS AT LAW, P.C. | KIENBAUM HARDY VIVIANO |
|---|---|
| Carol A. Laughbaum (P41711) | PELTON & FORREST, P.L.C. |
| Attorneys for Plaintiff | Elizabeth P. Hardy (P37426) |
| 33 Bloomfield Hills Pkwy., Ste. 250 | Thomas J. Davis (P78626) |
| Bloomfield Hills, MI 48304 | Attorneys for Defendant |
| (248) 644-1500 | 280 N. Old Woodward Ave. |
| claughbaum@sterlingattorneys.com | Ste. 400 |
| | Birmingham, MI 48009 |
| | (248) 645-0000 |
| | ehardy@khvpf.com |
| | tdavis@khvpf.com |

---

**Brief in Support of Defendant's Motion to Strike Testimony of Mental Health Witness Ashok Shah**

## Statement of the Issues Presented

1. A witness is required to cooperate and answer questions posed. A Court may exclude testimony of a witness who refuses to give testimony. Here, Dr. Ashok Shah gave Plaintiff a PTSD diagnosis after a short visit—contrary to his earlier diagnosis and the diagnosis of subsequent treaters. But at deposition, he refused to answer questions about his diagnosis, or even basic medical questions. Should his testimony be excluded?

2. A treating physician's testimony must satisfy the *Daubert* standard to be admissible. Among other things, *Daubert* requires a showing that the witness' methodology is scientifically valid, and that the methodology was properly applied to the facts at issue. Here, Dr. Shah refused to explain his methodology, its application, or even answer general medical questions. Because he cannot meet the *Daubert* standard, should his testimony be excluded for this reason too?

3. At deposition, Dr. Shah would only read from his own notes of Plaintiff's earlier visits—notes that included Plaintiff's allegations of harassment at Ford. Plaintiff's own statements are hearsay—even if embedded in medical records—and Dr. Shah's testimony would serve only as impermissible "oath-helping" of Plaintiff. Should his testimony be excluded for this reason too?

## Table of Contents

Statement of the Issues Presented ................................................................................. i

Controlling or Most Appropriate Authorities ............................................................ iii

Introduction .................................................................................................................1

Background .................................................................................................................2

Analysis .......................................................................................................................5

      A.    Dr. Shah should be stricken as a witness because he repeatedly refused to provide critical information during his deposition ...............5

      B.    For the same reasons, Dr. Shah's testimony could not satisfy the *Daubert* standard for admissibility ........................................................7

      C.    Dr. Shah's testimony should be stricken as hearsay ...........................9

Conclusion ................................................................................................................11

# Controlling or Most Appropriate Authorities

**Cases**

*Campos v. MTD Prod.*,
  2009 WL 2252257 (M.D. Tenn. July 24, 2009) ................................................... 13

*Gass v. Marriott Hotel Servs., Inc.*,
  558 F.3d 419 (6th Cir. 2009) ............................................................................ 11, 12

*Hammann v. 800 Ideas Inc.*, 2014 WL 1089664, at *1 (D. Nev. Mar. 18, 2014) ... 12

*Kirk v. Bostock*, No. 09-15018,
  2012 WL 954716 (E.D. Mich. Mar. 21, 2012) ..................................................... 14

*Laukus v. Rio Brands*, Inc.,
  292 F.R.D. 485 (N.D. Ohio 2013) ......................................................................... 9

*Mitroff v. Xomox Corp.*,
  797 F.2d 271 (6th Cir. 1986) .............................................................................. 13

*People v. Lalone*,
  432 Mich. 103 (1989) .......................................................................................... 14

*Smith v. Botsford Hosp.*,
  419 F.3d 513 (6th Cir. 2005) ................................................................................ 9

*U.S. ex rel. Tennessee Valley Auth. v. 1.72 Acres of Land*,
  821 F.3d 742 (6th Cir. 2016) ................................................................................ 9

*United States v. Kappell*,
  418 F.3d 550 (6th Cir. 2005) .............................................................................. 14

*United States v. Narciso*,
  446 F. Supp. 252 (E.D. Mich. 1977) ................................................................... 14

*United States v. Renville*,
  779 F.2d 430 (8th Cir. 1985) .............................................................................. 14

**Other Authorities**

2 McCormick on Evidence § 277 .............................................................................. 13

**Introduction**

On November 25, 2018, Plaintiff complained about alleged harassment by a co-worker at the Ford Dearborn Truck Plant, and the next morning Ford immediately suspended Plaintiff's alleged harasser. On November 29, 2018 Plaintiff—already represented by counsel—went to a walk-in mental health center, where she met with psychiatrist Dr. Ashok Shah. Shah recorded Plaintiff's allegations, similar to those she now makes in this lawsuit, and diagnosed her with acute stress disorder. On January 14, 2019, days before this lawsuit was filed, Plaintiff again visited Dr. Shah. But this time—despite Plaintiff not having seen the alleged harasser since before her initial visit in November 2018—Dr. Shah inexplicably made a PTSD diagnosis based on her brief visit. The other doctors at the same clinic who subsequently evaluated Plaintiff over the next few months did not concur in the PTSD diagnosis.

The Court should exclude Dr. Shah's testimony from trial for three reasons.

*First*, Dr. Shah testified that he could not, and would not, explain the medical reasons for his PTSD diagnosis. Instead, he would only read the medical record documenting Plaintiff's earlier clinic visits—records containing Plaintiff's hearsay statements made in the days immediately preceding her filing this lawsuit. Because Dr. Shah has refused to explain the basis for his diagnosis during discovery, this Court should exercise its inherent authority to bar him from testifying about that diagnosis at trial.

*Second*, for the same reasons, Dr. Shah's testimony cannot satisfy *Daubert*. A treating physician's testimony must satisfy *Daubert* like any other expert testimony. Here, Dr. Shah's refusal to explain his methodology, his application of that methodology to Plaintiff, and even general background questions about PTSD render his testimony inadmissible as a scientific matter.

*Third*, Dr. Shah has made clear that his testimony will consist of repeating dictated notes he took when Plaintiff visited the clinic. Those notes consist almost exclusively of Plaintiff's own out-of-court statements about the alleged harassment that is the subject of this lawsuit. Those out-of-court statements are hearsay, and no exception applies that would allow them to be used at trial. Although Federal Rule of Evidence 803(4) provides for an exception for statements made for medical diagnosis, that exception is inapplicable because Plaintiff's out-of-court statements relate to the purported cause of her symptoms, not Shah's PTSD diagnosis.

For these reasons, Dr. Shah's testimony is inadmissible.

**Background**

Three days after Ford suspended Plaintiff's former co-worker, Plaintiff visited Dr. Shah at a walk-in clinic. Ex. A, Shah Dep. 12, 72 & Dep. Ex. 5.[1] Dr. Shah does

---

[1] Under the parties' protective order, Exhibits 5 and 6 to the Shah Deposition are filed with placeholders to give Plaintiff's counsel time to file a motion to seal if desired. *See* ECF No. 20, PageID.132. Plaintiff did not, however, designate as confidential Dr. Shah's deposition testimony (or that of treating doctors Hunter and Davis, *see* Ex. B, C) within 21 days of the depositions as required by the order. *See id.* ¶ 7.

not treat patients and has not done so for at least the last 15 years. *Id.* at 22-23, 28. Rather, his sole role is to assess walk-in patients who come to the Sinai-Grace Hospital Crisis Center on weekdays during business hours to distinguish the few walk-in patients who are truly in crisis and require immediate hospitalization from those who do not. *Id*. He makes that preliminary determination based on a single, approximately 40-minute meeting with the patient. *Id.* at 34. For most walk-ins who do not need hospitalization, he offers a referral to a Sinai-Grace clinic where the patient consults another psychiatrist and therapist for actual diagnosis and treatment. *Id.* at 22-23. In effect, Dr. Shah's job is triaging walk-in patients in an emergency environment. *See id.* at 23-24.

After Plaintiff's November 2018 visit, Dr. Shah offered a preliminary diagnosis of acute stress disorder. *Id.* at 79 & Dep. Ex. 5. On January 14, 2019—three days before this lawsuit was filed—Plaintiff returned to Dr. Shah rather than go to a treating physician per ordinary practice, and despite her lack of contact with the alleged harasser since her initial visit with Shah in November 2018. *Id.* at 82; *see also id.* at 22-23. Neither Plaintiff nor Dr. Shah explained why she returned to Dr. Shah rather than a treating physician, six weeks after the first visit. *Id.* at 83-84.

As before, Dr. Shah rendered no treatment in January 2019. He did, however, give Plaintiff the far more serious diagnosis of PTSD, a diagnosis usually rendered only after extensive treatment and only after a patient has survived a life-threatening

- 3 -

event. Ex. A, Shah Dep. 88-91 & Dep. Ex. 6. When asked about this new diagnosis in his deposition, Dr. Shah could not identify a single aspect of Plaintiff's presentation that could justify such a dramatic change from his prior diagnosis. Ex. A, Shah Dep. 85-89. Indeed, when questioned, he simply refused to explain why he had done what he did. *Id.* And Dr. Shah repeatedly testified that he cannot and will not provide insight in any future testimony to support this change in diagnosis. *Id.* at 89-91.

Further, as a review of his deposition will show, Dr. Shah's testimony was combative, and he repeatedly refused to answer basic questions in his own words, or even to testify about general medical matters that he was personally familiar with. *See, e.g.*, Ex. A, Shah Dep. 55-57 (refusing to explain what he understands the medical term "rule out" to mean, as a "hypothetical" question); *id.* at 60-61 (refusing to answer whether, in his personal experience, a patient's disclosure of pending legal action is taken into consideration when evaluating a patient's claims); *id.* at 67-69 (refusing to answer questions beyond reading verbatim his medical notes); *id.* at 74-75 (refusing to answer whether, generally, significant events occurring to a patient between visits is important to document in an evaluation); *id.* at 86-89 (repeatedly giving the same non-responsive answer to questions and agreeing that "all you're going to do is read what you wrote" in his medical record); *id.* at 90 (refusing to answer whether he has ever diagnosed another patient with PTSD before); *id.* at 90-

91 (admitting that he knows the criteria for diagnosing PTSD but refusing to answer questions as to what those criteria are).

## Analysis

### A. Dr. Shah should be stricken as a witness because he repeatedly refused to provide critical information during his deposition.

Dr. Shah's testimony should be excluded because he purposefully refused to cooperate in providing critical and necessary information during his deposition. Where, as here, a witness's withholding of information is due to willfulness or recalcitrance, the Court has authority under Federal Rules of Civil Procedure 16, 26, 37, and 45, as well as inherent authority, to exclude the witness's testimony. *Laukus v. Rio Brands*, Inc., 292 F.R.D. 485, 500-03 (N.D. Ohio 2013). And when a party or its witness refuses to provide crucial information related to the witness's testimony, a district court may properly exclude the witness's testimony. *See U.S. ex rel. Tennessee Valley Auth. v. 1.72 Acres of Land*, 821 F.3d 742, 751 (6th Cir. 2016) (exclusion of expert witness's testimony warranted where witness's expert report failed to explain the basis of his opinion); *see also Smith v. Botsford Hosp.*, 419 F.3d 513, 516-17 (6th Cir. 2005) (affirming district court's striking of expert witness's testimony where witness failed to explain basis for his opinion before deposition or at any time up until trial).

Here, when Dr. Shah was asked what about Plaintiff's presentation supported his change in her diagnosis to PTSD, he testified he could provide no answer other

- 5 -

than re-reading into the record the entirety of his dictated notes verbatim, *i.e.*, everything Plaintiff told him her coworker allegedly did that supposedly led to her repeat visit to the Crisis Clinic. Ex. A, Shah Dep. 41-44. And when asked whether anything stood out in the dictation as important to supporting the changed diagnosis, he refused to do anything but re-read the entire dictated note again because everything was important. *Id.* at 59-60, 67-68. Similarly, he refused to comment on the meaning of a 20-point improvement in Plaintiff's functioning (on the 100-point Global Assessment of Functioning scale), other than to say one number was 20 points more than the other. *Id.* at 53-58. And he refused to provide a meaning of the common psychiatric diagnostic term of "ruling out" a particular diagnosis, even when it was explained to him that he was only being asked to address what he meant when he used that term (which he did in his dictation). *Id.* at 55-57.

Even when asked to put aside the question of what supported a PTSD diagnosis in Plaintiff's case, and to identify what symptomology or other diagnostic criteria was needed to support a PTSD diagnosis in general, Dr. Shah still refused to answer. *Id.* at 50-55, 60-61, 90-91. He even refused to say whether he had ever diagnosed any of the hundreds of walk-ins he encounters annually in his Crisis Clinic role – other than Plaintiff – with PTSD. *Id.* at 90-91.

Dr. Shah's refusal to answer these basic questions is especially troubling because of his limited role as an intake psychiatrist at the Crisis Clinic. Plaintiff

never consulted him for treatment, which she was receiving elsewhere. And neither psychiatrist who subsequently provided Plaintiff with diagnosis and treatment—both of whom professionally interacted with Dr. Shah and were aware of his PTSD diagnosis—could find support for such a serious diagnosis. Ex. B, Dr. Hunter Dep. 51, 66-69, 76; Ex. C, Dr. Davis Dep. 23.

In light of his refusal to answer basic questions during discovery, Dr. Shah should be excluded from testifying at trial, especially since defense counsel repeatedly reminded him of his responsibility to respond fully to the deposition questions or be prepared for possible future repercussions from the Court. *See* Ex. A, Shah Dep. 89, 91. Whether Dr. Shah's proffered testimony was based on his willful non-cooperation or a lack of memory, the result is that Ford has been denied any meaningful insight into whatever led him to render as serious, as reactive, and as unreliable a diagnosis as PTSD. Whatever the reason or motive for his testimony – or lack of it – Ford would be unduly prejudiced by allowing his opinion to be presented to the jury without any opportunity to examine the basis for that opinion. Accordingly, Dr. Shah should be stricken as a witness.

> **B.** **For the same reasons, Dr. Shah's testimony could not satisfy the *Daubert* standard for admissibility.**

Although treating physicians may generally offer testimony about a "patient's illness, the appropriate diagnosis for that illness, and the cause of the illness," that testimony still "remains subject to the requirement set forth in *Daubert*" that the

- 7 -

testimony "have a reliable basis in the knowledge and experience of his discipline." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009). This requires, among other things, a showing that the expert's "reasoning or methodology… is scientifically valid" and "whether that reasoning or methodology properly could be applied to the facts at issue to aid the trier of fact." *Id.*

Here, Dr. Shah was not even a treating physician. And he has not been otherwise identified as an expert in Plaintiff's disclosures. But even if he could avoid those hurdles, his testimony cannot satisfy the *Daubert* standard. As discussed above, Dr. Shah repeatedly testified that he was unwilling (if not unable) to explain the reason for his PTSD diagnosis weeks after giving Plaintiff a milder diagnosis— a diagnosis that was *not* given by Plaintiff's two subsequent treating physicians. Indeed, Dr. Shah refused to even identify the criteria needed to support a PTSD diagnosis in general, or how he would go about making such a diagnosis. On this record, there is simply no basis for the Court to conclude that Dr. Shah has a reliable foundation on which to offer expert opinions on PTSD, let alone that he applied that knowledge properly to Plaintiff. His testimony should be stricken on that basis as well. *See, e.g., Hammann v. 800 Ideas Inc.*, 2014 WL 1089664, at *1 (D. Nev. Mar. 18, 2014) (striking as unreliable under *Daubert* expert opinion of witness who was unwilling to testify as to report), *aff'd,* 690 F. App'x 956 (9th Cir. 2017).

!

### C. Dr. Shah's testimony should be stricken as hearsay.

As explained above, Dr. Shah stubbornly insisted that he could not testify to anything about any aspect of Plaintiff's presentation or his diagnosis that she had PTSD. To the contrary, he testified expressly that he will simply read into the record the summary he dictated just after talking to Plaintiff for 30 minutes or so on January 14, 2019. The dictation Dr. Shah desires to read to the jury consists almost entirely of Plaintiff's self-report of her alleged interaction with the coworker, and so it is inadmissible hearsay. *Campos v. MTD Prod.*, 2009 WL 2252257 (M.D. Tenn. July 24, 2009), at *6-7 (summary of statements made to witness by others is inadmissible hearsay). Having any of Plaintiff's entirely "factual" self-reports repeated through Dr. Shah—when Plaintiff herself will be describing these same allegations through her own testimony—serves no purpose other than to act as an impermissible "oath-helper," with no probative value, but with an off-the-charts prejudicial impact. *See Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986).

Nor does Dr. Shah's testimony about Plaintiff's statements fall within any hearsay exception or exclusion. His dictation includes no professional "assessment" by him other than the inexplicable PTSD diagnosis, which he refused to explain in his deposition.

In any event, even if the diagnosis itself were admissible, the types of statements by Plaintiff that Dr. Shah would be parroting are statements assigning

- 9 -

factual fault, which do not qualify as statements made for purposes of diagnosis or treatment under Federal Rule of Evidence 803(4). *See generally* 2 McCormick on Evidence § 277 (noting general rule that statements "establishing fault" are unlikely to be "related to diagnosis or treatment" and thus fall outside the exception); *United States v. Narciso*, 446 F. Supp. 252, 289 (E.D. Mich. 1977) (holding exception has "never been held to apply to accusations of personal fault"); *Kirk v. Bostock*, No. 09-15018, 2012 WL 954716, at *3 (E.D. Mich. Mar. 21, 2012) (same, citing advisory note 4 to Rule 803(4)).

Moreover, any indicia of reliability that would ordinarily support the admission of such statements under the hearsay exception in Rule 803(4) is undercut when the statements at issue were made *after* Plaintiff had retained counsel and was preparing to sue Ford. *See, e.g.*, *United States v. Kappell*, 418 F.3d 550, 556 (6th Cir. 2005) (exception does not apply unless "primary purpose" of statements is for obtaining a medical diagnosis); *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985) ("the declarant's motive in making the statement must be consistent with the purposes of promoting treatment").

Here, Dr. Shah's dictation followed Plaintiff's retention of an attorney to sue on her behalf against Ford—with the second visit that inexplicably led to a PTSD diagnosis coming *three days* before that lawsuit was filed. Dr. Shah could not say if he even considered her lawsuit a basis for secondary gain in her presentation to him

- 10 -

or whether her decision to pursue a lawsuit might have been what motivated him to change the diagnosis to the far more serious PTSD. *Cf. People v. Lalone*, 432 Mich. 103, 109-10 (1989) (noting the greater likelihood that a person could successfully fabricate psychological symptoms rather than physical ones). The ordinary indicia of trustworthiness that usually accompany statements used for purposes of medical diagnosis or treatment are inapplicable to Plaintiff's self-serving statements of alleged causation.

## Conclusion

For these reasons, Defendant Ford Motor Company requests that the Court grant this motion and strike Dr. Shah as a witness for any purposes.

>KIENBAUM HARDY VIVIANO
>PELTON & FORREST, P.L.C.
>
>By: */s/ Thomas J. Davis*
>    Elizabeth P. Hardy (P37426)
>    Thomas J. Davis (P78626)
>Attorneys for Defendant
>280 N. Old Woodward Ave., Suite 400
>Birmingham, MI 48009
>(248) 645-0000
>ehardy@khvpf.com
>tdavis@khvpf.com

Dated: July 3, 2023

447074

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 3, 2023, I electronically filed the above document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

                                */s/ Thomas J. Davis*
                                Thomas J. Davis (P78626)
                                Kienbaum Hardy
                                Viviano Pelton & Forrest, P.L.C.
                                280 N. Old Woodward Ave., Ste. 400
                                Birmingham, MI 48009
                                (248) 645-0000
                                tdavis@khvpf.com

447074