UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

Plaintiff,

v.

FORD MOTOR COMPANY,
a Delaware corporation,

Defendant.

Case No. 19-cv-10167

Honorable Gershwin A. Drain

Magistrate Elizabeth A. Stafford

---

STERLING ATTORNEYS AT LAW, P.C.
Carol A. Laughbaum (P41711)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

---

**Defendant's Response to Plaintiff's Motion in Limine**

**Table of Contents**

Table of Authorities ..................... ii

Introduction ..................... 1

Argument ..................... 1

I. Plaintiff's resume fraud is highly relevant impeachment evidence, and is substantively relevant to rebut key harassment allegations she has made ..................... 2

A. Plaintiff's resume fraud is highly relevant evidence of her character for untruthfulness in a case that will largely turn on witness credibility. ..................... 4

B. Plaintiff's resume fraud is also substantively relevant to rebut her claims that Rowan's harassment allegedly caused training delays and otherwise impacted her work at Ford ..................... 6

II. Plaintiff's motion in limine to exclude unspecified rap lyrics is a surreptitious attempt to block relevant witness testimony about her *own* conduct and should be denied. ..................... 8

III. Plaintiff's motion in limine regarding unspecified texts with ex-boyfriend Donald Lowery should be denied for lack of specificity and as premature. ..................... 10

Conclusion ..................... 12

## Table of Authorities

### Cases

*Adelman v. GMAC Mortg. Corp.*,
1998 WL 51131 (E.D. Pa. Feb. 5, 1998) .......... 4

*Alexander v. Cit Tech. Fin. Servs., Inc.*,
217 F. Supp. 2d 867 (N.D. Ill. 2002) .......... 10

*E.E.O.C. v. Freemen*,
626 F. Supp. 2d 811 (M.D. Tenn. 2009) .......... 7

*Fakhoury v. O'Reilly*,
2022 WL 909347 (E.D. Mich. Mar. 28, 2022) .......... 2

*Flores v. Virginia Dep't of Corr.*,
2022 WL 3329932 (W.D. Va. Aug. 11, 2022) .......... 4

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993) .......... 9

*Heglund v. Aitkin Cnty*,
871 F.3d 572 (8th Cir. 2017) .......... 2

*Johnson v. Ford Motor Co.*,
13 F.4th 493 (6th Cir. 2021) .......... 7

*Lewis v. Baker*,
526 F.2d 470 (2d Cir. 1975) .......... 4

*McGraw v. United Tugs, Inc*,
2017 WL 11535972 (E.D. La., Oct. 18, 2017) .......... 4

*Nusbaum v. Enlighten Fam. Chiropractic, LLC*,
2023 WL 315719 (E.D. Mich. Jan. 19, 2023) .......... 1

*Richards v. Wells Real Est. Funds, Inc.*, 2007 WL 9698036 (N.D. Ga. Mar. 2, 2007) .......... 5

*Stokes v. Xerox Corp.*,
2008 WL 275672 (E.D. Mich. Jan. 28, 2008) .......... 5

*United States v. Anderson*,
563 F. Supp. 3d 691 (E.D. Mich. 2021) .................................................... 1

*United States v. Cline*,
188 F. Supp. 2d 1287 (D. Kan. 2002) ..................................................... 2

**Rules**

Fed. R. Evid. 608(a) ............................................................................. 4

## Introduction

Plaintiff's motion in limine seeks to exclude three pieces of evidence: (1) Plaintiff's so-called "errors" in her resume; (2) reference to rap lyrics of Plaintiff's ex-husband, whom Plaintiff performed with; and (3) certain text messages between Plaintiff and her ex-boyfriend. But Plaintiff's "errors" are, in fact, admitted resume fraud that is highly relevant here. Plaintiff does not specify what "lyrics" she seeks to exclude, let alone provide a rationale for excluding them. And Plaintiff fails to specify what texts with her ex-boyfriend are at issue—but, as discussed below, Ford *conditionally* agrees that it will not use or reference certain specified private sexual text messages between Plaintiff and her ex-boyfriend, making the issue largely moot. The motion should be denied.

## Argument

A party seeking a motion in limine must show *why* the purported evidence is inadmissible for all planned purposes, including for impeachment or showing a lack of witness credibility. *See United States v. Anderson*, 563 F. Supp. 3d 691, 694 (E.D. Mich. 2021) (Drain, J); *accord Nusbaum v. Enlighten Fam. Chiropractic, LLC*, 2023 WL 315719, at *4 (E.D. Mich. Jan. 19, 2023) (Drain, J.) (denying motion in limine to exclude evidence that was "relevant to the witness's credibility, which could directly affect impeachability").

Further, a "party moving *in limine* 'should identify the particular evidence at issue and articulate with specificity the arguments supporting the position that the particular evidence is inadmissible….'" *Fakhoury v. O'Reilly*, 2022 WL 909347, at *6 (E.D. Mich. Mar. 28, 2022) (Drain, J.) (quoting *United States v. Cline*, 188 F. Supp. 2d 1287, 1292 (D. Kan. 2002)). "A court is well within its discretion to deny a motion *in limine* that fails to identify the evidence with particularity or to present arguments with specificity." *Id.*

**I. Plaintiff's resume fraud is highly relevant impeachment evidence, and is substantively relevant to rebut key harassment allegations she has made.**

Plaintiff's motion in limine first seeks to exclude evidence of "errors" on her resume. This framing is, however, dishonest—and ultimately helps explain why the evidence is relevant. The word "error" implies "an act involving an *unintentional* deviation from truth or accuracy." *Heglund v. Aitkin Cnty*, 871 F.3d 572, 579 (8th Cir. 2017) (emphasis in original). What Plaintiff did was no error.

Ford hired Plaintiff as a production supervisor (also known as a "process coach")—the first-level supervisors of Ford's assembly-line workers. ECF No. 51-2, PageID.731; ECF No. 55-8, PageID.1416-1418. On both her resume and application, Plaintiff claimed she had seven years' experience as a production supervisor at Cadillac Plastics. ECF No. 51-3, PageID.785, 789. Unbeknownst to Ford, Plaintiff was lying. She was not a supervisor at Cadillac Plastics, and she only worked there two *months*. ECF No. 51-2, PageID.757-759; ECF No. 51-3,

PageID.791-795. At deposition, Plaintiff testified that she "smudged" the truth to get a "better position," and admitted her intent was to deceive: she "wanted Ford to believe [she'd] been a production supervisor prior to coming to Ford because [she] was applying for a production supervisor job." ECF No. 51-2, PageID.757. In fact, she had never been a production supervisor in the automotive industry before. *Id.* at PageID.758-760.

This was not the extent of Plaintiff's resume fraud. She also identified her "current" job as a company she called "Triton Force Manufacturing" on her resume and "Tri Force Manufacturing" on her application, as a Quality Assurance Supervisor. ECF No. 51-3, PageID.785, 788. Neither company appears to exist, per a search of Michigan's business entity database. Ex. A. And Plaintiff admitted she never worked at any such place. ECF No. 51-2, PageID.754. Plaintiff's *actual* last job before joining Ford was with Peter/Lacke, where she was fired within a few months for threatening physical violence toward a co-worker. *Id.* at PageID.754-756. Plaintiff had no explanation for leaving Peter/Lacke off her resume. *Id.*

As discussed below, Plaintiff's deception is textbook Rule 608(b) conduct relevant to showing a character for untruthfulness—evidence that is particularly relevant in a case that turns on witness credibility. And Plaintiff's lack of supervisory experience directly undercuts a substantive harassment theory that the Sixth Circuit relied on in its earlier decision. For both reasons, this evidence is admissible.

**A. Plaintiff's resume fraud is highly relevant evidence of her character for untruthfulness in a case that will largely turn on witness credibility.**

Federal Rule of Evidence 608(a) provides that a "witness's credibility may be attacked" through evidence of that witness's "character for untruthfulness." And Rule 608(b) permits cross-examination into specific instances of conduct if they are probative of the witness's character for untruthfulness. Courts have routinely held that a witness's false statements in resumes and job applications are probative of character for untruthfulness and may be inquired into on cross-examination. *See, e.g.*, *Flores v. Virginia Dep't of Corr.*, 2022 WL 3329932, at *2 (W.D. Va. Aug. 11, 2022) (plaintiff's "material misrepresentations on her resume" submitted to defendant "clearly fall[s] within the purview of Rule 608(b)" as "probative of [her] character for truthfulness"); *McGraw v. United Tugs, Inc*, 2017 WL 11535972, at *1-2 (E.D. La., Oct. 18, 2017) ("admittedly false statement on [the plaintiff's] employment application" is "probative of his character for truthfulness or untruthfulness"); *Adelman v. GMAC Mortg. Corp.*, 1998 WL 51131, at *1 (E.D. Pa. Feb. 5, 1998) (holding that when "plaintiff's credibility will be a critical issue," his "knowing misrepresentations" on his resume were "clearly probative of the plaintiff's character for untruthfulness"); *cf. Lewis v. Baker*, 526 F.2d 470, 475-76 (2d Cir. 1975) (plaintiff's false answer on job application bears "directly on a party's capacity for truth-telling").

Resume fraud is particularly probative when (1) the Plaintiff's credibility is an important issue; and (2) the resume fraud occurred close in time to the Plaintiff's substantive allegations that turn on credibility. The case of *Richards v. Wells Real Est. Funds, Inc.*, 2007 WL 9698036 (N.D. Ga. Mar. 2, 2007) is instructive. There, the plaintiff brought a failure-to-hire case, and because his testimony would "vary factually from the testimony given by defendants' witnesses," the "credibility of the witnesses [was] critical to the jury's determination." *Id.* at *4 & n. 4. The plaintiff had allegedly lied in his job application to the defendant, *and* lied in his applications after the defendant chose not to hire him. *Id.* at *2, 4. The court, noting the closeness in time to the job decision at issue in the trial, held that the resume fraud was "probative of his truthfulness (or lack thereof) and, under Rule 608(b), admissible on cross-examination concerning his character for truthfulness." *Id.* at *2. In effect, the plaintiff's willingness to make false statements to the employer was probative as to whether he'd lie to the jury about the employment decision at issue.[1] *See id.*

[1]The sole case Plaintiff cites in support of her motion does not address Rule 608(b). *See Stokes v. Xerox Corp.*, 2008 WL 275672, at *9 (E.D. Mich. Jan. 28, 2008). At issue in *Stokes* was a nine-year old representation in a resume that the Plaintiff had "voluntarily resigned" rather than be terminated from a prior employer (which was accurate; the plaintiff's firing was reclassified as a resignation as part of settlement agreement). *Id.* The employer claimed it would not have hired her but for her "lie," but the Court held this was substantively irrelevant: the employer's stated reason for terminating the plaintiff was poor performance, not resume fraud. *Id.* In other words, *Stokes* involved a nine-year old statement that was not a lie, that the defendant did not allege was Rule 608 evidence of character for untruthfulness, and it had no substantive relevance. It is, in all respects, the opposite of the situation here.

The same is true here. Witness credibility is *the* key issue in the case, particularly on the issue of when Plaintiff allegedly gave notice of harassment. Ford's witnesses are consistent: Plaintiff never raised issues of harassment until November 25, 2018—and Ford immediately suspended the alleged harasser. Plaintiff, by contrast, has told different stories over time. Her first report to Ford (the one that got Rowan suspended) did not mention early notice. Only after Ford took prompt and adequate steps to remedy the situation—preventing any damages claim—did she go back to Ford and claim she'd made earlier notice. Plaintiff's willingness to lie to Ford in June 2018 for her personal financial benefit is plainly probative of whether she is again willing to lie for her personal financial benefit by claiming earlier notice. This highly relevant evidence is directly related to Plaintiff's credibility and far outweighs any risk of undue prejudice. It should not be precluded.

**B. Plaintiff's resume fraud is also substantively relevant to rebut her claims that Rowan's harassment allegedly caused training delays and otherwise impacted her work at Ford.**

At deposition, Plaintiff agreed that training for a new process coach typically took two to three weeks. ECF No. 55-3, PageID.1203. Plaintiff's training, however, took significantly longer—something she blamed on Rowan, claiming he would not train her because she did not send him nude pictures. *Id.* at PageID.1280-1281. At the Sixth Circuit, the Plaintiff argued successfully that Rowan's alleged failure to train was evidence of a hostile environment. *Johnson v. Ford Motor Co.*, 13 F.4th

493, 497, 505, 507 (6th Cir. 2021) (finding hostile environment could be shown through "unreasonable interference" with Plaintiff's job performance, and that her allegations that "Rowan was not properly training her for the job because she was not providing him the requested photos" created an issue of fact for trial).

Given Plaintiff's allegations, evidence providing an alternative non-harassing explanation for conduct allegedly "motivated by racial or sexual animus" is "relevant and probative." *E.E.O.C. v. Freemen*, 626 F. Supp. 2d 811, 820 (M.D. Tenn. 2009). Here, an alternative explanation for Plaintiff's lengthy training is that she lacked the requisite experience for the job, despite telling Ford she did—and thus the training Ford provided to Plaintiff was not sufficient for her undisclosed inexperience. A jury could rely on this evidence to reject Plaintiff's claim that Rowan's alleged harassment caused interference with her work performance.

The existing record supports such an argument. Rowan claimed he was making diligent efforts to train Plaintiff despite others complaining that she wouldn't be able to learn the job. ECF No. 55-9, PageID.1465, 1475. Contemporaneous texts from Plaintiff's phone show her repeatedly asking Rowan for help or advice and receiving it without demands for nude photos. Ex. B. And Area Manager William Markavich testified that Plaintiff said she "needed" Rowan during training, not that he was hindering her training. ECF No. 55-8, PageID.1439. That Plaintiff affirmatively lied about and hid her inexperience from Ford provides key

background context that makes it "more probable… than it would be without the evidence" that any training problems were not due to Rowan's conduct. FRE 401. It is directly relevant to attacking a key element of Plaintiff's case, and admissible.

## II. Plaintiff's motion in limine to exclude unspecified rap lyrics is a surreptitious attempt to block relevant witness testimony about her *own* conduct and should be denied.

Plaintiff next has a perfunctory paragraph asking to exclude certain rap lyrics by her ex-husband, incorrectly claiming that Ford concurred with her relief. Ford did not concur; Ford asked Plaintiff to specifically identify what lyrics she was talking about. When Plaintiff instead claimed that she wanted to exclude certain testimony by Nick Rowan about *Plaintiff's* use of vulgar lyrics together with her ex-husband, Ford said it would *not* concur. *See* Exs. C, D, E.

Some background, not provided in Plaintiff's motion, is relevant. Plaintiff's ex-husband is the rap artist known as Bizarre, who performed with Eminem. ECF No. 55-3, PageID.1182-1183. Plaintiff herself also performed with Bizarre and Eminem, under the stage name of Sindee Syringe. *Id.* At deposition, Rowan testified that Plaintiff had told "everybody" at work that she was a professional rapper, and that she was married to Bizarre. ECF No. 55-9, PageID.1491. Rowan then said that he looked up some songs Plaintiff and Bizarre sang together, and the "lyrics of their

songs" made him blush.[2] *Id.* Rowan then expressed disbelief as to Plaintiff's allegations of "fainting" because of alleged harassment, contrasting that story with the Plaintiff he knew, and the language she used. *Id.* at 1472, 1491.

Here, Plaintiff's motion is not about excluding lyrics; indeed, she does not specify any particular lyrics she thinks should be excluded, and her motion should be denied for that reason. *See supra* at 1-2. Instead, what Plaintiff is trying to do is stop Rowan—who she claims she will call as a witness—from offering his personal observations and disbelief that Plaintiff was offended by purported communications with him. *See* ECF No. 116, PageID.2395. Her motion should be denied.

A plaintiff alleging harassment must not only show that the work environment is objectively hostile; the plaintiff must also show that she "subjectively perceive[s] the environment to be abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Evidence that Plaintiff was no shrinking violet, unoffended by off-color language is thus relevant. And that is what Rowan's testimony claims: Plaintiff used highly offensive language herself and bragged about it to co-workers, which undercuts her

---

[2] One review of Bizarre's major-label debut album states that "Bizarre traffics in shock, delivering an endless barrage of tasteless one-liners and scatological non sequiturs…. Anyone who doesn't find the topics of pedophilia, drug abuse, or incest innately hilarious will find *Hannicap Circus* rough going." *See* Ex. F. Billboard Magazine notes that Plaintiff, under her stage name "Sindee Syringe," performed with Bizarre on at least one of the songs on that album. *See* Ex. G.

claims of a subjectively hostile environment.[3] *See, e.g.*, *Alexander v. Cit Tech. Fin. Servs., Inc.*, 217 F. Supp. 2d 867, 880 (N.D. Ill. 2002). Plaintiff has shown no risk of undue prejudice from this evidence, which is directly relevant to her harassment claim. The Court should await Rowan's testimony in context before addressing any relevancy objections. It should not exclude that testimony based on Plaintiff's one-paragraph request that cites no law and offers no argument.

**III. Plaintiff's motion in limine regarding unspecified texts with ex-boyfriend Donald Lowery should be denied for lack of specificity and as premature.**

Finally, Plaintiff seeks to exclude "sexual" or "suggestive" texts between Plaintiff and her ex-boyfriend Donald Lowery, which were part of the text message production ordered by Magistrate Judge Stafford in her recent orders. But, again, Plaintiff identifies no text messages or their contents for the Court, which is reason enough to deny the motion for lack of specificity.

That said, the issue is largely moot and should be denied in large part as moot. In email exchanges, Plaintiff identified specific text messages, and Ford explained that it would conditionally stipulate not to use all but three of them (and has since decided to conditionally stipulate to one more, leaving only two.) *See* Ex. E. As Ford

---

[3]Apart from nude or semi-nude photos Rowan claims he did not send, ECF No. 55-9, PageID.1472, much of the documentary evidence of alleged harassment merely consists of innuendo. *See, e.g.*, ECF No. 51-7, PageID.864, 878-881. Given that Plaintiff herself joined in with some of the banter—and given other evidence of language she has used, *see infra*, her claims of subjective abuse for some of the communications is certainly to be at issue.

said, it has no intention of using sexual texts of a strictly private nature between Plaintiff and her ex-boyfriend. But the stipulation must be conditional because (there are 86 deleted text messages between Plaintiff, Lowery, *and Rowan* that have not yet been turned over in discovery, but which the parties recently agreed to allow Ford to attempt to forensically recover. There is a possibility that the 86 deleted texts, if recovered, could reveal some sort of relationship or other method of communication between Plaintiff, Rowan, and Lowery that might render the other texts relevant. Ford also told Plaintiff it would agree that it would not attempt to use any of the conditionally-stipulated to texts without first making a proffer to the Court of their relevance.

That said, there are two texts Plaintiff identified that Ford cannot stipulate not to use, conditionally or otherwise. They are as follows[4]:

*First*, an October 1, 2018 text from Lowery to Plaintiff stating, "He really likes you to do THAT." Control No. MD19110800100006328. The text is not a sexual text of a strictly private nature, and until the forensic exam is complete, Ford cannot rule out that this references relevant people in the litigation. It would be premature to preclude this text at this time.

---

[4] The texts were only produced in spreadsheet form by Plaintiff's forensic vendor N1 Discovery. The control numbers refer to N1's control numbers in that spreadsheet.

*Second*, a November 1, 2018 text from Plaintiff to Lowery stating, "If you cumming to get some bring me tylenol zantac if you thought about it if not I c u tomorrow." Control No. MD19110800200003739. This is also not a sexual text of a strictly private nature, and it is specifically relevant here. At deposition, Plaintiff discussed a September 4, 2018 text message where Rowan asked "Gonna cum get this burrito?" to which Plaintiff replied "Yezzzzzzz." ECF No. 55-10, PageID.1508. She claimed that this had a sexual meaning (rather than a misspelling) and that it was "nasty" and not reflective of her having a friendly relationship with Rowan. ECF No. 55-3, PageID.1264-1265. That she used the identical misspelling a few months later is relevant to showing that Plaintiff's alleged subjective offense at Rowan's text is a recent fabrication. It is admissible and would cause no undue prejudice to Plaintiff.

**Conclusion**

The Court should deny Plaintiff's motion in limine.

Respectfully submitted,

*/s/ Thomas J. Davis*
Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
Kienbaum Hardy Viviano Pelton
& Forrest, PLLC
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

Dated: July 13, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2023, I electronically filed the above document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/ Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com