UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————

DEANNA JOHNSON

    Plaintiff,

vs.

FORD MOTOR COMPANY,
*a Delaware corporation;*

    Defendant.

Case No. 2:19-cv-10167
Hon. Gershwin A. Drain
Mag. Judge Elizabeth A. Stafford

_____/

| | |
|---|---|
| Carol A. Laughbaum (P41711)<br>STERLING ATTORNEYS AT LAW, P.C.<br>Attorneys for Plaintiff<br>33 Bloomfield Hills Pkwy., Ste. 250<br>Bloomfield Hills, Michigan 48304<br>(248) 644-1500<br>claughbaum@sterlingattorneys.com | Elizabeth P. Hardy (P37426)<br>Thomas J. Davis (P78626)<br>KIENBAUM, HARDY, VIVIANO,<br>PELTON &<br> FORREST, P.L.C.<br>Attorneys for Defendant<br>280 N. Old Woodward Ave., Ste.400<br>Birmingham, MI 48009<br>(248) 645-0000<br>ehardy@khvpf.com<br>tdavis@khvpf.com |

_____/

**PLAINTIFF'S SUPPLEMENTAL BRIEF RE: ECF 122 – DEFENDANT'S MOTION IN LIMINE AS TO "ALLEGED CONSENSUAL RELATIONSHIPS"**

# OVERVIEW

At the August 1, 2023 Final Pretrial Conference in this matter, the Court made rulings from the bench regarding the parties' various pre-trial motions. At that time, Plaintiff sought clarification with respect to the Court's ruling on an issue raised in *Defendant's Motion in Limine Concerning Miscellaneous Evidentiary Matters* (ECF #122).[1] The Court indicated that it would accept additional, limited briefing. In this supplemental brief, Plaintiff seeks clarification regarding the Court's ruling regarding Mr. Rowan's "consensual workplace relationships" (as phrased by Defendant) and/or Rowan's serial pursuit of workplace sexual relationships (as phrased by Plaintiff).

As Plaintiff understands it, the Court denied this motion without prejudice. The Court specifically ruled that Plaintiff can testify as to what she observed regarding Rowan's affairs (including Rowan flashing Plaintiff videos on his cell phone of Rowan having sex with colleagues). Plaintiff understands that the Court also ruled that Plaintiff may elicit testimony, including from Ford Crew Operations Manager LaDawn Clemons, concerning Ford's knowledge of Rowan's alleged affairs, and Ford's decisions to relocate Rowan as a result. While Ford claims the "girlfriend allegations" are unproven rumors (which Ford apparently never investigated in an attempt to prove or disprove them), upon information and belief, the Court ruled that Ms. Clemons' testimony regarding

---

[1] ECF 122 (motion); ECF 131 (response); ECF 139 (reply).

1

the allegations posed no hearsay issues. What Ms. Clemons reported to HR in the context of discussing Plaintiff's allegations ("I do know that he [Rowan] has had relationships with hourly women across crews…." [ECF 55-5, PageID 1317]) is not being offered to prove the truth of the matter asserted - that is, that Rowan actually had these relationships - but instead to show Ford's notice of these alleged relationships and the action it chose to take (moving Rowan) or not take (interview/follow up with him) as a result of those allegations. Clemons' statements to HR are also non-hearsay party admissions under FRE 801(d)(2)(D).

    The "girlfriend allegations" are highly relevant to Plaintiff's claims that Rowan propositioned her for sex. Plaintiff testified that Rowan told her he did not yet have a Black woman in his collection, and wanted to "add" Plaintiff to his "collection." Plaintiffs reported the "add to my collection" comments to Rich Mahoney (Plaintiff's 1st line supervisor) (ECF 55-4, PageID 1293). The Court cited these facts in its August 1, 2023 ruling, finding the girlfriend allegations to be "probative." In addition to being probative regarding Rowan seeking sex from Plaintiff, the girlfriend allegations/Ford's decision to relocate Rowan because of those allegations are probative on the issue of Ford's notice of Rowan pursuing sexual relationships – consensual or not - that were at least potentially inappropriate and which Rowan had a duty to report.

Plaintiff does not believe that the Court granted any portion of Ford's motion on this issue, but seeks confirmation that Plaintiff is not limited in eliciting testimony and presenting evidence regarding the "girlfriend allegations."

## ARGUMENT

Contrary to Ford's arguments, there is no blanket rule that "rumors are inadmissible hearsay" (ECF 122, PageID 2594). *See Targonski v City of Oak Ridge*, 921 F Supp 2d 820, 827 (ED Tenn, 2013) (finding a supervisor's statement regarding a rumor was not hearsay as it was an admission under FRE 801(d)(2)(D)). And, if not offered for the truth, a rumor is not only not hearsay, it may be a material fact. *Southerland v Sycamore Community Bd of Ed*, 277 F Supp 2d 807, 816 (SD OH 2003).

Moreover, in this case, Ms. Clemons did not present this evidence as simply rumor, at least not initially. On November 26, 2018, Ms. Clemons discussed Plaintiff's sexual harassment allegations with Ford HR – Salaried Personnel Supervisor Les Harris. She confirms that she advised Harris that <u>she knew</u> about Rowan's relationships:

> I do know that he has had relationships with hourly women across crews. We have never been able to prove it. That's why we've moved him around.

(ECF 55-5, PageID 1317).

A few weeks later, Ms. Clemons was also interviewed by HR Manager Mario Spadafora as part of the Rowan investigation. She confirms that she told Mr. Spadafora the following:

> A longer running process coach (no longer with the company – Terrance Roach) would say things like, 'you know, he [Rowan] has 6 or 7 girlfriends back there.' Another said that you know he doesn't want to leave that area because of some of the relationships he has back there.

(ECF 55-5, PageID 1320)

Roach told Ms. Clemons about the "6-7 girlfriends back there" which was subsequently discussed in staff meeting(s) attended by Ford salaried staff – meaning process coaches up through the plant manager (ECF 55-5, Page ID 1320-1321). As a result of these discussions, Ford moved Mr. Rowan, repeatedly:

> So, he had been moved to Chassis 4. He had been moved to Chassis 7, just in efforts to move him away from that area based on the hearsay that was going around the plant. (…)
>
> I would say he [Rowan] was moved at least three times off the Engine line…I just know that it [girlfriend issue] was brought up and they requested [to move him]…. [I told Harris and Spadafora that Nick was moved around because of these alleged relationships, although I don't know that for certain] because that was the general thought behind the moves.

(ECF 55-5, PageID 1318; 1321-1322).

And, the girlfriend rumors were widespread, *id* at PageID 1317 ("people [were] having conversations [about Rowan's relationships] throughout the

4

plant").[2] Clemons also confirmed that to her knowledge, no one at Ford asked Rowan about these alleged relationships, although under Ford policy any such relationships would have been required to be reported. *Id* at 1317-1318,1322. Instead, Ford's response was to relocate Rowan.

In addition to this evidence being highly relevant to Ford's notice of Mr. Rowan's conduct, Plaintiff relies on the case law she cited in her prior brief for the proposition that even so-called "consensual" relationships can be probative of a hostile work environment (ECF 131, PageID 2906-2909). This is particularly so where the evidence relates to the conduct of the accused harasser, as opposed to third parties, *id.* Plaintiff seeks a ruling clarifying that there are no restrictions on her ability to elicit testimony and present evidence regarding the "girlfriend allegations" or Ford's response to those allegations.

| PROOF OF SERVICE | Respectfully submitted, |
|---|---|
| I certify that on August 8, 2023, I filed the foregoing paper with the Clerk of the Court using the ECF system, which will electronically send notification to all counsel of record.<br><br>/s/Carol A. Laughbaum<br>Sterling Attorneys at Law, P.C.<br>33 Bloomfield Hills Pkwy., Ste. 250<br>Bloomfield Hills, MI 48304<br>(248) 644-1500 | STERLING ATTORNEYS AT LAW, P.C.<br><br>By: /s/Carol A. Laughbaum<br>    Carol A. Laughbaum (P41711)<br>    Attorneys for Plaintiff<br>    33 Bloomfield Hills Pkwy., Ste. 250<br>    Bloomfield Hills, MI 48304<br>    (248) 644-1500 |

---

[2] Ms. Clemons – to whom all 2000 employees at the Dearborn Truck plant reported in a dotted-line capacity – was in constant contact with every department in the plant, listening in, communicating with them, and being privy to their conversations (ECF 55-5, PageID 1301, 1306).

5