UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DeAnna Johnson,

Plaintiff,

v.

Ford Motor Company,

Defendant.

_____/

Case No. 19-cv-10167

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER RESOLVING CROSS MOTIONS *IN LIMINE* (ECF Nos. 116, 118, 119, 121, 123, 124)[1]

### I.   INTRODUCTION

On January 17, 2019, Plaintiff DeAnna Johnson ("Plaintiff" or "Johnson") initiated the instant employment discrimination action against Defendant Ford Motor Company ("Defendant" or "Ford").  ECF No. 1.  Plaintiffs currently pending claims are for sexual harassment/quid pro quo and hostile work environment under

---

[1] ECF Nos. 120 and 122 remain under advisement while the Court awaits supplemental briefing from the parties, as ordered during the Final Pretrial Conference on August 1, 2023.

Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), racial harassment/racially hostile work environment under 42 U.S.C. § 1981.[2]  *See id.* at PageID.7–9

Presently before the Court are Plaintiff's Motion *in Limine* (ECF No. 116), Defendant's Motion *in Limine* to Preclude Reference to the Sixth Circuit's Opinion (ECF No. 118), Defendant's Motion *in Limine* to Exclude Claims and Evidence Related to Plaintiff's Separation from Ford and Associated Lost-Pay Damages (ECF No. 119), Defendant's Motion Under Rule 42(b) to Bifurcate Trial, with Issues of Notice to be Tried First (ECF No. 121), Defendants' Motion *in Limine* to Exclude Evidence on Amount of Punitive Damages – Including Ford's Size and Wealth – Unless a Jury Finds Punitive Damages Are Warranted (ECF No. 123), and Defendant's Motion *in Limine* to Strike Testimony of Mental Health Witness Dr. Ashok Shah (ECF No. 124).

All the motions are fully briefed. Upon review of the Parties submissions, the Court concludes that oral argument will not aid in the disposition of these matters. Therefore, the Court will resolve the instant motions on the briefs.  *See* E.D. Mich. LR 7.1(f)(2).  For the following reasons and subject to caveats discussed below, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion *in Limine* (ECF No.

---

[2] Plaintiff's Amended Complaint also alleged a sexual assault and battery claim, ECF No. 9–10, but the Court granted summary judgment on that claim, ECF No. 100, PageID.1954.

116), **GRANTS** Defendant's Motion *in Limine* to Preclude Reference to the Sixth Circuit's Opinion (ECF No. 118), **GRANTS** Defendant's Motion *in Limine* to Exclude Claims and Evidence Related to Plaintiff's Separation from Ford and Associated Lost-Pay Damages (ECF No. 119), **DENIES** Defendant's Motion Under Rule 42(b) to Bifurcate Trial, with Issues of Notice to be Tried First (ECF No. 121), **DENIES** Defendants' Motion *in Limine* to Exclude Evidence on Amount of Punitive Damages – Including Ford's Size and Wealth – Unless a Jury Finds Punitive Damages Are Warranted (ECF No. 123), and **GRANTS** Defendant's Motion *in Limine* to Strike Testimony of Mental Health Witness Dr. Ashok Shah (ECF No. 124).

## II.   LAW & ANALYSIS

### A. Legal Standard

The standard for relevancy is "extremely liberal" under the Federal Rules of Evidence.[3]   *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009).   Rule 401 states that evidence is relevant if "(a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."   Fed. R. Evid. 401 (emphasis added).   Relevant evidence

---

[3] Hereinafter, all reference to a "Rule" or the "Rules" are to the Federal Rules of Evidence unless otherwise stated.

3

is presumptively admissible while irrelevant evidence is not admissible at all.  Fed. R. Evid. 402.  "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." *United States v. Whittington*, 455 F.3d 736, 738–39 (6th Cir. 2006) (alteration in original) (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 475 (6th Cir. 1996)).  Nevertheless, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.

A district court has "broad discretion in determining the relevancy and admissibility of evidence, and its rulings on evidentiary matters will be reversed only upon a clear showing that it abused its discretion."  *United States v. Branch*, 956 F.2d 1164 (6th Cir. 1992); *see also United States v. Drake*, 280 F. App'x 450, 454 (6th Cir. 2008).

### B. Discussion

#### 1. Plaintiff's Motion *in Limine* (ECF No. 116)

##### i.  Inaccuracies on Plaintiff's Resume

Plaintiff acknowledges that the resume she used to obtain her job at Ford "is embellished and inaccurate."  ECF No. 116, PageID.2391.  Nevertheless, she argues

4

that these inaccuracies "are flatly irrelevant" to whether Rowan subjected Plaintiff to a racially or sexually hostile work environment, whether Defendant took prompt remedial action upon notice of Rowan's conduct, and whether Plaintiff is entitled to damages. *Id*. at PageID.2392.

Generally speaking, "evidence of a person's character or trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). However, Rule 404(a)(3) provides an exception for evidence of a witness's character admitted under, *inter alia*, Rule 608. Further, Rule 608(b)(1) permits cross examination into specific instances of conduct that "are probative of the character for truthfulness or untruthfulness of . . . a witness[.]"

Here, Plaintiff's resume and job application claimed she had seven years' experience as a production supervisor at an employer where she had not worked as a supervisor and had only worked for two months. ECF No. 51-2, PageID.757–58. Her resume and application also stated that she worked for an employer for which she had never worked. *Id.* at PageID.754. Ford's liability in this case is almost entirely dependent on Plaintiff's testimony; her credibility is thus key to issues that will be before the jury. As such, the Court finds that evidence that Plaintiff lied on her resume and in her job application with Ford are probative of her credibility and are thus relevant. *See, e.g.*, *Flores v. Virginia Dep't of Corr.*, No. 5:20-CV-00087,

2022 WL 3329932, at *2 (W.D. Va. Aug. 11, 2022) (holding the plaintiff's "material misrepresentation on her resume . . . clearly fall within the purview of Rule 608(b)" because "[t]hese falsehoods are probative of [the plaintiff]'s character for truthfulness"); *Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, No. 09 C 7891, 2019 WL 1200780, at *4 (N.D. Ill. Mar. 14, 2019) (holding that the plaintiff's resumes, which "contain[ed] two falsehoods," were "admissible under Rule 608(b) because they relate to character for truthfulness"); *McGraw v. United Tugs, Inc.*, No. CV 15-394, 2017 WL 11535972, at *2 (E.D. La. Oct. 18, 2017) (noting "the admittedly false statement on [the plaintiff's] employment application" is "probative of his character for truthfulness or unartfulness").

Plaintiff relies on *Stokes v. Xerox Corp.* to argue that the inaccuracies on her resume and in her application are irrelevant. However, the *Stokes* Court found that that plaintiff's employment history was irrelevant, in part, because her most recent prior job was over nine years prior to the lawsuit. No. 05-71683, 2008 WL 275672, at *9 (E.D. Mich. Jan. 28, 2008); *see also Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1382 (Fed. Cir. 2018) ("In determining whether to permit such cross-examination [under Rule 608(b)], however, it is appropriate for the court to consider the remoteness in time of the conduct in question and to view the conduct as less probative of untruthfulness if it happened long in the past." (citation omitted)). Here, in contrast, Plaintiff was only employed by Ford for about five

months, and her deceit was much more proximate, which increases its probative value.

Plaintiff also argues that the probative value of this evidence is substantially outweighed by the right of unfair prejudice, undue delay, and potential juror confusion, and is thus excludable under Rule 403. ECF No. 116, PageID.2394. With respect to prejudice, "[u]nfair prejudice does not mean the damage to a [party]'s case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (quoting *United States v. Bonds*, 12 F3d 540, 567 (6th Cir 1993)). The probative value of the evidence outweighs the slight risk that the jury might use it to make a decision on an improper basis. Additionally, any risk of undue delay is mitigated by Rule 608(b) itself, which does not allow the introduction of extrinsic evidence to prove specific instances of a witness's conduct to attack the witness's character for truthfulness. Fed. R. Evid. 608(b). The Court will go further and only permit Defendant to cross examine Plaintiff about those employers she, in fact, listed on her resume and/or job application. Finally, the Court finds that the probative value of such evidence outweighs any risk of confusing the issues.

Accordingly, Plaintiff's motion is **DENIED** with respect to the inaccuracies on Plaintiff's resume and in Plaintiff's job application. However, Defendant is

limited to cross examining Plaintiff about employers that she, in fact, included on her resume, and Defendant may not present extrinsic evidence on this issue.

###    ii.    Plaintiff's Ex-Husband's rap lyrics

Next, Plaintiff moves *in limine* to exclude, specifically during Rowan's testimony, reference to her ex-husband's rap lyrics, which have graphic content. ECF No. 116, PageID.2395.

Using the stage name Sindy Syringe, Plaintiff performed backup vocals for her ex-husband, a rapper with the stage name Bizarre, as well as the rapper Eminem. ECF No. 55-3, PageID.1182–83.  Rowan testified that Plaintiff "told everybody that she was a professional rapper" and that when he looked up Plaintiff's songs with Bizarre after the events giving rise to this lawsuit, "the lyrics of their songs made [him] blush." ECF No. 55-9, PageID.1491.  He continued that he "could not believe" that the same woman who allegedly fainted over his conduct had performed those songs. *Id*.

To succeed on a hostile work environment claim under the ELCRA, a plaintiff must show that the environment was objectively hostile and that she subjectively perceived the environment to be abusive. *See Curry v. SBC Commc'ns, Inc.*, 669 F. Supp. 2d 805, 833 (E.D. Mich. 2009) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)).  The Court finds the fact that Plaintiff performed vulgar songs and bragged about them to her coworkers is probative of whether she

subjectively found Rowan's behavior abusive; the evidence is thus relevant under Rule 401.  The Court also finds that any risk of unfair prejudice, confusing the issues, or undue delay is outweighed by the probative value of the evidence.  *See* Fed. R. Evid. 403.  Nevertheless, the Court will further mitigate these risks by limiting Defendant to only presenting evidence about songs on which Plaintiff is featured instead of allowing evidence of songs unrelated to Plaintiff.

Accordingly, Plaintiff's motion is **DENIED WITHOUT PREJUDICE** with respect to Plaintiff's ex-husband's lyrics.  However, Defendant is limited to referencing lyrics from songs on which Plaintiff is featured.

### iii.    Text messages between Plaintiff and her ex-boyfriend

Finally, Plaintiff moves *in limine* to exclude personal, including sexual, text messages between her and her ex-boyfriend.  ECF No. 116, PageID.2395.  She argues that they have "nothing to do with Plaintiff's workplace or allegations in this lawsuit" and are thus not relevant.  *Id.*  Defendant has conditionally stipulated not to use all but two of the text messages that Plaintiff identified as wanting to exclude, meaning that Ford would make a proffer to Court regarding the relevance of the text messages before trying to introduce them into evidence.   ECF No. 126, PageID.2772–73.

Defendant has refused to stipulate not to use two text messages.  *Id.* at PageID.2773.  The first, sent on October 1, 2018, is from Plaintiff's ex-boyfriend to

9

Plaintiff stating, "He really likes you to do THAT," and Defendant is waiting for further analysis of Plaintiff's phone to determine whether the text message references people relevant to the instant litigation. *Id.* (citation omitted). Defendant has indicated it will not seek to introduce the message if it is not relevant.

The second text message, sent on November 1, 2018, is from Plaintiff to her ex-boyfriend stating, "If you cumming to get some bring me Tylenol zantac if you thought about it if not I c u tomorrow." *Id.* at PageID.2774. During her deposition, Plaintiff testified that Rowan's text message to her asking if she was "[g]onna cum get this burrito" was sexual in nature. ECF No. 55-3, PageID.1264. As such, Defendant argues the November text message to her ex-boyfriend is probative of her subjective offense at the text message from Rowan. ECF No. 126, PageID.2774. The Court agrees that the November message is probative of whether Plaintiff considers the misspelling of "come" and "coming" as "cum" or "cumming" to be inherently sexual. *See* Fed. R. Evid. 401. Given that the November text message is neither overtly offensive nor overtly vulgar, if it can be considered such at all, the Court finds that its probative value outweighs any risk of unfair prejudice.

Accordingly, Plaintiff's motion is **DENIED WITHOUT PREJUDICE** with respect to the October 1, 2018 text message. As with the conditionally stipulated text messages, Defendant must make a proffer of relevance before seeking to introduce it. The motion is **DENIED** with respect to the November 1, 2018 text message.

### 2. Defendant's Motion *in Limine* to Preclude Reference to the Sixth Circuit's Opinion (ECF No. 118)

Defendant moves *in limine* to exclude reference to the Sixth Circuit's earlier decision in this case.  ECF No. 118, PageID.2419.  Specifically, Defendant contends that the opinion contained a factual recitation in the light most favorable to Plaintiff, given the summary judgment standard, and should not be used to suggest that "the Sixth Circuit made factual findings or otherwise agreed with Plaintiff's assertions." *Id*.  Plaintiff "has no intention of 'introducing evidence at trial' regarding the Sixth Circuit Opinion."  ECF No. 127, PageID.2843.

Accordingly, Defendant's motion is **GRANTED**.  The parties may not reference, or present evidence of, the Sixth Circuit Opinion.  They may, however, present evidence to prove or disprove the allegations the Sixth Circuit referenced therein.

### 3. Defendant's Motion *in Limine* to Exclude Claims and Evidence Related to Plaintiff's Separation from Ford and Associated Lost-Pay Damages (ECF No. 119)

Defendant also moves *in limine* to exclude "evidence related to Plaintiff's separation from Ford and associated lost-pay damages."  ECF No. 119, PageID.2436.  Defendant asserts that Plaintiff's Amended Complaint does not allege constructive discharge or wrongful termination, and this Court denied Plaintiff's earlier motion to add a termination-related claim as futile and untimely.  *Id.* at

11

PageID.2444 (citing ECF No. 45, PageID.651).    Thus, Defendant argues that "[b]ecause Plaintiff has no termination-related claim in the case, evidence in support of a claim for economic damages stemming from Plaintiff's termination is irrelevant." *Id.* (citing *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 475 (6th Cir. 2009)).

Plaintiff counters that her "claims include that her work environment was so hostile and untenable that she was forced to take an unpaid medical leave in November 2018, resulting in financial losses (lost wages, lost benefits)" through September 2019 and that these losses occurred regardless of whether Defendant later terminated her employment.    ECF No. 130, PageID.2890.  Plaintiff further contends that *Betts* allows for recovery of lost wages where a plaintiff is unable to work due to her hostile work environment.    *Id.* (citing *Betts*, 558 F.3d at 474–75)).

Plaintiff reads *Betts* too broadly.    *Betts* does not suggest, as Plaintiff argues, that a plaintiff may recover lost wages without a wrongful termination or constructive discharge claim.  Instead, the *Betts* Court affirmed the district court's exclusion of the plaintiffs' lost wages award based on its reasoning that (1) damages that are based on a loss of wage claim "do not naturally flow from a hostile work environment claim" *and* (2) that the plaintiffs failed to allege that they missed work due to a hostile work environment; thus, it would be erroneous to allow the plaintiffs "to recover lost wages when their termination was deemed lawful."  *Betts*, 558 F.3d

12

at 474–75.  That both elements are required is further supported by the Sixth Circuit positively noting the district court's recognition that "several federal courts have adopted similar analysis regarding the nonavailability of lost wages as damages in the context of a meritorious hostile-work-environment claim without a finding of wrongful termination."  *Id.* at 475 (citing *Spencer v. Wal–Mart Stores*, Inc., 469 F.3d 311, 317 (3d Cir. 2006); *Mallinson–Montague v. Pocrnick*, 224 F.3d 1224, 1236–37 (10th Cir. 2000)).

While it is true that Plaintiff's Amended Complaint alleges that she missed work due to the hostile work environment at the Dearborn plant, she *only* alleges hostile work environment claims.  Because she lacks a formal constructive discharge claim, Plaintiff may not recover any lost-wages damages.  *See Betts*, 558 F.3d at 474–75.  Evidence related to her termination and lost wages have no probative value in this litigation is thus irrelevant.  *See* Fed. R. Evid. 401.

Accordingly, Defendant's motion is **GRANTED**.  Plaintiff may not present evidence regarding her termination from Ford or associated lost-pay-damages.  She may, however, present evidence regarding her unpaid medical leave, to the extent it is related to her hostile work environment claims or pursuit of emotional distress damages.

### 4. Defendant's Motion Under Rule 42(b) to Bifurcate Trial, with Issues of Notice to be Tried First (ECF No. 121)

Defendant also moves, pursuant to Federal Rule of Civil Procedure 42(b), to bifurcate the trial. *See* ECF No. 121. Specifically, Defendant argues that substantive evidence of harassment is not relevant unless it post-dates notice, so Defendant requests that this Court "try separately whether Ford was on notice of sexual or racial harassment to Plaintiff, before the other issues in the case" to avoid the prejudice that would result from "highly inflammatory evidence." *Id.* at PageID.2529.

Federal Rule of Civil Procedure 42(b) provides, in relevant part, "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. The decision whether to bifurcate falls within the district court's discretion. *See Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (citing *Saxion v. Titan-C Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996)). "The party seeking bifurcation has the burden of demonstrating judicial economy would be promoted and that no party would be prejudiced by separate trials." *Marchese v. Milestone Sys., Inc.*, No. 12-12276, 2013 WL 12183618, at *2 (E.D. Mich. Dec. 3, 2013) (quoting *K.W. Muth Co. v. Bing-Lear Mfg. Group*, No. 01-CV-71925, 2002 WL 1879943, *3 (E.D. Mich. July 16, 2002)).

14

Upon review, the Court concludes that bifurcation would not promote convenience or expedite and economize the trial. *See* Fed. R. Civ. P. 42(b). Most, if not all, of the witnesses that will testify regarding Defendant's alleged notice of Rowan's harassment will also be called to testify about the "substantive harassment" itself. For example, Defendant will likely have Markovich and Mahoney testify that Plaintiff never told them about the harassment, *see* ECF No. 121, PageID.2535, while Plaintiff will examine them about their observations of Rowan's behavior, the conversations Plaintiff had with them about Rowan's behavior, and the lewd images and text messages Plaintiff received from Rowan that she allegedly showed them. Likewise, Plaintiff will also testify about both the notice issue and the "substantive harassment." Not only would these, and other Ford-employee, witnesses need to be called to testify twice, it appears that their testimony in both instances would significantly overlap.

Indeed, the issue of notice seems inextricably intertwined with the evidence of "substantive harassment," specifically whether the harassment was so "pervasive[]" as to put Defendant on constructive notice that it was occurring. *See Sheridan v. Forest Hills Public Sch.*, 247 Mich. App. 611, 621 (Mich. Ct. App. 2001)) (citation omitted). Defendant itself acknowledges that one of the questions pertaining to the notice issue is "whether sexual or racial harassment was open and obvious to relevant Ford management." ECF No. 121, PageID.2545; *see also* ECF

No. 142, PageID.3219 ("At phase one, she may offer evidence of harassment that (1) Ford allegedly had constructive notice of; or (2) that she allegedly brought to the attention of Ford's higher management."). This would necessarily involve evidence of the "substantive harassment" Plaintiff allegedly experienced.

While the Court acknowledges that there is *a* risk of prejudice in that jurors might attribute to Defendant harassment that occurred before Ford was on notice that it was occurring, such risk can be mitigated by proper jury instructions. As the Eleventh Circuit in considering Federal Rule of Civil Procedure 42(a), "the risks of prejudice and confusion that might attend a consolidated trial can be alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the plaintiffs' claims (including the defenses thereto) are submitted to the jury for deliberation." *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017) (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).

Indeed, courts in this Circuit regularly employ such strategies. For example, in *Wellington v. Lake Health Sys., Inc.*, the defendants similarly moved to bifurcate on the grounds that evidence admitted to prove the plaintiff's negligent/hiring claim would prejudice them with respect to her Title VII sexual harassment/hostile work environment claim. No. 1:19-CV-0938, 2020 WL 1031537, at *1 (N.D. Ohio Mar. 3, 2020). The *Wellington* Court denied the motion, reasoning as follows:

16

> In considering a motion to bifurcate, the court is required to consider convenience, prejudice, expedition and economy.   Three of these factors weigh against bifurcation and the fourth factor – prejudice – can be mitigated, if necessary, by a limiting jury instruction.   Courts commonly instruct juries to deliberate the causes of action in a particular order coupled with additional limiting instructions that admonish the jury that certain evidence may not be considered for one claim, but only for another.   Here, there is no doubt the jury could be instructed that they will not reach the negligent hiring/retention claim unless they find for the plaintiff on the Title VII claim.   And they could be instructed that certain evidence submitted to prove the former claim could not be considered when deciding the latter.

*Id.* at *2; *see also Brumfield v. Tyson Foods, Inc.*, No. 1:05 CV 847, 2007 WL 9770235, at *2 (N.D. Ohio Oct. 10, 2007) (finding denial of the defendants' motion to bifurcate "was appropriate" because separation of the claims was "unnecessary" and "appropriate jury instructions would avoid any possible prejudice to" the defendants).

Defendant relies on *Walker v. Daimler-Chrysler Corp.*, in support of its argument that permitting evidence of substantive harassment prior to jury's decision on notice would be "highly prejudicial."   ECF No. 121, PageID.2542 (citing *Walker*, No. 02-CV-74698-DT, 2005 WL 8154351, at *13 (E.D. Mich. Nov. 16, 2005)).   However, *Walker* is distinguishable.   There, the court determined that racist "[c]omments made by non-decisionmakers have no bearing on whether discrimination played a part in the Plaintiff's demotion and allowing these remarks

17

may mislead the jury as to [their] importance." *Walker*, 2005 WL 8154351, at *13. The *Walker* Court thus barred the evidence under Rule 403. Here, in contrast, the evidence that Defendant seeks to exclude during the proposed first phase of the trial is relevant to Plaintiff's constructive notice allegations. Thus, with the use or limiting jury instructions, the Court finds that probative value of the evidence of "substantive harassment" outweighs the risk of unfair prejudice, *see* Fed. R. Evid. 403, such that bifurcation is unnecessary.

Lastly, Defendant's assertion that bifurcation will reduce the risk of confusing the issues is speculative. If the Court bifurcates as Defendant requests, the jury could still find that Defendant was, in fact, on notice of both racial and sexual harassment prior to November 25, 2018. In that scenario, the Court would still have to instruct the jurors "to simultaneously subject the same evidence to two different admissibility standards on two distinct claims." ECF No. 121, PageID.2544. Even if the jury were to find Plaintiff did not provide notice of racial harassment, as discussed above, the evidence of "substantive" sexual harassment in the second phase of the trial would be largely duplicative of the evidence of notice of sexual harassment. *Cf. In re Bendectin Litigation*, 857 F.2d 290, 316–17 (6th Cir.1988) ("[A] court may try an issue separately if 'in the exercise of reasonable discretion [it] thinks that course would save trial time or effort or make the trial of other issues unnecessary.'" (quoting Richmond v. Weiner, 353 F.2d 41, 44 (9th Cir.1965))).

18

Accordingly, Defendant's motion is **DENIED**.

     **5.** **Defendants' Motion** *in Limine* **to Exclude Evidence on Amount of Punitive Damages – Including Ford's Size and Wealth – Unless a Jury Finds Punitive Damages Are Warranted (ECF No. 123)**

Defendant also moves *in limine* to "preclude Plaintiff from presenting evidence relating to the amount of damages, including evidence of Ford's size and financial condition and the relative disparity between the parties, until Plaintiff has established she is entitled to punitive damages." ECF No. 123, PageID.2623. In support, Defendant contends that evidence pertaining to the amount of damages is irrelevant to liability generally, and liability for punitive damages specifically, and such evidence is highly prejudicial. *Id.* at PageID.2626–27.

This is effectively a second motion for bifurcation. As in Section II, Subsection B, Part 4 *supra*, the Court finds that bifurcating the issue of punitive damages will not promote convenience or expedite and economize the trial. *See* Fed. R. Civ. P. 42(b). Specifically, the testimony about Defendant's liability for punitive damages is also relevant to the amount of damages awarded, and thus testimony in both phases will be duplicative.

The Court also finds that, contrary to Defendant's assertions, evidence regarding Ford's wealth and financial situation is relevant to the punitive damages

issue.  As another court in this District recently reasoned in a case concerning, *inter alia*, a racially hostile work environment claim against a major auto manufacturer:

> FCA seeks to preclude Ms. Gaines from introducing any evidence concerning its wealth or size, arguing that such evidence is not relevant and is unfairly prejudicial.  Quoting *Clark v. Chrysler Corporation*, 436 F.3d 594, 604 (6th Cir. 2006), FCA maintains that the admission of such evidence "is improper and unconstitutional because [it] 'has no connection to the actual harm' allegedly suffered by [Ms. Gaines]." (ECF No. 49 at Pg ID 1132.)
>
> Ms. Gaines may be entitled to punitive damages if she prevails in this case.  *See* 42 U.S.C. § 1981a(b).  The financial resources of a defendant may be considered in fixing the amount of such damages. *Rodgers v. Fisher Body Div., Gen. Motors Corp.*, 739 F.2d 1102, 1109 (6th Cir. 1984); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21, 111 S. Ct. 1032, 113 L.Ed.2d 1 (1991) (approving instructions that permitted the jury to consider, among other factors, "the financial position of the defendant" when assessing punitive damages); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 n.28, 113 S. Ct. 2711, 125 L.Ed.2d 366 (1993) (rejecting the defendant's contention that the jury impermissibly considered its "impressive net worth," noting that it was "well-settled law" to allow consideration of this factor.). Accordingly, the Court rejects FCA's attempt to preclude Ms. Gaines from introducing this evidence at trial.

*Gaines v. FCA US LL*C, 522 F. Supp. 3d 295, 304 (E.D. Mich. 2021).

Although *Gaines* was extensively cited in Plaintiff's response brief, Defendant makes not attempt to distinguish its situation.  *See* ECF No. 137.  Instead, it continues to rely on *Clark* the defendant in *Gaines* did.  *See id*.  As in Section II, Subsection B, Part 4 *supra*, any potential prejudice to Defendant from the

introduction of evidence regarding its wealth can be mitigated by the appropriate jury instruction(s).

Accordingly, Defendant's motion is **DENIED**.

### 6. Defendant's Motion *in Limine* to Strike Testimony of Mental Health Witness Dr. Ashok Shah (ECF No. 124)

Finally, Defendant moves *in limine* "to strike the testimony of Plaintiff's mental health witness Dr. Ashok Shah in all capacities, whether by deposition or as a witness at trial." ECF No. 124, PageID.2682. In support of its motion, Defendant asserts that (1) during his deposition, Dr. Shah refused to answer basic questions regarding the posttraumatic stress disorder ("PTSD") diagnosis he gave Plaintiff; (2) he cannot satisfy *Daubert*; and (3) "his testimony is likely to consist of his reading verbatim to the jury factual allegations that Plaintiff made to him about her former coworker." *Id*.

Plaintiff first visited Dr. Shah, in connection with this case, at the Sinai-Grace Hospital Crisis Center ("Crisis Center"), a walk-in clinic, on November 29, 2018. ECF No. 133-3, PageID.3016–17. As a result of that visit, Dr. Shah diagnosed Plaintiff with acute stress disorder. *Id.* at PageID.3034. He also recommended Plaintiff participate in a partial day treatment program. *See* ECF No. 133-5, PageID.3055, PageID.3059. During this treatment program, Anthony Petrilli, M.D., a psychiatrist at St. John Macomb, noted that Plaintiff had "[m]ultiple signs and

symptoms of posttraumatic stress disorder" and discussed medications that she had been prescribed.  ECF No. 133-2, PageID.3011.

Plaintiff again visited Dr. Shah at the Crisis Center on January 14, 2019.  ECF No. 133-3, PageID.3035.  The "History of Present Illness" section of Dr. Shah's progress note discusses Plaintiff's prior visit as well as Plaintiff's report of her participation in the day program, the medications she was on, and her present symptoms.  ECF No. 133-6, PageID.3060–61.  It then lists PTSD under the "Diagnoses" section.  *Id.* at PageID.3061.  When pressed, Dr. Shah testified that this diagnosis was based on the information in the "History of Present Illness" section and due to the length of time Plaintiff's symptoms had persisted.  ECF No. 133-3, PageID.3036–37.  Nevertheless, he also testified that he did not have an independent recollection of what was different between the November 2018 and January 2019 visits to justify changing Plaintiff's diagnosis and would only testify to what he was able to read in his progress notes.  *Id.*; *see also id.* at PageID.3033.  The psychiatrists who subsequently treated Plaintiff ultimately ruled out a PTSD diagnosis despite reviewing Dr. Shah's notes, among other records.  *See* ECF No. 124-3, PageID.2723–25; ECF No. 124-4, PageID.2729.

As explained by the Sixth Circuit and acknowledged by both parties, *see* ECF No. 124, PageID.2694–95, ECF No. 133, PageID.3004,

> Generally, a treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of the illness. *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007). However, a treating physician's testimony remains subject to the requirement set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), that an expert's opinion testimony must "have a reliable basis in the knowledge and experience of his discipline." *Id.* at 592, 113 S. Ct. 2786. Under *Daubert*, before allowing an expert's testimony to be considered by the jury, a trial court should consider: "(1) whether the reasoning or methodology underlying the expert's testimony is scientifically valid; and (2) whether that reasoning or methodology properly could be applied to the facts at issue to aid the trier of fact." *United States v. Smithers*, 212 F.3d 306, 315 (6th Cir. 2000).

*Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009). This standard is encapsulated in Rule 702, which governs the admissibility of expert testimony. *See* Fed. R. Evid. 702.

Here, it is not clear that Dr. Shah's testimony could satisfy either of the two *Daubert* requirements. Unlike his prior two visits with Plaintiff, Dr. Shah's November 2018 and January 2019 progress noted do not refer to the Multi-Axial Diagnosis System utilized in the fourth edition of the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"). *See* ECF No. 133-5. While Dr. Shah explained that the elimination of axis diagnosing from his progress notes was due to changing trends in the field of psychiatry, he could not recall when the change occurred, how he learned about the change, or whether he applied the change to all

23

his patients.  ECF No. 133-3, PageID.3034–35.   Moreover, Dr. Shah would not answer questions about whether he had ever diagnosed a patient, other than Plaintiff, with PTSD before or what the criteria for making a PTSD diagnosis are.   *Id.* at PageID.3037.  In light of these gaps, the Court is unable to say whether Dr. Shah's reasoning or methodology were scientifically valid or whether that reasoning or methodology could properly be applied to Plaintiff's diagnosis to aid the jury.  *See Gass*, 558 F.3d at 426 (quoting *Smithers*, 212 F.3d at 315).

Plaintiff relies on *Rogers v. Detroit Edison Co.* to argue that Dr. Shah's testimony is both reliable and relevant and thus admissible under *Daubert*.  ECF No. 133, PageID.3005–07 (citing *Rogers v. Detroit Edison Co.*, 328 F. Supp. 2d 687, 688–92 (E.D. Mich. 2004)).  However, unlike Dr. Shah, the doctor whose testimony was at issue in *Rogers* "determined that [the plaintiff] suffered from PTSD based on the same factors identified by the American Psychiatric Association and adopted by this Circuit, even if [the doctor] did not specifically cite to this or any other standard as the basis for his opinion." *Rogers* 328 F. Supp. 2d at 692.  In contrast, Dr. Shah's January 2019 progress note does not address all the diagnostic criteria enumerated in the DSM, and he did not explain the factors he considered or methodology he utilized in diagnosing Plaintiff with PTSD during his deposition. *Cf. Kaiser v. Jayco, Inc.*, No. 1:20-CV-12903, 2022 WL 856155, at *5–7 (E.D. Mich. Mar. 22, 2022) (admitting psychiatrist's testimony regarding PTSD diagnosis despite his

24

deviance from the DSM-IV because he relied on the "differential diagnosis" diagnostic method and explained during his deposition that he views the DSM-IV as more "informative" than "authoritative"). Because Dr. Shah's testimony does not satisfy *Daubert* (or Rule 702), it must be stricken.

Accordingly, Defendant's motion is **GRANTED**.

## III.   CONCLUSION

Accordingly, for the reasons articulated above, and subject to the qualifications above, **IT IS HEREBY ORDERED** that:

- Plaintiff's Motion *in Limine* (ECF No. 116) is **DENIED WITHOUT PREJUDICE**,

- Defendant's Motion *in Limine* to Preclude Reference to the Sixth Circuit's Opinion (ECF No. 118) is **GRANTED**,

- Defendant's Motion *in Limine* to Exclude Claims and Evidence Related to Plaintiff's Separation from Ford and Associated Lost-Pay Damages (ECF No. 119) is **GRANTED**,

- Defendant's Motion Under Rule 42(b) to Bifurcate Trial, with Issues of Notice to be Tried First (ECF No. 121) is **DENIED**,

- Defendants' Motion *in Limine* to Exclude Evidence on Amount of Punitive Damages – Including Ford's Size and Wealth – Unless a Jury

Finds Punitive Damages Are Warranted (ECF No. 123) is **DENIED**, and

- Defendant's Motion *in Limine* to Strike Testimony of Mental Health Witness Dr. Ashok Shah (ECF No. 124) is **GRANTED**.


**IT IS SO ORDERED**.


/s/ Gershwin Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  August 9, 2023


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 9, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager