UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA JOHNSON,

    Plaintiff,

v.

FORD MOTOR COMPANY,
a Delaware corporation,

    Defendant.

Case No. 19-cv-10167

Honorable Gershwin A. Drain

Magistrate Elizabeth A. Stafford

---

| | |
|---|---|
| STERLING ATTORNEYS<br>AT LAW, P.C.<br>Carol A. Laughbaum (P41711)<br>Attorneys for Plaintiff<br>33 Bloomfield Hills Pkwy., Ste. 250<br>Bloomfield Hills, MI 48304<br>(248) 644-1500<br>claughbaum@sterlingattorneys.com | KIENBAUM HARDY VIVIANO<br>PELTON & FORREST, P.L.C.<br>Elizabeth P. Hardy (P37426)<br>Thomas J. Davis (P78626)<br>Attorneys for Defendant<br>280 N. Old Woodward Ave.<br>Ste. 400<br>Birmingham, MI 48009<br>(248) 645-0000<br>ehardy@khvpf.com<br>tdavis@khvpf.com<br><br>Blaine H. Evanson<br>GIBSON, DUNN &CRUTCHER LLP<br>3161 Michelson Drive, Suite 1200<br>Irvine, CA 92612<br>(949) 451-3800<br>bevanson@gibsondunn.com |

---

**Defendant's Motion for Judgment as a Matter of Law**

The Court should grant judgment as a matter of law to Ford on both of Plaintiff's claims because no reasonable jury could find for Plaintiff. But at the very least, the Court should not send the exemplary or punitive damages claims to the jury.

## I. Exemplary damages under the ELCRA

The Michigan Supreme Court has expressly held that ELCRA does not allow parties to recover exemplary damages. *Eide v. Kelsey-Hayes Co.*, 431 Mich. 26, 28–29 (1988); *accord, e.g.*, *Veselenak v. Smith*, 414 Mich. 567, 574 (1982) (exemplary damages not available where statute permits recovery of emotional distress damages). Plaintiff may not seek exemplary damages for her sex harassment claim.

## II. Punitive damages under Section 1981

A plaintiff may recover punitive damages only if she shows that "the individuals perpetrating the discrimination acted with malice or reckless indifference toward the plaintiff's federally protected rights." *New Breed*, 783 F.3d at 1072 (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999)) (quotation marks and alterations omitted). The plaintiff must also show "the discriminatory actor worked in a managerial capacity and acted within the scope of his employment." *Id.* In a co-worker harassment case, the employer is *not* responsible for the harassment itself. Rather, employer liability flows from its own negligence in failing to respond promptly and adequately after receiving notice of harassment. *See Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 50 (6th Cir. 1996). Similarly, for the much higher bar for punitive damages, the "only conduct that

1

can be imputed" to the defendant when assessing malice or reckless indifference are the acts of relevant officials upon receiving notice of the alleged harassment. *See, e.g.*, *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 116 (2d Cir. 2015). And for punitive damages, the knowledge and conduct of supervisors and managers whose notice might suffice for purposes of general liability are insufficient as a matter of law unless they were employed in a "managerial capacity" within the company. *Kolstad*, 527 U.S. at 533.[1]

Even then, "the defendant may avoid punitive-damages liability by showing that it engaged in good-faith efforts to comply with" antidiscrimination law. *New Breed*, 783 F.3d at 1072. Courts often grant defendants judgment as a matter of law on plaintiffs' claims for punitive damages. *See, e.g.*, *Bryant v. Aiken Reg. Med. Ctrs. Inc.*, 333 F.3d 536, 548 (4th Cir. 2003); *Williams v. Trader Pub. Co.*, 218 F.3d 481, 488 (5th Cir. 2000).

### A. Plaintiff lacks sufficient evidence of malice or reckless indifference.

Because punitive damages are reserved for the most egregious cases only—and require malicious or recklessly indifferent acts—a party cannot be awarded punitive damages based on a supervisory agent's mere knowledge of co-worker conduct and failure to act. *See Ward v. AutoZoners, LLC*, 958 F.3d 254, 269 (4th Cir. 2020) (noting

---

[1] This standard cannot be satisfied with proof of constructive notice. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002); *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325 (4th Cir. 2003) (en banc).

that this would "conflate" the "carefully crafted standards for liability for compensatory damages and punitive damages, thereby imputing liability to an employer in virtually every hostile work environment case") *EEOC v. Boh Bros. Constr. Co., 731* F.3d 444 (5th Cir. 2013) (en banc) ("[S]everal courts have held that a plaintiff is entitled to compensatory, but not punitive, damages, even where supervisors knew of discriminatory conduct and failed to afford employees a clear path to report the discrimination."). Rather, the managerial agents who had notice must *themselves* carry out intentional discrimination (here, on race). *Ward*, 958 F.3d at 267.

Plaintiff's evidence falls short. Plaintiff has conceded at trial that, if measured by a November 25, 2018 notice date, Clemons and Harris's conduct defeats even the lower bar for *liability*, and thus punitive damages. Day 2 Tr. 81–82; Day 4 Tr. 102–03. And prior to Plaintiff's report to Harris, there is no evidence that either Clemons or Harris had *any* notice of Rowan harassing Plaintiff on the basis of race.

Nor can this standard be met with respect to Markavich and Mahoney. Here, Plaintiff testified at most that she complained to Mahoney that Rowan was harassing her, that Mahoney told Plaintiff he told Markavich, and that they failed to take appropriate steps to prevent the harassment from recurring. *See, e.g.*, Day 4 Tr. 197, 210. But these facts, at best, support the liability standard for notice and failure to adequately respond. Plaintiff has offered no evidence of "malicious" or "recklessly indifferent" actions by Markavich and Mahoney beyond failing to report, let alone offer proof that

Mahoney or Markavich took such actions because of Plaintiff's race.

### B. No one who could have had "malice or reckless indifference" were managerial agents for purposes of punitive damages liability.

Plaintiff also cannot show that the "the discriminatory actor worked in a managerial capacity and acted within the scope of his employment." *New Breed*, 783 F.3d at 1072. Whether an alleged harasser worked in a managerial capacity turns on "the type of authority that the employer has given to the employee, [and] the amount of discretion that the employee has in what is done and how it is accomplished." *Kolstad*, 527 U.S. at 543 (quotation marks omitted). For a large organization such as Ford, even superficially high-ranking officials do not count if they are insufficiently high to make company policy; thus, for instance, even a *plant manager* responsible for 1,400 employees would not be a "managerial agent" for purposes of punitive damages where the company had over 107,000 employees and the plant manager was low in the overall corporate structure. *See Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 903 (11th Cir. 2011). No one accused by Plaintiff meets this standard.[2]

*First*, Mahoney was a senior process coach at a single Ford assembly plant in a general salaried role. His primary duties were to help other process coaches, including by providing direction on quality matters and safety requirements. Day 3 Tr. 99–100; Day 3 Tr. 172; Day 4 Tr. 9; Day 4 Tr. 53. In this role, Mahoney could effectuate no

---

[2] If the Court found that some relevant employees might meet the standard, it should grant the motion as to the non-managerial agents and instruct the jury appropriately.

4

meaningful change in the workplace—for example, Mahoney lacked authority to fire or discipline Rowan, and could only temporarily move process coaches on any given work day Mahoney was plainly not even a high-ranking employee within the Dearborn Truck Plant's hierarchy, let alone high enough to set policy for Ford such that Ford should be penalized with punitive damages based on this low-level employee's alleged failure to follow Ford policy. *E.g.*, Day 2 Tr. 43-44, 100–01; Day 3 Tr. 101, 172–74, 176; Day 4 Tr. 67, 140.

So too for Markavich. He was the Team Leader of a single crew for the Chassis Department at one Ford plant—four levels removed from the plant manager. Day 2 Tr. 14–15, 133. He was even more removed from the executive-level policy-making levels of Ford executive leadership. His role does not satisfy the higher bar of a managerial agent who can set company policy and subject the company to *punitive* damages, even if it could suffice for liability. *See Ash*, 664 F.3d at 903 (plant manager not a managerial agent); *Laughlin*, 2007 WL 121344, at *5–6.

Finally, neither Clemons nor Harris was a managerial agent. Both were at least two levels below the plant manager, Day 2 Tr. 15, and even further removed from company-level decisionmaking. Day 4 Tr. 124–25; Day 4 Tr. 129–30.[3]

---

[3] For the reasons explained above, Rowan's conduct is irrelevant to the Section 1981 analysis because he was Johnson's coworker. Even if that were wrong, he was not a managerial agent either, and sexual harassment was outside the scope of his employment. *See, e.g.*, *Grant v. Coken Co., Inc.*, 2004 WL 2066886, at *7 (N.D. Ill. Sept. 14,
*(Cont'd on next page)*

5

### C. Ford engaged in good-faith anti-discrimination efforts.

Finally, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with [antidiscrimination laws].'" *Kolstad*, 527 U.S. at 545. Even if an employer's good-faith efforts to prevent wrongdoing ultimately failed in an individual case, and even if that failure were egregious enough to subject the employer to liability for *compensatory* damages, the employer's good faith still "preclude[s] a punitive damage award." *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 553–54 (8th Cir. 2013); *see also Harsco Corp v. Renner*, 475 F.3d 1179, 1189–90 (10th Cir. 2007) (vacating punitive damages award).

Here, Ford has an antidiscrimination policy providing that it has "zero tolerance for" "racial or national harassment." Day 2 Tr. 37–38, 40; Ex. 1. Ford provided anti-harassment training and made its policies available to all employees. Day 2 Tr. 31–32; Day 2 Tr. 136–37; Day 4 Tr. 121. Once Plaintiff reported her harassment to Clemons and Harris, Ford immediately investigated her allegations, suspended Rowan, and ultimately terminated him. Ford's swift termination of Rowan shows its good-faith efforts. That is so even if, as Plaintiff claims, her supervisors "bungled [her] complaint." *Sackett*, 374 F. Supp. 2d at 630. The focus is "on the overall company" and *its* good-faith efforts to comply with the law, not whether the anti-harassment

---

2004).

6

policy was followed to the letter "with respect to Plaintiff" herself. *Id.*; *see also, e.g.*, *Laughlin*, 2007 WL 131344, at *6.

### III. Plaintiff's sexual-harassment claim fails on the merits.

To prevail on her ELCRA claim, Plaintiff must prove, among other things, that higher management at Ford has notice of the harassment and failedthat Ford is vicariously liable. *Chambers v. Trettco, Inc.*, 463 Mich. 297, 311 (2000). An employer's liability hinges on whether the employer had notice of the harassment and whether it took appropriate remedial action. *Radtke v. Everett*, 442 Mich. 368, 396 (1993). The evidence does not support Plaintiff's claim Ford had actual or constructive notice of Rowan's conduct before November 2018.

To establish actual notice under the ELCRA, Plaintiff must have notified "someone … who possesses the ability to exercise significant influence in the decision-making process of hiring, firing, and disciplining the offensive employee." *Carr v. Detroit Bd. of Educ.*, 2017 WL 603565, at *2 (Mich. Ct. App. Feb. 14, 2017) (quoting *Sheridan v. Forest Hills Pub. Sch.*, 247 Mich. App. 611, 622 (Mich. Ct. App. 2001)). In other words, Plaintiff needed to report to "higher management." *Harris v. Heritage Home Health Care*, 939 F. Supp. 2d 793, 801 (E.D. Mich. 2013). An "immediate supervisor, even one who might handle issues arising during the performance of their jobs, is insufficient to trigger the employer's liability." *Byers v. Honeytree II Ltd P'ship*, 2010 WL 481011, at *3 (Mich. Ct. App. Feb 11, 2010).

Plaintiff alleges she reported Rowan's alleged harassment to Mahoney in the summer of 2018. Day 4 Tr. 196–97. But Mahoney was not "higher management" with the requisite "actual authority to effectuate change in the workplace." *Sheridan*, 247 Mich. App. at 623. Instead, he was a senior process coach whose primary duty was to perform a process coach's job, if a process coach was absent, or to provide direction on quality matters and safety requirements. *Supra* at 4–5. Nor is it relevant that Ford's antiharassment policy allowed Johnson to report to Mahoney. *See Schmitt v. City of E. Lansing*, 2012 WL 6913785, at *4 (Mich. Ct. App. Nov. 20, 2012). The Michigan Court of Appeals rejected a similar argument in *Byers*. 2010 WL 481011, at *3 (plaintiff cannot notify higher management by "proxy").

Plaintiff also asserts that she told Markavich about Rowan's alleged behavior. Tr. 195. But although she claimed she told Mahoney about Rowan allegedly sending her a picture of her penis, and that Mahoney then spoke with Markavich, Day 4 Tr. 210, she admitted that she "can't say Rich told him" about the picture and that when she yelled at Markavich as he walked away from her it was "pretty loud" and "he can't hear," Day 5 Tr. 96. This is not evidence Markavich was on notice of *sexual harassment* rather than generalized problems between Plaintiff and Rowan. *Chambers v. Trettco, Inc.*, 244 Mich. App. 614, 619 (2001).

Plaintiff also lacks sufficient evidence of constructive notice of the alleged harassment. Where the harasser's alleged conduct was "not so apparent" that higher

8

management would have known it was occurring, the conduct cannot establish constructive notice. *See id.* at 135. For example, a harasser's attempt to have "phone sex" with an unwilling plaintiff while she is at work is insufficient. *See Diepenhorst v. City of Battle Creek*, 2007 WL 1141492, at *11–12 (W.D. Mich. Apr. 17, 2007).

Here, most evidence of alleged harassment takes the form of private text messages and displays of inappropriate videos on a phone—things nobody but Rowan and Plaintiff would have seen. *E.g.*, Day 4 Tr. 206. As for the remaining alleged harassment, Plaintiff herself conceded that the production line was so noisy that other employees often "could not hear [Rowan]" and that the plant was "very loud," making it difficult to hear other employees' conversations. Day 4 Tr. 181; *see also* Day 4 Tr. 181; Day 2 Tr. 120–21; Day 2 Tr. 180. There is no evidence that Plaintiff herself was sexually harassed in the presence of higher management, as required for constructive notice. *See EEOC v. Harbert-Yeargin*, 266 F.3d 498, 518 (6th Cir. 2001); Day 4 Tr. 201–02 (alleged "Show me those titties" joke did not involve Markavich or Mahoney). Plaintiff's own testimony is that the only lewd comments Mahoney and Markavich overheard were directed at hourly employees, *not* Plaintiff. Day 4 Tr. 182–83.

### IV. Plaintiff's racial-harassment claim fails for similar reasons.

To succeed under Section 1981, Plaintiff must demonstrate that Ford knew or should have known about the harassment and failed to act. *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). An employer has "constructive notice only if

9

the harassment is 'so pervasive and open that a reasonable employer would have had to be aware of it.'" *Huston v. Procter & Gamble*, 568 F.3d 100, 105 n.4 (3d Cir. 2009).

Even more so than for Plaintiff's claim of sexual harassment, Plaintiff lacks sufficient evidence for the jury to find Ford had notice of alleged *racial* harassment before November 25, 2018. There is no evidence that Plaintiff complained to Mahoney or Markavich about the *racial* component of Rowan's conduct.

Ford also lacked *constructive* notice of racial harassment. Rowan's comments about race—meaning his references to "Black Mounds" and "chocolate"—were made in private text messages or in conversations between him and Plaintiff on the noisy production line and therefore could not have put Ford on notice of racial harassment. *E.g.*, Day 4 Tr. 195, 204; *supra* at 9.

## Conclusion

The Court should grant Ford judgment as a matter of law.

|  |  |
|---|---|
|  | */s/ Elizabeth Hardy* |
| Blaine H. Evanson | Elizabeth Hardy (P37426) |
| GIBSON, DUNN & CRUTCHER LLP | Thomas J. Davis (P78626) |
| 3161 Michelson Drive, Suite 1200 | KIENBAUM HARDY VIVIANO PELTON & FORREST, P.L.C. |
| Irvine, CA 92612 | 280 N. Old Woodward Ave., Suite 400 |
| (949) 451-3800 | Birmingham, MI 48009 |
| bevanson@gibsondunn.com | (248) 645-0000 |
|  | ehardy@khvpf.com |
|  | tdavis@khvpf.com |

***Attorneys for Defendant***

Dated: September 22, 2023

10

## Certificate of Service

I hereby certify that on September 22, 2023, I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

>	*/s/Elizabeth Hardy*
>	Elizabeth Hardy (P37426)
>	Kienbaum Hardy Viviano
>	 Pelton & Forrest, P.L.C.
>	280 N. Old Woodward Avenue, Suite 400
>	Birmingham, MI  48009
>	(248) 645-0000
>	Email:  ehardy@khvpf.com