UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————————

DEANNA JOHNSON

       Plaintiff,

vs.

FORD MOTOR COMPANY,
*a Delaware corporation;*

       Defendant.

Case No. 2:19-cv-10167
Hon. Gershwin A. Drain
Mag. Judge Elizabeth A. Stafford

_____/

| | |
|---|---|
| Carol A. Laughbaum (P41711) | Elizabeth P. Hardy (P37426) |
| STERLING ATTORNEYS AT LAW, P.C. | Thomas J. Davis (P78626) |
| Attorney for Plaintiff | KIENBAUM, HARDY, VIVIANO, |
| 33 Bloomfield Hills Pkwy., Ste. 250 | PELTON & |
| Bloomfield Hills, Michigan 48304 | FORREST, P.L.C. |
| (248) 644-1500 | Attorneys for Defendant |
| claughbaum@sterlingattorneys.com | 280 N. Old Woodward Ave., Ste.400 |
| | Birmingham, MI 48009 |
| | (248) 645-0000 |
| | ehardy@khvpf.com |
| | tdavis@khvpf.com |

_____/

## PLAINTIFF'S MOTION FOR A NEW TRIAL

Plaintiff, DeAnna Johnson, by her attorneys Sterling Attorneys at Law P.C., respectfully moves this Court for a new trial pursuant to Fed R Civ P 59 and states:

1.    A new trial is warranted when a jury has reached a "seriously erroneous result" as evidenced by a verdict that is against the great weight of the

evidence. *Waldo v Consumers Energy*, 2010 WL 2302305 at *2 (WD MI 2010) (aff'd at 726 F3d 802 (6th Cir 2013).

2.     Unlike motions for a judgment as a matter of law, in ruling on a motion for a new trial, the trial court must weigh the evidence and <u>compare the opposing proofs</u>. *Waldo*, 2010 WL 2302305 at *3, citing *McCombs v Meijer, Inc*, 395 F3d 346, 352 (6th Cir 2005) (additional cites omitted, emphasis added).

3.     Whether to grant a motion for a new trial is within the broad discretion of the trial court. *Waldo*, 2010 WL 2302305 at *3, citing *Bell v Johnson*, 404 F3d 997, 1002-03 (6th Cir 2005). And, the authority of a trial judge to grant a new trial pursuant to Rule 59 "is large" *id.,* quoting *Gasperini v Ctr for the Humanities, Inc*, 518 US 415, 433 (1996), and will not be set aside on appeal absent an abuse of discretion. *Toth v The Yoder Company*, 749 F2d at 1190, 1197 (6th Cir 1984). Under Rule 59, a trial judge has a duty to intervene to prevent injustice. *See Holloway v Wal-Mart Stores,* 909 F Supp 534, 536 (ED Tenn 1995) quoting *Davis v Jellico Comm Hosp, Inc*, 912 F2d 129, 133 (6th Cir 1990).

4.     In *Waldo, supra*, a case with compelling similarities to this case, Judge Neff granted the plaintiff's Rule 59 motion, agreeing that the jury's verdict in favor of the defendant on plaintiff's hostile work environment claim could "not stand in the face of the evidence presented" *id* at *3. Judge Neff's order granting the plaintiff a new trial – as well as the jury's verdict in Ms. Waldo's

favor upon retrial – was affirmed by the Sixth Circuit in all respects. *Waldo v Consumers Power,* 726 F3d 802 (6th Cir 2013).

5.      Here, the Court confirmed on the record that Plaintiff Johnson had provided "a ton of evidence" in support of her sexual harassment hostile work environment claims (TR Vol VI, ECF No. 204, PageID 5283).

6.      And, as previously determined by the Sixth Circuit, Plaintiff's sexual harassment and racial harassment claims are very much "intertwined." *Johnson v Ford*, 14 F4th 493, 507 (6th Cir 2021).

7.      Given the overwhelming evidence presented at trial in support of Plaintiff's claims, the Rule 59 standard, and the case law including *Waldo,* Plaintiff respectfully requests that this Honorable Court issue an Order granting her motion for a new trial.

8.      Concurrence in the relief sought  was denied.

                              Respectfully submitted,

                              STERLING ATTORNEYS AT LAW, P.C.

                              By:/s/Carol A. Laughbaum
                                    Carol A. Laughbaum (P41711)
                                    Attorneys for Plaintiff
                                    33 Bloomfield Hills Pkwy., Ste. 250
                                    Bloomfield Hills, MI 48304
                                    (248) 644-1500
Dated: October 24, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISVISION

———————

DEANNA JOHNSON

       Plaintiff,

vs.

FORD MOTOR COMPANY,
*a Delaware corporation;*

       Defendant.

Case No. 2:19-cv-10167
Hon. Gershwin A. Drain
Mag. Judge Elizabeth A. Stafford

_____/

Carol A. Laughbaum (P41711)
STERLING ATTORNEYS AT LAW, P.C.
Attorney for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, Michigan 48304
(248) 644-1500
claughbaum@sterlingattorneys.com

Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
KIENBAUM, HARDY, VIVIANO,
PELTON &
 FORREST, P.L.C.
Attorneys for Defendant
280 N. Old Woodward Ave., Ste.400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

_____/

**BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR A NEW TRIAL**

## QUESTION PRESENTED

I.       Whether Plaintiff's motion for a new trial should be granted?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed R Civ P 59

*Johnson v Ford* Trial Record (ECF Nos. 198-205)

*Waldo v Consumers Energy*, 2010 WL 2302305 (WD MI 2010), aff'd at 726 F3d 802 (6th Cir 2013)

# TABLE OF CONTENTS

INDEX OF AUTHORITIES .......................................................................... iv

I.    INTRODUCTION ............................................................................... 1

II.   LAW ................................................................................................... 1

      A.    Standard for a New Trial ............................................................ 1
      B.    *Waldo v Consumers Energy* ..................................................... 3

III.  The Clear Weight of the Evidence at Trial Proved that Plaintiff Was
      Subjected to Severe and Pervasive Sexual and Racial Harassment,
      and that Ford had Notice but Failed to Act for Months ......................... 5

      A.    Background ................................................................................. 5
      B.    Backdrop: Ford Agents Confirm Plaintiff's Honesty ................... 6
      C.    Chain of Command ..................................................................... 7
      D.    Rowan's Sexual Comments Regarding Female Line
            Workers and Defendant's Notice ................................................ 8
      E.    Rowan's Ongoing Harassment of Plaintiff and Defendant's
            Notice ....................................................................................... 10
      F.    Mahoney's and Markavich's Hostile Statements to Plaintiff
            Reveal Notice ............................................................................ 12
      G.    For Months, Mahoney and Markavich Promise Plaintiff
            They Are Working on Getting her Moved Away from
            Rowan, Revealing Notice ........................................................... 15
      H.    Early-Mid November Events, Rowan Assaults Plaintiff, and
            Additional Evidence of Notice ................................................... 16
      I.     November 26, 2018 .................................................................... 18

IV.   RELIEF REQUESTED ....................................................................... 18

# INDEX OF AUTHORITIES

## Case Law

*Bell v Johnson*, 404 F3d 997 (6th Cir 2005)......................................................... 2

*Davis v Jellico Comm Hosp, Inc*, 912 F2d 129 (6th Cir 1990)............................... 2

*Felton v Spero,* 78 F 576 (6th Cir 1897) .............................................................. 1

*Gasperini v Ctr for the Humanities, Inc.*, 518 US 415 (1996) ............................... 2

*Holloway v Wal-Mart Stores,* 909 F Supp 534 (ED Tenn 1995) .......................... 2

*Holmes v City of Massillon, OH,* 78 F3d 1041 (6th Cir 1996)............................... 2

*McCombs v Meijer, Inc,* 395 F3d 346 (6th Cir 2005) ............................................ 2

*MSC Software Corp v Altair Eng, Inc,* 2014 WL 6485492, at *3
  (ED Mich, November 13, 2014)...................................................................... 1

*Toth v The Yoder Company*, 749 F2d at 1190 (6th Cir 1984) ............................... 2

*Waldo v Consumers Energy*, 2010 WL 2302305 at *2 (WD MI 2010),
  aff'd at 726 F3d 802 (6th Cir 2013)........................................................... 2-4

## Statutes, Court Rules, Misc.

Fed R Civ P 59(a)(1) ......................................................................................... 1

## I.    INTRODUCTION

This hostile work environment case was tried to a jury over eight days, beginning September 14, 2023. The Court acknowledged on the record that Plaintiff had presented "a ton of evidence" supporting her claims (TR Vol VI, ECF No. 204, PageID 5283). On September 25, 2023, the jury returned a stunning verdict in favor of Defendant Ford Motor Company. For the reasons set forth below, the Court should grant Plaintiff's motion for a new trial.

## II.    LAW

### A.    Standard for a New Trial

In a very early Sixth Circuit case, the Court explained the importance of the remedy of a new trial:

> [T]he motion for new trial is a remedy accorded to a party litigant for the correction by the trial court of injustice done by the verdict of a jury. It is one of the most important rights which a party to a jury has. It is a right to invoke the discretion of the court to decide whether the injustice of the verdict is such that he ought to have an opportunity to take the case before another jury....

*Felton v Spero,* 78 F 576, 581 (6th Cir 1897), cited in *MSC Software Corp v Altair Eng, Inc*, 2014 WL 6485492, at *3 (ED Mich, November 13, 2014).

Pursuant to Fed R Civ P 59(a)(1), "The court may on motion grant a new trial on all or some of the issues and to any party… after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Generally, "a new trial is warranted when a jury has reached a

1

'seriously erroneous result' as evidenced by: 1) the verdict being against the great weight of the evidence; 2) the damages being excessive; or 3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Waldo v Consumers Energy*, 2010 WL 2302305 at *2 (WD MI 2010), aff'd at 726 F3d 802 (6th Cir 2013), citing *Holmes v City of Massillon, OH*, 78 F3d 1041, 1045-46 (6th Cir 1996)(citations omitted).

Unlike motions for a judgment as a matter of law, in ruling on a motion for a new trial, <u>the trial court must weigh the evidence and compare the opposing proofs</u>. *Waldo*, 2010 WL 2302305 at *3, citing *McCombs v Meijer, Inc*, 395 F3d 346, 352 (6th Cir 2005) (additional cites omitted). Whether to grant a motion for a new trial is within the broad discretion of the trial court. *Waldo*, 2010 WL 2302305 at *3, citing *Bell v Johnson*, 404 F3d 997, 1002-03 (6th Cir 2005). "The Supreme Court has noted that 'the authority of trial judges to grant new trials pursuant to Rule 59(a) 'is large.'" *Id* (quoting *Gasperini v Ctr for the Humanities, Inc.*, 518 US 415, 433 (1996). And, the grant of a new trial will not be set aside on appeal absent an abuse of discretion. *Toth v The Yoder Company*, 749 F2d at 1190, 1197 (6th Cir 1984). Under Rule 59, a trial judge has a duty to intervene to prevent injustice. *See Holloway v Wal-Mart Stores,* 909 F Supp 534, 536 (ED Tenn 1995) quoting *Davis v Jellico Comm Hosp, Inc*, 912 F2d 129, 133 (6th Cir 1990).

**B.**    *Waldo v Consumers Energy*

*Waldo v Consumers Energy*, 2010 WL 2302305 at *2 (WD MI 2010), aff'd

at 726 F3d 802 (6th Cir 2013), **Ex A**, provides compelling authority for granting

Plaintiff's Rule 59 motion. In that hostile work environment case, Judge Neff

agreed that the jury's verdict in favor of the defendant-employer was against the

great weight of the evidence, and ordered a new trial. Likewise, this Court has

determined that Plaintiff provided "a ton of evidence" in support of her claims,

*supra.* Plaintiff submits that Ford's zealous villainization of Plaintiff Johnson

likely caused the jury to lose sight of the overwhelming weight of the evidence

in her favor, resulting, as in *Waldo*, in a seriously erroneous verdict that was

clearly against the great weight of the evidence.

As in *Waldo*, Plaintiff's burden was to prove five (5) elements with respect

to her sexual harassment claim, and five (5) similar elements with respect to her

racial harassment claim by a preponderance of the evidence (Jury Instructions,

ECF No. 194, at PageID 4071, sexual harassment burden of proof instruction;

PageID 4082, racial harassment burden of proof instruction.

Like the plaintiff in *Waldo*, and as recapped below, Plaintiff  Johnson

presented lengthy and direct testimony replete with allegations of the hostile

work environment she endured in her male-dominated field. In *Waldo*,  the

plaintiff's proofs showed that she was subjected to sexually offensive and

3

demeaning language, exposed to sexual material and pornography, and ostracized and subjected to other demeaning and humiliating treatment. Unlike here, Ms. Waldo's claims did not include being constantly propositioned for sex or naked pictures, or racial harassment. And, while the defendant in that case claimed that the plaintiff's testimony was contradictory and not credible, the court agreed that the great weight of the evidence favored her. The court also rejected the employer's "notice" and "prompt remedial action" arguments, agreeing that plaintiff's many complaints warranted a response "well beyond that provided" and that viewing the "totality of the circumstances" as required, the jury committed serious error requiring a retrial, *Waldo*, 2010 WL 2302305 at *2-7.

In this case, Ms. Johnson presented overwhelming proofs that Nick Rowan subjected her to egregious sexual and racial harassment, see e.g., Rowan, ECF No. 199, PageID 4515-4562(text – erect penis photo; text – groin in bikini underwear photo; text – bare chested photo; text – lips puckered photo; various texts -- "going down"/oral sex; leaving my "marker erect"; "mmm" response to Plaintiff's restroom break; laments about "empty in-box from Dee Dee"; "I expect to be handsomely rewarded"; c-u-m misspellings; "c'mon sugar britches"; "I knew I shouldn't have sent you that picture"; "Got something for me?"; "waiting for my flash pic"; "yep, can't get it up"; "mmm … on the body";

"this [Scarlett Johannsen post] will get me in trouble again"; "somebody has to take pictures of you"; "not exactly the black mounds I wanted to feast my eyes upon"; nude pictures "would be worth the wait"; "after a while the thrill of the wait wears off"; "obviously I am patient with other things"; asking what Plaintiff is wearing when she is home in bed; "are you inviting [in?]"; "not exactly the picture I was hoping for"; "we are both getting off tomorrow," etc.). And these are just the text messages Rowan sent to Plaintiff, which are a fraction of the harassment evidence presented. Mr. Rowan did not recall whether or not Senior Process Coach Rich Mahoney, to whom he reported, ever spoke to him about his sexually inappropriate language toward Plaintiff – but stopped short of denying it (Rowan, ECF No. 199, PageID 4511).

## III.   The Clear Weight of the Evidence at Trial Proved that Plaintiff Was Subjected to Severe and Pervasive Sexual and Racial Harassment, and that Ford had Notice but Failed to Act for Months.

Given the page limitations, Plaintiff cannot re-cap all her trial proofs in this brief.  Plaintiff presents highlights of the trial record, with a focus on Ford's notice of the harassment prior to Plaintiff's reports to Clemons and HR/Harris in late November 2018.

### A.   Background

At Dearborn Truck, DeAnna Johnson was the only African American woman, and the only woman, on her team. Team Manager Billy Markavich

assigned Johnson, a brand-new Supervisor/Process Coach who was also new to Ford, to train under and shadow Supervisor Nick Rowan to learn the job and the myriad of tasks/paperwork required by the position. Rowan was a long time, experienced, and valued Supervisor at the plant who kept the line running, a top priority. Johnson was placed on Rowan's frame/engine line, the hardest line to supervise. Dearborn Truck is a very fast-paced, often chaotic and stress filled work environment with the company expecting an F-150 to be churned out roughly every 50 seconds, and when a line stoppage costs Ford roughly $14,000 a minute (Johnson, ECF No. 201, PageID 4902-4903; Clemons, ECF No. 199, PageID 4313-4316, 4354; Rowan, ECF No. 199, PageID 4457-4470; Mahoney ECF No. 200, PageID 4590-4592, 4708; Markavich, ECF No. 201, PageID 4738-4739).

### B.   Backdrop: Ford Agent Confirm Plaintiff's Honesty

At trial, Ford witnesses corroborated Ms. Johnson's honesty (Clemons, ECF No. 199, PageID 4379-4380)(Clemons believed from Johnson's body language and mannerisms that she was telling the truth, and was genuine as she relayed the harassment allegations); (Mahoney, ECF No. 200, PageID 4605-4606, 4679) (Mahoney never knew Johnson to be dishonest, never took the position she was dishonest, has no reason to believe she is lying about Rowan's

behavior, and has no problem with her to this day; (Markavich, ECF No. 201, PageID 4746)(confirming he has never known DeAnna to be dishonest).

### C. Chain of Command

Despite Ford's counsel telling the jury there was no chain-of-command, former Ford Crew Operations Manager LaDawn Clemons (and others) confirmed that Johnson's chain-of-command, including with respect to reporting workplace harassment, was, in order: 1) Sr Process Coach Rich Mahoney; 2) Team Manager Billy Markavich; and 3) Clemons (Clemons, ECF No. 199, PageID 4329-4330). All three of them had a duty under Ford policy (Directive B-110) to take any sexual or racial harassment complaints they were made of aware of to Human Resources. *Id,* 4332-4337.

Plaintiff Johnson always adhered to this chain-of-command, whether bringing forward issues of racial harassment in the paint department in the very early days of her employment, or complaining about Nick Rowan's ongoing sexual and racial harassment, July 2018 – November 2018 (Johnson, ECF No. 201, PageID 4904; Johnson, ECF No. 204, PageID 5185-5187; Johnson ECF No. 204, PageID 5188-5189).

Significantly, with respect to Plaintiff's federal (Sec. 1981) race discrimination claims, Plaintiff's race harassment reports to *any of these individuals* constituted underline actual notice to Ford (Jury Instruction – Racial

7

Harassment – Notice, ECF No. 194, PageID 4087 item (b); see also Jury Instruction – Sexual Harassment – Notice, ECF No. 194 PageID 4075 ("under the totality of the circumstances the employer knew, or a reasonable employer should have known of a substantial probability that Plaintiff was being sexually harassed").[1]

### D.    Rowan's Sexual Comments Regarding Female Line Workers and Defendant's Notice

Johnson testified to numerous lewd comments Rowan made in front of her to the hourly women on the frame-engine line they supervised,  beginning her very first week working with him (Rowan loudly warning the women about bending over in front of him, as they might become pregnant by him; suggesting he had engaged in sexual activity with them the night before, and more) (Johnson, ECF No. 201, PageID 4906-4911; Johnson, ECF No. 203, PageID 5054). Both Mahoney and Markavich were present when Rowan made these types of comments, *id*. Within approximately her first two weeks working with Rowan, Johnson discussed Rowan's nasty comments with Mahoney and Markavich, asking if Rowan had ever been written up, *id*. Markavich typically responded to Rowan's sexual comments with an "Oh God," or "Oh, this

---

[1] Ford's anti-harassment policies were reviewed in detail at trial, including the prohibition of using one's position to coerce sexual favors through threats or rewards (Clemons, ECF No. 199, PageID 4332-4335).

guy...always this guy," *id* at 4909, and responded to Plaintiff's concerns by saying Nick was "eccentric," "just being Nick," and that Johnson would get used to it, *id*. Mahoney (who "heard everything") echoed Markavich's dismissiveness ("That's Nick"; "he does that"), asked Johnson if she was okay with it (she said "no") and asked her if she wanted him to "take [Rowan] outside" *id* at 4910-4911.

Over time, Plaintiff began complaining to Mahoney daily about Rowan's antics, telling Mahoney she did not want to work with Rowan any more, with both Mahoney and Markavich constantly assuring her not to worry, as they would take care of her Rowan problem (Johnson, No. ECF 201, PageID 4910, 4912).

Mr. Rowan admits he "may have" engaged in sexual banter with women on the line, and did not deny comments including "that's what you said last night"; "that's what you said when I had your breasts in my hands"; and "that's what you said when I was motor-boating you" (Rowan, ECF No. 200, PageID 4509-4510). And, he acknowledged that Mahoney may have laughed at those types of comments and said "this guy," referring to Rowan, *id* at 4511. Rowan could not recall if Mahoney ever talked to him about needing to change his behavior around Johnson (Rowan, ECF No. 200, PageID 4575). Mahoney does

not deny telling Plaintiff, in speaking to her about Rowan, "that's just Nick" (Mahoney, ECF No. 200, PageID 4607).

**E.    Rowan's Ongoing Harassment of Plaintiff and Defendant's Notice**

As detailed at trial, Rowan's actions escalated to include constant, multiple-times-a-day demands for pictures of Plaintiff's breasts in exchange for training her (July 2018 – November 2018); constant demands for pictures of her vagina with lewd commentary about if and how she groomed that area; repeatedly (8-10 times) shoving his cell phone – on which he displayed a pornographic photo or video of himself having sex with non-Black female subordinates – in Plaintiff's face; advising Plaintiff he needed her in his "collection"(approximately August) which evolved into Rowan disclosing he did not yet have any brown or black breasts or mounds, no black or brown women in his collection, so he needed her; calling her spicy chocolate; calling her a chocolate jolly rancher he wanted to lick on; daily simulating having an erection using a magnetic rod and making a metal-on-metal smacking noise, with accompanying nasty commentary; falsely accusing Plaintiff and spreading rumors that Plaintiff had nipple rings; starting a "show me those titties" mantra which became a humiliating, running joke about Johnson throughout the plant, along with her "nipples" nickname from Rowan; referring to her "black mounds"; lewdly gesturing to Plaintiff as she struggled to input a code into the

10

module on the end of the line to get the line back up and running (demonstrated by Plaintiff trial) that no pictures of her breasts = no help from him; refusing to train her because he was not getting the *quid pro quo* he constantly demanded; texting her naked penis and bikini underwear pictures, and more (Johnson, ECF No. 201, PageID 4913-4921, 4925-4928, 4930-4933, Johnson, ECF No. 203, PageID 5046-5052, 5112-5114).

In the midst of all this, Markavich told Johnson that Rowan reported that she wasn't cutting it, and was messing up payroll, *Id* at 4921 ("[I told Markavich] Nick won't teach me payroll. I'm not getting it because he won't teach me....He's too busy trying to...ask me for pictures of my breasts").[2]

Johnson showed Mahoney every nasty text and picture Rowan sent her and reported virtually every harassing incident to him, sexual and racial; and Mahoney told her he passed along all of it to Markavich (Johnson, ECF No. 201, PageID 4934; Johnson, ECF No. 203, PageID 5052-5054) ("Billy knows everything, and we're working, we're going to get you away from him"). Johnson also repeatedly told Mahoney that he needed to take Rowan and his phone to HR (Johnson, ECF No. 203, PageID 5052).

---

[2] Mahoney and Markavich advised Johnson, early on and repeatedly, that supervisors could make mistakes without getting into much trouble, with the exception of payroll mistakes, which could get a supervisor fired (Johnson, ECF No. 203; PageID 5118-5120). And, Plaintiff never was fully trained with respect to payroll, and other tasks, *id.*

Johnson also testified that Mahoney appeared <u>particularly upset about the</u> <u>"Black collection" comment</u>, stating he wanted to "take [Nick] outside" and was going to "tell Billy" (Johnson, ECF No. 203, PageID 5049-5050). Johnson then watched Mahoney walk over to Markavich, where the two talked. Markavich then walked over to Johnson and asked her, on a scale of 1 to 10, how bad things were between her and Rowan; she replied "100," *id*. Markavich responded, "Oh, God" while grabbing his head, and began to walk away as Johnson yelled after him, "Billy you got to hear this… He's sending me pictures of his wiener." *Id*.[3]

Markavich testified that he did not recall that exchange, then said it did not happen, and then asked to hear the question again (Markavich, ECF No. 201, PageID 4743-4745).

## F.    Mahoney's and Markavich's Hostile Statements to Plaintiff Reveal Notice

Johnson testified to numerous, very specific comments made by her bosses which confirm they knew she was being harassed by Rowan.

Johnson testified that in September, as she showed Mahoney one of the penis pictures Rowan had texted her, Mahoney said, ***You've got to warn me before showing me a weenie [picture]*** with Mahoney then threatening to take Rowan

---

[3] In assessing the weight of the evidence, Plaintiff's very specific testimony contrast sharply with the "I don't remember" answers and canned denials by Ford agents.

outside (Johnson, ECF No. 201, PageID 4935-4936; Johnson, ECF No. 203, PageID 5058-5059). At trial, Mahoney did not even deny that comment initially (Mahoney, ECF No. 200, PageID 4631)(I don't remember that).

And when Mahoney eventually met with Harris/HR (Mahoney testified he had 2-3 such meetings with Harris), instead of denying knowledge of the penis picture, Mahoney confirmed in his signed statement (which he testified under oath was accurate) – that he simply did not remember whether or not Plaintiff showed him a penis picture sent to her by Rowan(!) (Mahoney, ECF No. 200, PageID 4612).

Even more evidence of notice exists. On September 17, just four days after the penis picture, Mahoney emailed Johnson, ***think about what you want to do and let me know. I will support whatever you feel you need to do*** (Mahoney, ECF No. 200, PageID 4658) Mahoney had no explanation for this text, *id*.

Mahoney told Johnson, ***Just do us all a favor, just f—k him and get it over with*** (Johnson, ECF No. 203, PageID 5063).

Mahoney warned Johnson, ***You've only been here a hot f---ing minute. I have a wife, grandkids … and you're running around here and you're saying shit. I'm trying to cover you the best way I can and you're f---ing it all up. You got to get in f---ing line*** (Johnson ECF No. 203, PageID 5066). Mahoney testified he didn't

remember making that comment (but did not deny it, although specifically asked)(Mahoney, ECF No. 200, PageID 4632).

Markavich subsequently echoed Mahoney's "get in line" warning, telling Johnson, ***I don't give a f--- about you…. You'd better get in line … like Rich told you. No one has time for this shit Dee Dee"*** (Johnson, ECF No. 203, PageID 5060).[4]

Mahoney acknowledged to Johnson that Rowan was not showing her the job, telling Johnson, ***You know he's f---ing you right no****w*" (Johnson, ECF No. 2034, PageID 5164). Mahoney did not remember saying this (Mahoney, ECF No. 200, PageID 4633).

On or near October 7,2018, Markavich texted Johnson, ***Don't worry about anything. He was wrong. Just write down what happened and we will handle it tomorrow kid"*** (Markavich, ECF No. 201, PageID 4762 -4763). Johnson testified that this text refers to Rowan's harassment (Johnson, ECF No. 203, PageID 5116-5118). Markavich' explanation for why his text could not have referred to

---

[4] Johnson gave very specific and graphic testimony as to Markavich's cursing tirades, including Markavich hurling the F-bomb at her, with his face just inches from hers (Johnson ECF No. 203, Page ID 5060, 5067). Yet Markavich claimed he "absolutely never yelled" at Johnson, and only one time regrettably used a "bad filler word" – the F-bomb (Markavich, ECF No. 201, PageID 4747). Markavich also testified that DeAnna's performance was good, even great (Markavich, ECF No. 201, PageID 4749, 4751-4752) which does not explain his hostility toward her (aside from her complaints about Rowan).

14

Rowan was "because I would be saying that I had knowledge of what was going on" (Markavich, ECF No. 201, PageID 4763).

### G.   For Months, Mahoney and Markavich Promise Plaintiff They are Working on Moving her Away from Rowan, Revealing Notice

Johnson's  constant demands to move away from Rowan, and her bosses' repeated insistence that they were "working on it" is also weighty evidence as to notice. She asked Mahoney and/or Markavich at least daily to be moved away from Rowan (Johnson, ECF No. 201, PageID 4921-4923; Johnson, ECF No. 203, PageID 5056-5057, 5109-5110)("we're working on it kiddo; we're going to get you away from him, kiddo"; "we're talking to the people upstairs about moving you"; "don't cry, I hate to see you cry"). After Ms. Johnson passed out at the plant and was taken by EMS to Beaumont with stroke-level high blood pressure (September) she was again assured by Mahoney that he would get her away from Rowan (Johnson, ECF No. 2-3, PageID 5062-5063).[5] She testified that both Markavich and Mahoney vacillated between acting "pissed" at her for her relentless requests to be moved, *id* at 5060, 5064, and appearing supportive and promising to move her. (Johnson, ECF No. 203, PageID 5063, 5067, 5115).

---

[5] Johnson also testified that when she returned to work after her emergency hospitalization, she encountered laughing and snickering at work as  Rowan had apparently put the word out that she had fainted upon seeing a picture of his penis (Johnson, ECF No. 203, PageID 5064-5065).

15

**H.     Early-Mid November Events, Rowan Assaults Plaintiff, and Additional Evidence of Notice**

On November 3, 2018 Ms. Johnson met with LaDawn Clemons in Clemon's office, and through tears, vented about the testosterone on the floor and Nick Rowan's inappropriateness, which Mahoney and Markavich were ignoring, and asked Clemons if Rowan had ever been written up. Clemons told her Rowan had not been written up, but should have been, and that Rowan knew better than to bring his "mess" around her.[6] Clemons gave Johnson a bracelet inscribed with "Nevertheless She Persisted" (Johnson, ECF No. 203, PageID 5067-5072, 5087).

As Johnson sat in Clemons' office, Markavich and Mahoney began texting about meeting right away in Clemons' office, and a few minutes later burst into their meeting, barely knocking, and appearing agitated. Clemons excused Johnson, and met with Mahoney and Markavich behind closed doors, *id*, at 5071.

On November 9, 2018, just days after the Clemons meeting, Mahoney *et al* temporarily moved Johnson to Chassis 4, which was a half mile or more away from Rowan's frame-engine line. Mahoney could not say whether or not the

---

[6] Clemons was aware of Rowan's 6-7 girlfriends, but refused to admit that he pursued sexual relationships in the workplace, as "the young ladies may have initiated" (Clemons ECF No. 199, PageID 4448-4449). Nor did she ever question Rowan about those relationships, *id.*

move was to get Johnson away from Rowan (Mahoney, ECF No. 200, PageID 4634; Markavich, ECF No. 201, PageID 4740).

Ms. Johnson's reprieve from Rowan was short-lived. A few days later, and despite Johnson's protests, Mahoney *et al* moved Johnson *back* to Rowan's frame/engine line, and under false pretenses (the "absent" supervisor she was allegedly filling in for was actually on the job) (Johnson, ECF No. 203, PageID 5074); Johnson, ECF No. 204, Page ID 5231).[7]

Once back in that area, Rowan "picked right up where he left off at" (Johnson, ECF No. 203, PageID 5075-5076)("[It was] awful. Everything resumed. The black this and black that and pictures of your vagina and pictures of your breasts…"). And, Rowan's actions included violently grabbing and tugging at Plaintiff's breasts, which left her distraught, crying, bruised, and in pain (Johnson, ECF No. 102, PageID 4924, 4930; Johnson ECF No. 103, PageID 5076-5081). Johnson reported the incident to Mahoney, who told her he was telling Markavich and was going to HR/Harris; and Supervisor Sean Closurdo quipped, "[Nick] finally got you to show him those titties" (Johnson, ECF No. 203, Page ID 5080-5081).

---

[7] Ms. Johnson was "bounced around a few times between the frame/engine line and Chassis 4" (Rowan, ECF No. 199, Page ID 4472, 4475-4477).

## I.      November 26, 2018

On November 26, 2018, immediately after Johnson exited Harris' HR office, Johnson immediately told Clemons that she had more to tell Harris, as there were "more people involved" (Clemons, ECF No. 199, PageID 4384-4385, 4387, 4389). Thus, while Ford's counsel attempted to concoct a narrative at trial of Johnson "changing her story," the truth is she immediately indicated others were involved, *id*, and by the next morning (November 27), had specifically advised Harris, and confirmed in writing to him, that both Mahoney and Markavich were on notice of Rowan's harassment (Harris, ECF No. 102, PageID 4831-4832; TR EX 46).

And, there is extremely compelling evidence that Harris was already well aware that Mahoney and Markavich knew about Rowan's harassment. As Johnson made her way to HR/Harris' office on November 26, Mahoney – who met with Harris/HR 2-3 times regarding Johnson[8] -- admonished her to "just lie [to HR like] I did" with respect to his and Markavich's knowledge of the harassment (Johnson, ECF No. 203, PageID 5089-5090).

## IV.   RELIEF REQUESTED

As set forth above and in the trial record, and given the overwhelming trial proofs supporting Plaintiff's sexual and racial harassment claims, Plaintiff

---

[8] Mahoney, ECF No. 200, PageID 4608.

respectfully requests an Order granting her motion for a new trial.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:/s/Carol A. Laughbaum
       Carol A. Laughbaum (P41711)
       Attorneys for Plaintiff
       33 Bloomfield Hills Pkwy., Ste. 250
       Bloomfield Hills, MI 48304
       (248) 644-1500

**PROOF OF SERVICE**

I certify that on October 24, 2023, I filed the foregoing paper with the Clerk of the Court using the ECF system, which will electronically send notification to all counsel of record.

/s/Carol A. Laughbaum
Sterling Attorneys at Law, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com

19