# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: April 09, 2025

Mr. Thomas J. Davis
Ms. Elizabeth Phelps Hard
Kienbaum, Hardy, Viviano, Pelton & Forrest
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI 48009

Mr. Blaine Evanson
Gibson, Dunn & Crutcher
3161 Michelson Drive, Suite 1200
Irvine, CA 92612

Ms. Carol Laughbaum
Sterling Employment Law
33 Bloomfield Hills Parkway, Suite 250
Bloomfield Hills, MI 48304

      Re:  Case No. 24-1550, *Johnson v. Ford Motor Company*
           Originating Case No. : 2:19-cv-10167

Dear Counsel,

    The Court issued the enclosed opinion today in this case.

    Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                          Sincerely yours,

                                          s/Laurie A Weitendorf
                                          Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0192n.06

No. 24-1550

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 09, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| DEANNA JOHNSON,<br><br> Plaintiff-Appellant,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br> Defendant-Appellee. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN<br><br>OPINION |

Before: MOORE, CLAY, and STRANCH, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Deanna Johnson brings her second appeal[1] before this Court against her former employer, Defendant Ford Motor Company. Plaintiff alleges that one of Defendant's former employees sexually and racially harassed her during her employment by Defendant, in violation of Mich. Comp. Laws § 37.2101, *et seq.*, 42 U.S.C. § 1981, and state common law. The case subsequently proceeded to trial, where a jury returned a verdict in favor of Defendant. Plaintiff then moved for a new trial, which the district court denied. Plaintiff now appeals the district court's denial of her motion for new trial and also appeals the district court's prior orders (1) denying Plaintiff leave to file an additional claim for retaliatory termination, and (2) dismissing Plaintiff's quid pro quo harassment claim on summary judgment.

For the reasons that follow, we **AFFIRM** the district court's judgment.

---

[1] The first appeal before this Court reversed the district court's prior summary judgment determination. *Johnson v. Ford Motor Co.*, 13 F.4th 493 (6th Cir. 2021) ("*Johnson I*").

No. 24-1550, *Johnson v. Ford Motor Co.*

## I. BACKGROUND

### A. Factual History

Plaintiff is an African American woman who was hired by Defendant in June 2018 as a process coach at Defendant's Dearborn Truck Plant. While working in her position, Plaintiff reported to Senior Process Coach Richard Mahoney, and Mahoney reported to Team Manager William Markavich. In July 2018, Markavich assigned Plaintiff to shadow fellow employee Nick Rowan. During his time at Ford, Rowan was known to have engaged in sexual relationships with some of the female hourly employees.

In August 2018, Rowan started making unwanted and inappropriate advances towards Plaintiff. Rowan made comments and sent text messages to Plaintiff that were both sexual and racial in nature, which included: telling her that he wanted to see her "black mounds;" referring to her as a "chocolate jolly rancher" and as "spicy chocolate;" and indicating that he wanted to add an African American woman to his "collection." Trial exhibits revealed lewd texts from Rowan, including a picture of his penis and a closeup of his bikini underwear. According to Plaintiff, Rowan also demanded pictures of Plaintiff's breasts and vagina, and showed her pornographic videos and images. Plaintiff stated at trial that Rowan would ask for photos of her vagina every time she would go to the restroom.

Plaintiff testified that she first reported Rowan's inappropriate and sexual comments to Mahoney and Markavich within two weeks of first working with Rowan. She also stated that she spoke with Mahoney regarding Rowan's conduct everyday thereafter. However, on cross examination, Plaintiff admitted that there was no written evidence demonstrating that she had complained to Mahoney or Markavich before November 2018, although Plaintiff maintained on cross that she orally complained to both Mahoney and Markavich.

According to Plaintiff, Mahoney was particularly upset about Rowan's racially harassing comments, and informed Markavich about the situation. Plaintiff avers that Markavich then approached Plaintiff and asked how bad things were on a scale of one-to-ten, which Plaintiff replied, "100." Trial Tr., R. 203, Page ID #5049–50. Yet Markavich testified at trial that this interaction never occurred. In fact, Markavich testified that he "had absolutely no idea" that Rowan was harassing Plaintiff. Trial Tr., R. 201, Page ID #4743. Mahoney also testified at trial that he was unaware that Rowan had either sexually or racially harassed Plaintiff.

Plaintiff avers that Rowan sexually assaulted her in November of 2018 by pushing his hand down her shirt and grabbing her breast. Following the assault, on November 25, 2018, Plaintiff met with Crew Operations Manager LaDawn Clemons to discuss Rowan's conduct. Plaintiff told Clemons how Rowan had touched her breast and asked her for naked pictures.

The next day, November 26, 2018, Clemons reported Plaintiff's claims to Les Harris, who worked in Human Resources. Harris then began to investigate, and Plaintiff provided Harris with some of the pictures that Rowan had sent her and told Harris that Rowan had requested nude photos. On November 30, Mahoney and Markavich gave statements to Human Resources in which they denied any knowledge of the harassment, and, on December 10, Clemons gave another statement to Human Resources. Rowan was ultimately terminated after the investigation concluded. Plaintiff was also later terminated from the company on August 22, 2019, after a period of medical leave.

**B. Procedural History**

Plaintiff filed this suit on January 17, 2019, in the U.S. District Court for the Eastern District of Michigan. Plaintiff later moved to amend her complaint, which the district court granted in part and denied in part by allowing her quid pro quo claim of sexual harassment to proceed and

- 3 -

denying the addition of a retaliatory termination claim. Plaintiff then filed her first amended complaint. In that complaint, Plaintiff alleged the following claims against Defendant: (1) sexual harassment/quid pro quo and hostile work environment under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.*; (2) racial harassment/racially hostile work under 42 U.S.C. § 1981; and (3) sexual assault and battery. Defendant subsequently moved for summary judgment, which the district court granted in part. Specifically, the district court granted the motion with respect to the racial harassment claim and declined to exercise supplemental jurisdiction over the state law claims. The district court also struck portions of Plaintiff's declaration.

This Court later reversed the district court's summary judgment order in *Johnson I*. The Court specifically found that the district court abused its discretion in striking Plaintiff's declaration and erred in granting summary judgment on the racial harassment claims. *Johnson*, 13 F.4th at 501–07. Plaintiff subsequently filed a second amended complaint, which included the previously dismissed state law claims. Defendant again moved for summary judgment. On March 8, 2023, the district court granted in part Defendant's motion for summary judgment on the second amended complaint. The court specifically granted the motion with respect to Plaintiff's quid pro quo, sexual assault, and battery claims, but denied the motion with respect to the sexual and racial harassment/hostile work environment claims. The case then proceeded to trial. On September 25, 2023, the jury found in Defendant's favor. Plaintiff later moved for a new trial, which the district court denied. Plaintiff then filed this appeal.

No. 24-1550, *Johnson v. Ford Motor Co.*

## II. DISCUSSION

### A. Standard of Review

This Court reviews a district court's denial of a motion for new trial for abuse of discretion. *Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 599 (6th Cir. 2018). When a motion to amend a complaint is denied on futility grounds, this Court's review is de novo. *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 304–05 (6th Cir. 2011).

With respect to summary judgment, we review "under a de novo standard of review, without deference to the decision of the lower court." *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014) (citation and quotation marks omitted). Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute of a material fact is genuine so long as the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (cleaned up). "When evaluating a motion for summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion." *Id.*

### B. Analysis

**1. New Trial Motion**

 **a.** *Issue Preservation*

Plaintiff has failed to preserve one element of her argument. She argues that a new trial should be granted because the jury came to the wrong conclusion on the harassment claims. One of the ways that the jury came to the wrong conclusion, according to Plaintiff, is by failing to find that Defendant had constructive notice of the harassment. Yet Plaintiff did not make that argument

- 5 -

No. 24-1550, *Johnson v. Ford Motor Co.*

in her initial new trial motion before the district court. Instead, that motion appears to focus on *actual* notice, and makes no explicit reference to constructive notice. Plaintiff argues that her "new trial motion included a lengthy discussion of [Defendant's] notice, and very specifically cited the jury instruction on notice, including the 'should have known' constructive [notice] language." Reply Br., ECF No. 17, 5. Plaintiff is correct that the new trial motion speaks at length on notice, but nowhere does Plaintiff appear to specifically argue constructive notice. Furthermore, Plaintiff's citation to the "should have known" language appears to have no connection to a constructive notice argument. Instead, that quotation is part of a parenthetical citation to a sentence explicitly referring to *actual* notice.

As this Court has repeatedly warned, "omission of an issue in the district court typically will amount to a forfeiture of the issue, meaning we will not consider it on appeal." *Sheet Metal Workers' Health and Welfare Fund of N.C. v. Law Off. of Michael A. DeMayo, LLP*, 21 F.4th 350, 355 (6th Cir. 2021). Accordingly, Plaintiff has not preserved the issue of constructive notice for appeal, and this analysis will be confined to actual notice.

    **b.** *Merits*

The standard for a new trial motion is high. A court may only "set aside a verdict and grant a new trial when it is of the opinion that the verdict is against the clear weight of the evidence." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000). It is for this reason that this Circuit has been wary of granting such motions. *See Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1047 (6th Cir. 1996) ("Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts." (citation omitted)). "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or

conclusions or because judges feel that other results are more reasonable." *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 395 (6th Cir. 2014) (cleaned up). A court cannot grant a new trial motion if the question simply boils down to which witness "the jury believed." *Holmes*, 78 F.3d at 1048. In reviewing a new trial motion, the district court may "act in the role of a 'thirteenth juror' and consider the credibility of the witnesses and the weight of the evidence." *United States v. Callahan*, 801 F.3d 606, 616–17 (6th Cir. 2015) (citation omitted). Yet this is not the role of the court of appeals. Instead, "[w]e simply review the evidence and the district court's ruling, and we reverse only if we have a definite and firm conviction that the district court committed a clear error of judgment." *Id.* at 617 (citation omitted).

### i. Sexual Harassment Claims

According to the jury instructions, the jury was required to find that Plaintiff had met all five of the following elements for her sexual harassment claim:

> (a) that she was subjected to communication or conduct on the basis of gender; and (b) that she was subjected to unwelcome sexual conduct or communication; and (c) that she was subjected to a sexually hostile work environment; and (d) that the employer was legally responsible for the sexually hostile work environment; and (e) that she has suffered damages.

Jury Instructions, R. 194, Page ID #4071. Both Plaintiff's and Defendant's arguments on appeal focus on element (d): Defendant's responsibility for the hostile work environment. To show this element, the district court instructed the jury that Defendant must have "had adequate notice that Plaintiff was subjected to sexual harassment," meaning that the employer had either actual or constructive notice of the harassment. *Id.* at Page ID #4074–75. The jury was instructed by the district court that actual notice requires Plaintiff to "prove that she made a report of sexual harassment to someone in higher management—meaning someone with actual authority to effectuate change in the workplace with respect to hiring, firing, and disciplining the offending

No. 24-1550, *Johnson v. Ford Motor Co.*

employee." *Id.* at Page ID #4075. The jury ultimately found in favor of Defendant on this claim, indicating that the jury did not believe that Defendant had actual notice.[2]

It cannot be said that the jury's conclusion with respect to actual notice was "against the clear weight of the evidence." *Barnes*, 201 F.3d at 820. The two supervisors who are at the center of this case, Mahoney and Markavich, both testified that Plaintiff never reported Rowan's harassment. Defendant also provided documentary evidence at trial, which included: (1) Plaintiff's November 26, 2018, statement to Harris, which did not state that any other employee had knowledge of Rowan's harassment; (2) Plaintiff's text messages, which did not include any messages to Mahoney or Markavich regarding the harassment; (3) Mahoney and Markavich's statements to Human Resources on November 30, 2018, in which they denied any knowledge of the harassment; and (4) Clemons' statements on November 26, 2018, and December 10, 2018, which do not suggest that Mahoney or Markavich knew of the harassment. Plaintiff, of course, provided directly contradictory testimony at trial. Yet defense counsel impeached the Plaintiff's credibility on several occasions. For example, Plaintiff admitted on cross examination to lying on her resume.

What this clash of evidence boils down to is a question of credibility: whether the jury believes Plaintiff's or Defendant's side of the story. Yet it is not the role of this Court to evaluate the credibility of witnesses and assess which version of events is more plausible. *Callahan*, 801 F.3d at 616–17. As this Circuit has warned, courts of appeals may not "reweigh the evidence or assess the credibility of witnesses." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th

---

[2] The jury would have also been required to find that Defendant did not have constructive notice. But as noted above, Plaintiff has not preserved the issue of constructive notice for appeal.

No. 24-1550, *Johnson v. Ford Motor Co.*

Cir. 2007). Inasmuch as it is not definitively clear from the evidence whether Plaintiff provided actual notice to Defendant, it is inappropriate to grant a new trial on these grounds.

Plaintiff attempts to draw a parallel between this case and the district court case *Waldo v. Consumers Energy Co.*, No. 06-CV-768, 2010 WL 2302305 (W.D. Mich. June 4, 2010). In that case, a district court concluded that a new trial was warranted where a jury found against a plaintiff's workplace harassment claim. *Id.* at *3–*7. Plaintiff's citation to that case, however, is inapposite. A district court operates with much greater latitude than a court of appeals, as it is the job of the district court to act as an effective "thirteenth juror" and weigh the evidence, credibility of the witnesses, and testimony. *Callahan*, 801 F.3d at 616–17. This Court, by contrast, may only "review the evidence and the district court's ruling," and "reverse only if we have a definite and firm conviction that the district court committed a clear error of judgment." *Id.* at 617 (cleaned up). *Waldo* is thus unavailing to Plaintiff.[3] Therefore, we cannot conclude that the district court in this case abused its discretion in denying a new trial with respect to the sexual harassment claim.

## ii. Racial Harassment Claims

The district court instructed the jury that Plaintiff needed to satisfy the following elements to prove her racial harassment claims:

> 1. That she belonged to a protected class; and 2. That she was subjected to unwelcome racial harassment; and 3. The harassment was race based; and 4. The racial harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and 5. That the employer was legally responsible for the racially hostile work environment.

Jury Instructions, R. 194, Page ID #4082.

---

[3] Plaintiff also cites to *Cacciavillano v. Ruscello, Inc.*, No. 95-CV-5754, 1996 WL 668530 (E.D. Pa. Nov. 15, 1996). For the same reasons as *Waldo*, the district court case of *Cacciavillano* is inapplicable to this case.

No. 24-1550, *Johnson v. Ford Motor Co.*

The analysis for this claim largely mirrors that of the sexual harassment claim. Element (5) of the jury instructions focuses on the legal responsibility of Defendant, which requires Plaintiff to prove that Defendant "had adequate notice that Plaintiff was subjected to racial harassment." *Id.* at 4086. As with the sexual harassment claim, both sides present conflicting evidence as to whether Defendant had actual notice of the racial harassment. Mahoney and Markavich both testified at trial that Plaintiff never told them about the harassment. This is therefore a conflict of competing stories and a question of whose version of events the jury determined to be more credible. As with the sexual harassment claim, it is not within the purview of this court to make such credibility determinations. *Radvansky*, 496 F.3d at 614. It therefore cannot be said that the jury's determination was against the clear weight of the evidence. Thus, the district court did not abuse its discretion in denying the new trial motion with respect to the racial harassment claims.

**2. Motion to Amend**

Plaintiff also appeals the district court's denial of her motion to amend the Complaint. Under this Circuit's precedent, "[t]he law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997). This is because "it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Id.* (citation omitted and alteration adopted).

On October 16, 2019, Plaintiff filed her motion for leave to file an amended complaint. The motion specifically requested that the district court permit Plaintiff to add a new claim for retaliatory termination. Two months later, the district court denied Plaintiff's request to add the new cause of action, finding that the claim was futile and that Plaintiff unduly delayed in bringing

- 10 -

No. 24-1550, *Johnson v. Ford Motor Co.*

it. Nearly one year later, on October 16, 2020, Plaintiff filed her first notice of appeal to this Court, appealing the final judgment and the denial of her motion for consideration. When this Court considered Plaintiff's first appeal, we did not discuss the retaliatory termination claim because she did not raise the issue in her brief on appeal.[4]

Plaintiff has provided no reason as to why she could not have appealed this issue in her first appearance before the Court. At most, Plaintiff cites to this Court's prior decision in *Johnson I*, in which we found that Plaintiff had not forfeited certain arguments on appeal.[5] *See Johnson*, 13 F.4th at 504–05. We specifically considered Plaintiff's arguments regarding an element of her racial harassment claim, which Plaintiff did not argue in her response to the motion for summary judgment and instead first brought in her motion for reconsideration. *Id.* at 504. The Court concluded that any forfeiture of her arguments was excusable considering that (1) the arguments concerned "a question of law and does not require any further factual determination," (2) the issue had been briefed "with sufficient clarity and completeness" with both this Court and the district court, and (3) failure to take up the issue would result in a "miscarriage of justice" due to the

---

[4] As Defendant correctly notes, a denial of a motion to amend a complaint is usually not immediately appealable. *See Pittman ex rel. Sykes v. Franklin*, 282 F. App'x 418, 423 (6th Cir. 2008). This denial becomes appealable, however, "after the entry of a final order which resolves all issues between the parties." *Id.* Such is the case here. Once a court rules on a motion for summary judgment, "the generally non-final order of the district court denying" a motion to amend a complaint is "subsumed in the final, appealable" summary judgment order. *Id.* In this case, the district court issued an order in-part granting Defendant's motion for summary judgment and dismissing Plaintiff's state law claims, issuing a final judgment. It was at that point that the denial of Plaintiff's motion to amend became final and ripe for appeal as part of the final judgment.

[5] Plaintiff also objects to Defendant's reliance on criminal, rather than civil, cases to argue that this issue has been waived. However, the law-of-the-case doctrine applies to both civil and criminal cases, and there are civil cases which make the same exact finding as the criminal cases cited by Defendant. *See, e.g.*, *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532 (6th Cir. 2008).

- 11 -

No. 24-1550, *Johnson v. Ford Motor Co.*

district court's erroneous findings on summary judgment with respect to racial harassment. *Id.* at 504–05.

*Johnson I*'s findings are inapplicable to the present issue. First, the issue at hand does not merely concern questions of law. The district court refused to permit the addition of Plaintiff's claim for retaliatory termination because it deemed Plaintiff's claim to be futile; and in conducting its analysis, the district court undertook a detailed factual review. Thus, the issue before us does not merely concern "a question of law" that "does not require any further factual determination," but instead requires a factual analysis to determine whether sufficient evidence supports Plaintiff's claim. *Id.* at 504. Second, the Court's finding in *Johnson I* with respect to a "miscarriage of justice" was specifically tied to the Court's later finding that the district court erred in its summary judgment determination. *Id*. at 505. Plaintiff has not pointed to any reason as to why failure to consider this specific issue would constitute a miscarriage of justice. Finally, the only parallel to this issue and *Johnson I* is that both Plaintiff and Defendant have briefed this issue. That on its own, however, does not present the kind of "exceptional case[] or particular circumstance[]" warranting excuse that we found in *Johnson I. Id.* at 504. There is therefore no reason as to why this issue could not have been brought in Plaintiff's initial appeal. Accordingly, this argument is procedurally barred.

### 3. Summary Judgment Determination

The final issue Plaintiff presents on appeal is the district court's grant of summary judgment in favor of Defendant on Plaintiff's quid pro quo harassment claim.

#### a. *Merits*

To prove a claim of quid pro quo sexual harassment under Michigan law, a plaintiff must show "(1) that she was subject to any of the types of unwelcome sexual conduct or communication

No. 24-1550, *Johnson v. Ford Motor Co.*

described in the statute, and (2) that her employer or the employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment." *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915 (Mich. 2000). With respect to the second element, the Michigan Supreme Court has found that an employer's agent "is limited to persons with supervisory powers." *Id.* at 920. Individuals with supervisory powers are those who are "in a position to offer tangible job benefits in exchange for sexual favors or, alternatively, threaten job injury for a failure to submit." *Id.*

The core issue with this claim is element (2) of the *Chambers* test. That element requires Plaintiff to show "that her employer or the employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment." *Id.* at 915. Thus, to evaluate this element, we must determine (1) whether Rowan was Defendant's agent, which requires finding that he had supervisory powers over Plaintiff; and (2) whether Plaintiff's acceptance or rejection of Rowan's advances played a role in a decision affecting her employment. Plaintiff argues that Rowan had supervisory authority because he was directed to train Plaintiff and "provide feedback to higher level supervisors Mahoney and Markavich as to whether or not she was succeeding." Appellant's Br., ECF No. 15, 44. Plaintiff further contends that her acceptance or rejection of Rowan's demands was a factor in a decision affecting her employment because Rowan had the power to decide whether to effectively train Plaintiff and positively report on her progress.

Plaintiff's argument is unavailing. Specifically, her argument is conclusory as to whether Plaintiff's acceptance or rejection of Rowan's advances played a role in a decision affecting her employment. Plaintiff does not cite to any evidence to show that either (1) there was in fact a decision concerning her employment or (2) that such a decision was tied to her rejection of

No. 24-1550, *Johnson v. Ford Motor Co.*

Rowan's actions. At most, Plaintiff states that Rowan had training and reporting authority. Yet this on its own does not suggest that an actual decision was made regarding Plaintiff's employment or that such a decision was tied to Rowan's harassment. Beyond this, Plaintiff relies solely on the conclusory allegation that "Ford/Rowan conditioned Johnson's submission to or rejection of Rowan's sexual demands and antics to decisions affecting her employment." Appellant's Br., ECF No. 15, 44. As the Supreme Court has warned, at the summary judgment stage, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Plaintiff turns the Court's attention to several district court cases and one out-of-circuit case that do not involve the Michigan law at issue. Plaintiff first cites to a magistrate judge's report and recommendation in *Scarbary v. Georgia Department of Natural Resources*, No. 15-CV-02183, 2017 WL 1132726 (N.D. Ga. Jan. 31, 2017), *report and recommendation adopted in part, rejected in part,* 245 F. Supp. 3d 1328 (N.D. Ga. 2017). However, that case relied on an approach adopted in some Eleventh Circuit courts holding that co-workers who act as de facto supervisors may constitute supervisors for federal quid pro quo claims. *Id.* at \*9–\*10. Plaintiff does not point to, and we are unaware of, case law showing that Michigan courts employ this approach in evaluating ELCRA quid pro quo cases.

Plaintiff next cites to *Carrero v New York City Housing Authority*, 890 F.2d 569, 579 (2d Cir. 1989). Yet that case has a very different set of facts from this case, because the plaintiff in *Carrero* was demoted by her harasser and her harasser was her "immediate supervisor." *Id.* at 573–74. In this case, by contrast, Plaintiff was not demoted by Rowan and Rowan was not her immediate supervisor; instead, Rowan simply trained Plaintiff, and her immediate supervisors

- 14 -

No. 24-1550, *Johnson v. Ford Motor Co.*

were Mahoney and Markavich. *Carrero* is thus inapplicable to this case. Plaintiff also cites to *Cruz v. New York State Department of Corrections and Community Supervision*, which suffers from similar flaws as *Carrero*. No. 13-CV-1335, 2014 WL 2547541 (S.D.N.Y. June 4, 2014). In that case, the plaintiff suffered a demonstrable injury to her career (denial of training opportunities) and was harassed by her immediate supervisor. *Id.* at *2, *5. A similar case that Plaintiff cites to, *Pitter v. Community Imaging Partners, Inc.*, also concerns a plaintiff who suffered a direct impact to her career (firing) by an immediate supervisor. 735 F. Supp. 2d 379, 383, 396 (D. Md. 2010). Plaintiff, by contrast, has failed to show a demonstrable impact on her employment or that Rowan was her immediate supervisor.

Plaintiff concludes her argument with a lengthy string cite of district court cases. Each of those cases are out-of-circuit, are district court decisions, fail to address the Michigan law at issue or its specific standards, and have factual predicates that are dissimilar to this case. *See Martinez v. Bd. of Educ. of Prince George's Cnty.*, No. 19-CV-0169, 2020 WL 4926610 (D. Md. Aug. 21, 2020); *LaMarca v. City of Niagara Falls, New York*, No. 13-CV-00970, 2016 WL 8674161 (W.D.N.Y. Feb. 12, 2016); *Barhouma v. Athenian Assisted Living, Ltd.*, No. 14-CV-02214, 2015 WL 5437786 (N.D. Ohio Sept. 15, 2015); *Heskin v. Insite Advert., Inc.*, No. 03-CV-2508, 2005 WL 407646 (S.D.N.Y. Feb. 22, 2005); *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143 (E.D.N.Y. 2003); *Hernandez v. Jackson, Lewis, Schnitzler & Krupman*, 997 F. Supp. 412 (S.D.N.Y. 1998); *Gostanian v. Bendel*, No. 96-CV-1781, 1997 WL 214966 (S.D.N.Y. Apr. 25, 1997); *Sowers v. Kemira, Inc.*, 701 F. Supp. 809 (S.D. Ga. 1988).

We conclude that the district court properly granted summary judgment to Defendant on the quid pro quo harassment claim.

No. 24-1550, *Johnson v. Ford Motor Co.*

### b. *Law of the Case*

Plaintiff argues that in granting summary judgment on the quid pro quo harassment claim, the district court violated the law of the case doctrine. In its order regarding Plaintiff's motion to amend, the district court permitted Plaintiff to add the quid pro quo harassment claim, finding that the claim was not futile. Plaintiff argues that in conducting this review, the district court looked beyond the pleadings and reviewed materials such a deposition testimony. This, according to Plaintiff, effectively converted the analysis into a summary judgment determination. Plaintiff specifically cites *Max Arnold & Sons, LLC v W.L. Hailey & Co., Inc.* to support this proposition. 452 F.3d 494 (6th Cir. 2006).

Plaintiff's argument is unconvincing. It is clear that in evaluating whether Plaintiff's proposed claim was futile, the district court applied not the summary judgment standard, but rather the Rule 12(b)(6) standard, which differs greatly from a summary judgment review. *See MacIntosh v. Clous*, 69 F.4th 309, 316 (6th Cir. 2023). Considering that the district court evaluated Plaintiff's request to amend to add the quid pro quo harassment claim under a completely different standard, it cannot be said that the court's futility determination had preclusive effect on its summary judgment decision. Thus, the law of the case doctrine is inapplicable to the instant matter, and the entry of summary judgment was proper.

### III. CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-1550

DEANNA JOHNSON,

    Plaintiff - Appellant,

  v.

FORD MOTOR COMPANY,

    Defendant - Appellee.

**FILED**
Apr 09, 2025
KELLY L. STEPHENS, Clerk

Before: MOORE, CLAY, and STRANCH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk